IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **Food Lion, LLC, and Maryland and Virginia Milk Producers Cooperative Association, Inc.,**<br><br>Plaintiffs,<br><br>v.<br><br>**Dairy Farmers of America, Inc.,**<br><br>Defendants. | **Case No. 1:20-cv-00442** |

**DEFENDANT DAIRY FARMERS OF AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

    I.    Plaintiffs' Speculative Future Claimed Injury Cannot Establish Constitutional or Antitrust Standing. ....................................................... 2

    II.   Plaintiffs' "Foreclosure" Theories Are Not Economically Plausible. ................... 6

    III.  Plaintiffs Attempt to Sidestep DFA's Failing Firm Defense Rather Than Addressing It Directly ................................................................................. 9

    IV.  Plaintiffs Fail to Plead a Plausible Geographic Market. ..................................... 11

CONCLUSION ................................................................................................ 13

# INTRODUCTION

Plaintiffs' Opposition confirms this case is not about promoting competition, but rather, attempting to use antitrust law to shield Plaintiffs from competition. DFA bought the Carolina Plants[1] after review by the Department of Justice, following a transparent bidding process in which the Bankruptcy Court recognized that reorganization was not feasible to keep these plants operating. The acquisition saved the Carolina Plants as a home for farmer milk (and not just DFA farmer milk), and it preserved Processed Milk production that might have otherwise been lost. That is plainly procompetitive.

Plaintiffs' Complaint and Opposition fail in four key respects:

1.  Plaintiffs fail to satisfy constitutional standing requirements because they do not show that their alleged speculative future injury is certainly impending. Plaintiffs suggest that their bar is low for showing antitrust injury because they seek only injunctive relief, but that is not the law. Plaintiffs then assert that the Court must accept as true all of their allegations—even implausible and speculative allegations. This too is not the law.

2.  Plaintiffs do not dispute that DFA's acquisition of the Carolina Plants changed nothing in the market. DFA supplied raw milk to the Carolina Plants before the acquisition and continues to do so. Because DFA had no plants in the Carolinas prior to the acquisition, there is no change in the horizontal concentration of milk processors. Plaintiffs concede that whatever "foreclosure" might occur in the future is the same alleged

---

[1] DFA uses the same defined terms as in its opening brief.

"foreclosure" that has existed for years. Because nothing has changed, there is no injury to competition.

3.  Plaintiffs' response to the failing firm defense ignores a key case cited by DFA by arguing that discovery is necessary. Plaintiffs, however, do not identify the discovery they claim to need. Rather, they urge this Court to re-litigate Dean's bankruptcy and the bid process, while excusing Plaintiffs' failure to appeal from the Bankruptcy Court's rulings.

4.  Although Plaintiffs plead a two-state geographic market, they concede that their market definition must include Virginia and Georgia. That concession confirms the implausibility of their claimed market. As the foundation of their case, an implausible market justifies dismissal.

### I. Plaintiffs' Speculative Future Claimed Injury Cannot Establish Constitutional or Antitrust Standing.

Plaintiffs must establish Article III standing. *See* ECF 31 ("DFA Br.") at 7-9. Rather than respond to DFA's argument that they have failed to allege the "certainly impending" injury required by Article III, Plaintiffs address Article III's standing requirements in a single footnote. That footnote asserts (incorrectly) that challenges under Article III are "more properly viewed as encompassed by and built into the antitrust injury requirements under the Clayton Act." ECF 41 ("Opp.") at 5, n.2. Plaintiffs' response is insufficient and actually concedes DFA's argument. *See Hadley v. City of Mebane*, No. 1:18CV366, 2020 U.S. Dist. LEXIS 55891, at *20-21 (M.D.N.C. Mar. 31, 2020) (failure

to respond to arguments "with anything but conclusory statements unsupported by legal authority" concedes those arguments).

Nowhere do Plaintiffs point to allegations, much less non-conclusory ones, that set forth "certainly impending" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) (plaintiffs seeking injunctive and declaratory relief lacked Article III standing because they could not "demonstrate that the *future injury* they purportedly fear is certainly impending…"). Plaintiffs attempt to distinguish *Sureshot Golf Ventures v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 241 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1330, a highly analogous vertical merger "foreclosure" case (*see* DFA Br. at 7-8), on the basis that it involved damages rather than injunctive relief. But constitutional requirements of "certainly impending" injury apply with equal force where no damages are sought, as *Clapper* confirms. *See* 568 U.S. at 401; *see also* DFA Br. at 7, 9 (citing *Clapper*).

Rather than address the requirement of certainly impending injury, Plaintiffs instead conflate Article III standing with antitrust standing. Plaintiffs do not cite (and DFA is unaware of) any Fourth Circuit decision collapsing the two concepts. *See Jemsek v. N.C. Med. Bd.*, No. 5:16-CV-59-D, 2017 U.S. Dist. LEXIS 23570, at *29 n.3 (E.D.N.C. Feb. 20, 2017) (plaintiff was incorrect to respond to argument regarding Article III standing by arguing he has antitrust standing); *DataCell Ehf v. Visa, Inc.*, No. 1:14-cv-1658 (GBL/TCB), 2015 U.S. Dist. LEXIS 100494, at *14 (E.D. Va. July 30, 2015) (analyzing Article III standing separately from antitrust injury).

Plaintiffs point to dicta in *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007), for the proposition that discussion of antitrust standing obviates the need for a discussion of Article III injury requirements. Nothing in *Novell* suggests that in a case seeking prospective relief, Plaintiffs need not show injury is "certainly impending." Such a holding would be at odds with other circuits. *See, e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008) ("Section 16 [of the Clayton Act]'s requirement of 'threatened injury,' 15 U.S.C. § 26, dovetails with Article III's requirement that in order to obtain forward-looking relief, a plaintiff must face a threat of injury that is both real and immediate, not conjectural or hypothetical.") (internal quotation marks omitted). Moreover, it makes no sense to construe the Clayton Act as lowering the threshold for Article III standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) ("Congress cannot erase Article III's standing requirements").

In addition to the Constitutional standing requirement, Plaintiffs must *also* allege a threatened <u>antitrust</u> injury—that is, an injury to competition. DFA Br. at 9-12. "[U]nder both § 16 [for injunctions] and § 4 [for damages] the plaintiff must still allege an injury of the type the antitrust laws were designed to prevent." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111-12 (1986) (Clayton Act does not permit injunctions "against a threatened injury for which [plaintiff] would not be entitled to compensation if the injury actually occurred.").

Plaintiffs assert that under DFA's view "only an injury that has already resulted in damages can violate antitrust law." Opp. at 5, n.3. This misconstrues DFA's argument.

4

Consistent with Supreme Court precedent, DFA contends that the *threatened* injury must be the type of injury the antitrust laws were designed to prevent. *See* DFA Br. at 10-12. Rather than responding, Plaintiffs build a strawman, claiming that DFA asserts "that neither a competitor nor a customer has standing." Opp. at 11. This is simply incorrect— the issue is not whether some competitor or customer *could* have antitrust standing, but whether the Plaintiffs' allegations of antitrust injury are sufficiently plausible to give *them* antitrust standing. As discussed further in Part II below, Plaintiffs' allegations here are not.

Plaintiffs insist that their allegations of foreclosure and injury must be presumed true, even going so far as to say that Plaintiffs' "predictions" regarding future injury cannot be contested on a motion to dismiss. Opp. at 11. However, this Court need not accept as true "unwarranted inferences" or "conclusory and speculative allegations." *Hicks v. Mount Airy-Surry Cnty. Airport Auth.*, No. 1:15-CV-38, 2015 U.S. Dist. LEXIS 164833, at *23 (M.D.N.C. Dec. 9, 2015). And courts routinely dismiss merger challenges seeking injunctive relief where a plaintiff fails to state a plausible cause of action. *See, e.g., Dehoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (affirming dismissal of merger challenge seeking injunctive relief because speculative allegations did not plausibly allege anticompetitive effects); *Moore Corp. v. Wallace Comput. Servs.*, 907 F. Supp. 1545, 1567 (D. Del. 1995).

Plaintiffs' predictions of future harm are speculative and rely on guesses about the conduct of third parties and unknown potential buyers of the Carolina Plants (and whether they would have operated the Carolina Plants in the same manner and would have

considered, much less accepted, a MDVA bid). This Court need not accept such speculative allegations as true.

**II. Plaintiffs' "Foreclosure" Theories Are Not Economically Plausible.**

"On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' *in light of basic economic principles*." *William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (emphasis added). Here, neither Plaintiffs' theory that (1) DFA's acquisition will foreclose MDVA from milk processor customers ("customer foreclosure") nor that (2) it will result in DFA denying raw milk to other milk processors ("input foreclosure") is economically plausible.

Plaintiffs' "customer foreclosure" theory as to MDVA fails for the simple reason that MDVA alleges it was already foreclosed from the Carolina Plants prior to the acquisition.[2] But MDVA's alleged longstanding foreclosure from a single customer (Dean) is not foreclosure from the market, as evidenced by MDVA's continued operation in the market, and its own market share calculations that show its raw milk production in the Carolinas is lower than the volume of processing capacity available from non-Dean plants. *See S.W.B. New Eng., Inc. v. R.A.B. Food Grp., LLC*, 2008 U.S. Dist. LEXIS 14892, at *15-16 (S.D.N.Y. Feb. 27, 2008) (no antitrust injury where "injury was caused by the manufacturer's decision to terminate their relationship, something the manufacturer could have just as well done without having monopoly power").

---

[2] This in and of itself defeats any assertion that an injunction is warranted: if MDVA has suffered harm, it is not due to DFA's acquisition of the Carolina Plants.

6

Plaintiffs' "input foreclosure" theory as to Food Lion (*see* Opp. at 9-10) makes even less economic sense. Plaintiffs do not attempt to explain how DFA raising its raw milk prices or refusing to sell to the three other plants in the Carolinas would increase prices of Processed Milk when MDVA is, and has for some time now, supplied all of these plants. Further, the alleged injury to Food Lion, even if it were plausible, creates a contradiction because that injury would actually *benefit* MDVA.[3] In other words, if DFA attempts to raise prices, MDVA will either also increase prices, or will have the opportunity to charge less and capture more business, both of which are in MDVA's interest. This is not a typical merger challenge where a merger results in increased market power with obvious likely effects on competition in the market—in this case, neither alleged relevant product's market concentration was affected.

Plaintiffs' reliance on *Sprint Nextel Corp. v. AT&T, Inc.*, 821 F. Supp. 2d 308, 321 (D.D.C. 2011), is also unavailing. Plaintiffs cite the portion of that case dealing with the *horizontal* aspects of a merger between AT&T and T-Mobile. *See id.* at 319-329.[4]

---

[3] Plaintiffs claim DFA would not charge higher prices until MDVA is "sufficiently weakened" (Opp. at 9-10, n.6), but this too is speculation. MDVA only alleges it may stop supplying raw milk to North and South Carolina plants (ECF-1 ¶116), not cease all operations. If DFA charged supracompetitive prices in the future, MDVA would still be operating in Maryland and Virginia, and customers seeking competitive prices would presumably turn to MDVA, strengthening MDVA's position again in the Carolinas and lowering prices to competitive levels. In light of this, DFA would have no incentive to charge supracompetitive prices. This all also ignores that DFA and MDVA are not the only suppliers of raw milk in the Carolinas.

[4] The court allowed a foreclosure claim from a roaming services purchaser, but that customer bought services from T-Mobile and would lose that source post-merger. *Id.* at

7

Case 1:20-cv-00442-CCE-JLW   Document 43   Filed 07/14/20   Page 9 of 16

Finally, Plaintiff's reliance on *Brown Shoe* is misplaced. *Brown Shoe* was decided nearly 60 years ago and much in merger jurisprudence and policy has changed since then. *See* Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application §1000a (observing that "the courts historically took a severe approach to vertical mergers—much more severe than was warranted by any acceptable economic theory of competitive harm" and that "[t]oday it is almost a commonplace that these historical results cannot stand close scrutiny.").

Accordingly, although *Brown Shoe* remains widely cited for some general propositions of antitrust law, its emphasis on "the maintenance of fragmented industries and markets" even when it results in "higher costs and prices," 370 U.S. at 344, has been out of favor since at least the 1980s. *See, e.g.*, *Hosp. Corp. of Am. v. F.T.C.*, 807 F.2d 1381, 1386 (7th Cir. 1986) (doubting the "continued vitality of such cases as *Brown Shoe*" in light of cases where "the Supreme Court… has said repeatedly that the economic concept of competition, rather than any desire to preserve rivals as such, is the lodestar that shall guide the contemporary application of the antitrust laws…"). That is particularly true in the context of vertical mergers, which are recognized as generally pro-competitive. *See United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 193 (D.D.C. 2018).

---

334. Here, Plaintiffs concede that they did not sell to or buy from Dean pre-merger, so they do not lose access to anything.

### III. Plaintiffs Attempt to Sidestep DFA's Failing Firm Defense Rather Than Addressing It Directly.

Plaintiffs' primary argument regarding the failing firm doctrine ("Doctrine") is that it should not be decided on a motion to dismiss. Plaintiffs do not respond to *Granader v. Public Bank*, 281 F. Supp. 120, 123 (E.D. Mich. 1967), *aff'd*, 417 F.2d 75 (6th Cir. 1969), *cert. denied*, 397 U.S. 1065 (1970). In *Granader*, a district court concluded at the motion to dismiss stage that a state court's factual conclusions in a receivership proceeding had already determined the factual issues underpinning the defense.[5] *Granader,* 281 F. Supp. at 123. Thus, prior to discovery, the court granted summary judgment to Defendants, explaining that "the plaintiffs may not use this court to attack the findings of the Circuit Court." *Id.* The Sixth Circuit affirmed, concluding that the plaintiff was estopped from denying the receivership court's factual findings, which were dispositive of the failing company defense. *Granader*, 417 F.2d at 81. The same logic applies here and provides a complete defense to Plaintiffs' merger challenge.[6]

Plaintiffs' assertion that DFA must establish a dim prospect of reorganizing in bankruptcy for the Doctrine to apply (*see* Opp. at 16) is incorrect. "The weight of authority suggests that dim prospects for bankruptcy reorganization are not essential to successful

---

[5] Plaintiffs claim DFA's argument is "misleading" because "the bankruptcy court never discussed the failing company defense." Opp. at 16. But DFA never suggested the Bankruptcy Court arrived at legal conclusions regarding the Doctrine. As in *Granader*, the Bankruptcy Court made findings of fact that establish the Doctrine's applicability.

[6] Plaintiffs do not dispute that this Court can take judicial notice of the Bankruptcy Court's determinations.

9

assertion of the failing company defense." *United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729, 778 (D. Md. 1976). Regardless, although a committee attempted to craft a reorganization plan, no feasible reorganization plan emerged. *See* Bankr. Ct. Dkt. 1457 (Committee's withdrawal of objection). Plaintiffs tacitly acknowledge this, claiming the Carolina Plants would have been sold out of bankruptcy even if DFA did not purchase them. Opp. at 8, n.5.

Plaintiffs claim that because others (including MDVA) placed bids for some plants purchased by DFA, there were other available purchasers for Dean.[7] Opp. at 17. But those bids were for individual Dean assets and would not keep Dean largely operational, contrary to the Doctrine's goal of avoiding a liquidation (*i.e.*, Plaintiffs' desired piecemeal sale of assets), even if the result is an anticompetitive acquisition. *See United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 507 (1974).

Plaintiffs' complaints about the procedures ordered and used by the Bankruptcy Court come too late. *See* Opp. at 17-18. Plaintiffs' process objections were heard and rejected, and Plaintiffs chose not to appeal, waiving those issues. DFA Br. at 19. Plaintiffs further fail to explain what discovery could demonstrate that the Bankruptcy Court was incorrect in its factual findings that coincide with the two elements of the Doctrine: that

---

[7] Plaintiffs also claim that Borden, another dairy company in bankruptcy, could have merged with Dean—but no proper bid was submitted to the Bankruptcy Court. *See* Opp. at 17.

Dean would fail absent DFA's acquisition of most of its assets, and that the sale to DFA should proceed given the absence of other bidders for substantially all of Dean's assets.

The Bankruptcy Court's reservation of Plaintiffs' rights to bring an antitrust action does not make the Bankruptcy Court's factual findings any less binding or impair any of DFA's defenses. Opp. at 16. The Bankruptcy Court simply stated that its order did not "operate to impair, prejudice, or otherwise abrogate the rights (*if any*) of [Plaintiffs]… to challenge the Sale Transaction under the antitrust laws..." ECF 1, ¶93 (emphasis added). The reservation is akin to a tolling agreement; it preserved Plaintiffs' right to file suit, but has no bearing on DFA's failing company defense or the applicability of the Bankruptcy Court's factual findings to that defense.

### IV. Plaintiffs Fail to Plead a Plausible Geographic Market.

Plaintiffs insist that the relevant geographic market is a factual issue and that their allegations in support of their narrow geographic market must be "presumed true for purposes of this motion" regardless of plausibility. Opp. at 19. Plaintiffs also claim their alleged market has no "glaring deficiencies" (id.), but fail to meaningfully distinguish their two-state market from the implausibly narrow markets other courts have deemed insufficient to survive a motion to dismiss. DFA Br. at 20-21.

Plaintiffs then go on to **directly contradict their Complaint's alleged relevant geographic market** in a footnote, stating that some producers and customers included in their relevant market "will likely be located in Virginia and Georgia." Opp. at 21, n.13. This is at odds with Plaintiffs' Complaint, which consistently limits Plaintiffs' alleged

11

geographic market to North and South Carolina. *See, e.g.,* ECF 1 ¶¶21 (relevant market "for both the supply of raw milk and its processing and co-packing consists of the milk processing plants in North and South Carolina."), 27 (hypothetical monopolist of Processed Milk in North and South Carolina could impose a SSNIP), 64-72 (market shares based only on North and South Carolina).

Despite this concession, Plaintiffs do not explain why the Complaint discusses only the processing plants located in North and South Carolina when discussing the market, and does not include MDVA's processing facility right across the border in Virginia. *See* ECF 1 ¶ 25, 69, 72-73, 79-80, 85. Plaintiffs also never address the conflict between their alleged market and their allegations regarding Food Lion patronizing MDVA's Virginia plant. DFA Br. at 22. Regardless, Plaintiffs cannot amend their alleged geographic market definition through their brief. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (a plaintiff "cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

\* \* \*

# CONCLUSION

For these reasons, and the reasons stated in DFA's opening brief, Plaintiffs' claims should be dismissed.

Date: July 14, 2020										Respectfully submitted,

**BAKER & MILLER PLLC**
W. Todd Miller*
Amber McDonald*
2401 Pennsylvania Avenue N.W.
Suite 300
Washington, D.C. 20037
Phone: 202-663-7820
Fax: 202-663-7849
TMiller@bakerandmiller.com
AMcDonald@bakerandmiller.com

**LATHAM & WATKINS LLP**
Michael G. Egge*
555 Eleventh Street, NW
Washington, DC 20004-1304
Phone: 202-637-2285
Michael.Egge@lw.com
Attorneys for
Dairy Farmers of America, Inc.

*By Special Appearance*

**WOMBLE BOND DICKINSON (US) LLP**

 /s/ Brent F. Powell
James P. Cooney III
N.C. State Bar No. 12140
Sarah Motley Stone
N.C. State Bar No. 34117
One Wells Fargo Center,
301 S College St
Suite 3500
Charlotte, North Carolina 28202
Phone: 704-331-4900
Fax: 704-331-4955
Jim.Cooney@wbd-us.com
Sarah.Stone@wbd-us.com

Brent F. Powell
N.C. State Bar No. 41938
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: 336-721-3600
Fax: 336-721-3660
Brent.Powell@wbd-us.com

*Attorneys for Dairy Farmers of America, Inc.*

13

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I hereby certify that the foregoing brief complies with the word limits in Local Rule 7.3.

>  */s/ Brent F. Powell*
> Brent F. Powell (N.C. Bar No. 41938)
> WOMBLE BOND DICKINSON (US) LLP
> One West Fourth Street
> Winston Salem, NC 27101
> Tel: 336-728-7023
> Email: Brent.Powell@wbd-us.com
>
> *Attorney for Dairy Farmers of America, Inc.*