# EXHIBIT A

**August 10, 2020 Letter
McDonald to Simpson**

# BAKER & MILLER PLLC

SUITE 300
2401 PENNSYLVANIA AVE., N.W.
WASHINGTON, D.C. 20037
TELEPHONE: (202) 663-7820
FACSIMILE: (202) 663-7849

August 10, 2020

**Via E-mail**
Carter C. Simpson
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
csimpson@HuntonAK.com

Re: *Food Lion LLC, et al. v. Dairy Farmers of America, Inc.*, No. 1:20-cv-00442 (M.D.N.C.)

Carter:

I am in receipt of your July 31, 2020 letter concerning DFA's Responses and Objections to Plaintiffs' First Set of Requests for Production and our meet and confer concerning those Responses and Objections held on July 24, 2020.

As to the "four preliminary issues" raised in Ryan Phair's July 23, 2020 email and discussed by the parties on July 27, 2020 – namely, the relevant geographic market, the relevant time period for discovery, Dean's sales data, and the Dean promissory note and historical milk supply agreements – DFA's position is laid out in Jim Cooney's email of July 29, 2020. We believe your letter accurately restates DFA's position. Please note that we are presently in the process of investigating the fluid milk sales data and our ability to produce the sales data will necessarily be limited to what DFA acquired in the purchase of Dean assets.

## I. *Definitions and Instructions*

    a. **DFA**:

        *Plaintiffs' 7/31/20 Position:* *DFA confirmed that it will not limit its search for discoverable material based on the location of that material as outside of "DFA's corporate headquarters in Kansas City, KS, and its regional office in Knoxville, TN." DFA will search the files of*

1

>    *appropriate custodians and other sources companywide, as their investigation deems appropriate.*
>
>    DFA's Response: DFA confirms Plaintiffs' summary of DFA's position.

b. **Dean**

>    *Plaintiffs' 7/31/20 Position: DFA confirmed that, for purposes of determining appropriate sources to search for responsive material, its construction of "Dean" will include only those legacy Dean assets, employees, and other materials that DFA has acquired or that are otherwise now in DFA's possession, custody, and control. However, for purposes of construing Plaintiffs' Requests that refer to "Dean," that term will be construed as the Dean Foods Company corporate entity regardless of which of its materials have been acquired by DFA.*
>
>    >    DFA's Response: DFA understands that when Plaintiffs use the term "Dean," it is referring to the Dean Foods Company corporate entity. As explained on the call, to the extent the requests seek the production of documents or data from DFA regarding "Dean," DFA's response will necessarily be limited to what is in DFA's possession, custody, and control. For some requests, this will include historical information reflecting, for example, communications between DFA and the legacy Dean Foods Company. For other requests, DFA's response will necessarily be limited to those legacy Dean assets that DFA has acquired. DFA contends that the appropriate place to resolve these disputes is in response to the specific discovery request. DFA stands on its objection to the production of any legacy Dean Foods documents or data that it did not acquire, as outside the scope of reasonable discovery.

c. **Kroger**:

>    *Plaintiffs' 7/31/20 Position: DFA confirmed that it construes "Kroger" to mean the Kroger Company, d/b/a Kroger, and select Kroger-owned or - affiliated companies and processing plants that Plaintiffs identify as relevant. Without prejudice to their ability to update this list as additional information emerges, Plaintiffs request that assets and entities operating under the names Harris Teeter, Hunter Farms, and Centennial Farms be included in DFA's search for documents responsive to Requests that refer to Kroger.*

>> DFA's Response: As stated in DFA's Responses and Objections, DFA interprets "Kroger" to mean the entity as it understands it in DFA's ordinary course of business. However, DFA agrees that the names Harris Teeter, Hunter Farms, and Centennial Farms will be included in DFA's search for documents responsive to Requests that refer to Kroger, where appropriate.

    d.    **Asset Sale**:

> *Plaintiffs' 7/31/20 Position: DFA confirmed that it will not withhold documents on the basis that it disputes Plaintiffs' definition of the "Asset Sale," but rather that DFA disputes that all information related to the Asset Sale is relevant to the litigation. The parties agreed that documents and other materials that solely concern milk processing plants outside the Relevant Area need not be produced (unless expressly implicated by a Request), but that DFA will not withhold nationwide, regional, or other "big picture" corporate documents that could bear on but do not expressly specify the Relevant Area or the Carolinas plants.*

>> DFA's Response: As stated in DFA's Responses and Objections, DFA objects to Plaintiffs' definition of "Asset Sale." Plaintiffs are correct that, as part of this objection, DFA disputes that all information related to the Asset Sale is relevant to the litigation. Further, DFA confirms that the parties agreed that documents and other materials that solely concern milk processing plants outside the Relevant Area need not be produced and that DFA will not withhold relevant nationwide, regional, or other "big picture" corporate documents that bear on the Relevant Area or the Carolinas plants on the basis of this objection.

    e.    **Bid**: As Plaintiffs stated their position concerning this term in connection with its position on Request No. 7, DFA will respond below.

    f.    **"Side Note"**: As Plaintiffs stated their position concerning this term in connection with its position on Request No. 6, DFA will respond below.

    g.    **Including**:

> *Plaintiffs' 7/31/20 Position: DFA confirmed that it construes the term "including" as providing examples and not limiting the universe of documents sought in the Request to those listed.*

>> DFA's Response: As stated in DFA's Responses and Objections, DFA objects to Plaintiffs' definition of "including" for multiple reasons, among them that the phrases "including, but not limited

to" or "including without limitation" render Plaintiffs' definition and the requests using the defined term vague, ambiguous, and subject to multiple interpretations. However, Plaintiffs are correct that DFA understands lists of examples following the term "including" to be illustrations of relevant types of documents that Plaintiffs are seeking and that it is not Plaintiffs' intention to limit DFA's searches to those examples. That said, all searches must necessarily be limited in some fashion, and DFA has endeavored to outline the parameters of these limitations in its responses to each of Plaintiffs' Requests.

h. **Native Format**:

*Plaintiffs' 7/31/20 Position:* DFA confirmed that it [will] produce documents according to the ESI protocol with respect to the production of native documents.

DFA's Response: DFA confirms Plaintiffs' summary of DFA's position.

i. **Duplicates**:

*Plaintiffs' 7/31/20 Position:* In many instances, DFA specified that it would only produce "non-duplicative documents" responsive to a Request. DFA confirmed that it is not deduplicating documents beyond what is permitted in the ESI protocol.

DFA's Response: Plaintiffs are correct that DFA is de-duplicating documents in accordance with the parties' ESI protocol and not further. In addition, as DFA explained during the parties' July 24, 2020 meet and confer, DFA's statements that it would produce "non-duplicative documents" also refers to DFA's intention to search the custodial files of those reasonably likely to have responsive, non-duplicative documents.

## II. *Individual Requests*

a. **Request No. 1**

- *Plaintiffs' 7/31/20 Position: DFA confirmed that it is withholding documents reflecting compromise offers and settlement discussions on the basis that those materials are protected by Federal Rule of Evidence 408. Plaintiffs believe such documents are discoverable, that Rule 408 bears only on admissibility and not discoverability, and that the confidentiality of such materials can be preserved as*

> *set forth under the Protective Order. You committed to consult with your team and let us know if you will reconsider your position.*
>
> - DFA's Response: Having consulted with my team, I can confirm that DFA is committed to its position that compromise offers and settlement discussions are protected by Federal Rule of Evidence 408. Courts have recognized that statements made in furtherance of settlement are privileged and protected from third-party discovery. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980, 983 (6th Cir. 2003) ("There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations."). Moreover, "the need for privacy in settlement talks outweigh[s] any First Amendment right of access to the proceedings." *Id.* at 980; *see also In re Franklin Nat'l Bank*, 92 F.R.D. 468, 472 (E.D.N.Y. 1981)) (holding that "secrecy of settlement terms . . . is a well-established American litigation practice"). As such, DFA will act in accordance with its objections and interprets Request No. 1 to exclude compromise offers and settlement discussions.

- *Plaintiffs' 7/31/20 Position: As to the Sitts and Southeastern Milk litigation, DFA confirmed that the Department of Justice requested, and DFA produced, materials from these two cases, and DFA is now withholding documents produced to DOJ from the Sitts and Southeastern Milk litigation as not relevant and overly burdensome. Plaintiffs stated that their request is for all materials produced to DOJ and/or state Attorneys General, regardless of the request to which the materials were responsive, and subject only to the parties' agreement to exclude materials that relate exclusively to milk processing plants outside the Relevant Area. Plaintiffs do not agree that materials from other litigations are by their nature non-responsive (particularly in light of the fact that one case concerned a similar region), or that wholesale exclusion of these materials is appropriate here. Plaintiffs also disagree that there is undue burden in identifying responsive documents from the discrete set of materials produced to DOJ. DFA confirmed that it will consider this issue and get back to Plaintiffs. DFA also agreed to advise Plaintiffs what it still possesses from the Southeastern Milk litigation, including without limitation unredacted court filings, expert reports, deposition transcripts and exhibits listed on the parties' trial exhibit lists.*

  - DFA's Response: As I explained, the U.S. Department of Justice issued a number of Civil Investigative Demands ("CIDs") as part of its investigation into DFA's acquisition of certain Dean assets. One of those CIDs pertained to the *Sitts* litigation, a case centered around a different set of facts in DFA's Northeast Area, an entirely different market from the one at issue in this matter, and one that ended up subject to the proposed Final Judgment in *United States v. DFA*. (I also note that DFA objected to the *Sitts* CID on a number of grounds and declined to produce more than expert reports, DFA's responses to requests for admission and

interrogatories, and summary judgment materials.) The mere chance that some document in DFA's production of unrelated *Sitts* materials might, in some way, touch upon the Southeast is not a reasonable basis for conducting discovery of these documents and is a quintessential "fishing expedition." Accordingly, DFA stands by its objection that such materials are irrelevant to the claims and defenses of the litigation and a review of the *Sitts* materials produced to the Department of Justice is not proportional to the needs of the case.

The DOJ also issued a CID related to the *Southeastern Milk* litigation. (As with the *Sitts* CID, DFA objected to the *Southeastern Milk* CID on a number of grounds and declined to produce more than expert reports, DFA's responses to requests for admission and interrogatories, and summary judgment materials.) While the Plaintiffs' recently served Second Set of Requests for Production makes it apparent that they are attempting to relitigate *Southeastern Milk*, this is a separate litigation and DFA declines to produce these materials.

As to the other materials from the *Southeastern Milk* litigation that DFA may or may not still have in its possession (given that this litigation was initiated nearly 13 years ago and concluded more than eight years ago), such materials were not produced to the DOJ in connection with its investigation and are thus well outside the bounds of Request No. 1. Plaintiffs have asked DFA to confirm whether it possesses documents "including without limitation unredacted court filings, expert reports, deposition transcripts and exhibits listed on the parties' trial exhibit lists." Given that the *Southeastern Milk* litigation had more than 2,000 docket entries and more than 150 deposition transcripts, it is unreasonable and disproportionate to the litigation to ask DFA to review its records to determine if it still has each and every unredacted court filing and transcript with exhibits, and DFA declines to do so.

- *Plaintiffs' 7/31/20 Position: DFA confirmed that it did not acquire the materials that Dean produced to the DOJ as part of the Asset Sale. Although DFA obviously cannot produce what it does not have, if DFA has come into the possession, custody, or control of any materials that Dean produced, provided, or filed with DOJ or state Attorneys General, by means other than the Asset Sale, Plaintiffs request that DFA produce such materials.*

    o DFA understands Plaintiffs' request concerning Dean's production to the DOJ and/or state Attorneys General. However, as we have repeatedly advised, such materials were not among the Dean assets acquired by DFA and will need to be obtained from the Dean Estate.

- *Plaintiffs' 7/31/20 Position: Plaintiffs asked DFA to include in its review for materials responsive to Request No. 1 presentations, communications, documents, or other materials that were provided to DOJ on DFA's behalf by outside counsel. DFA said it has only searched DFA custodians' files for responsive materials, and will not pull materials in the possession of DFA's counsel. There is no privilege or other issue that would shield these material[s] from production, and there is no undue burden in asking those counsel who represented DFA before DOJ to pull those discrete materials that were provided to the agency. DFA will get back to us with its final position on this issue.*

    - DFA's Response: As was noted during the call – by both parties – it would be inappropriate to make DFA's outside counsel a custodian for review. Yet, this is essentially what Plaintiffs suggest. As such, DFA stands on its objection to performing a duplicative search of its outside counsel. That being said, DFA confirms that it has reviewed its custodians' files for responsive materials, and we believe that we have captured all relevant, non-privileged, non-duplicative documents relating to raw milk or fluid milk produced or sold in the relevant area, which were produced to Department of Justice and/or state Attorneys, as a result of a reasonable search.

- *Plaintiffs' 7/31/20 Position: DFA confirmed that, despite its stated intent to produce only documents that "relat[e] to raw milk or fluid milk," it will produce documents that relate to the Carolinas plants or the Asset Sale as a whole, such as documents describing the overall strategic rationale, financial statements or plans, HSR Item 4-C documents, and board presentations.*

    - DFA's Response: As to DFA's objection that it will produce only documents that "relat[e] to raw milk or fluid milk," we believe you have misstated DFA's position. As I stated in our call, this is a foreclosure case and, ultimately, all relevant, responsive documents must ultimately relate to the sale or purchase or raw or fluid milk in the Relevant Area. That said, in Jim Cooney's email of July 29, 2020, he confirmed that DFA will be producing its HSR filing and 4-C documents.

- *Plaintiffs' 7/31/20 Position: DFA confirmed that it produced pay price data to DOJ, which data Plaintiffs maintain is relevant and is discussed below in the discussion of Request No. 8.*

    - DFA's Response: You are correct that DFA produced its farmer payroll data to the DOJ, and it objects to the production of such materials to Plaintiffs. Plaintiffs have alleged two markets: the market for the sale of raw milk to plants, and a market for the sale of fluid milk to retailers. DFA has provided data related to the first market, and it has consented to provide data related to the second market (however tangentially).

> Plaintiffs have not alleged anything with respect to the price paid to farmers for the purchase of their raw milk by their cooperative, and, accordingly, such data is entirely irrelevant.

- *Plaintiffs' 7/31/20 Position: In addition to the items discussed on Friday, a comment in Mr. Cooney's July 29th e-mail to Ryan Phair raises additional concerns as to how DFA is interpreting Request No. 1. In committing to produce DFA's HSR filing, Mr. Cooney stated that DFA had not interpreted the HSR filing to fall within "the initial request based on its wording." Plaintiffs are at a loss as to how an HSR filing provided to DOJ does not fall within their request. Please provide a list of items that DFA has provided to DOJ since November 11, 2019, that it believes fall outside Request No. 1 (other than those materials that solely concern milk processing plants outside the Relevant Area), and please confirm that DFA will produce any voluntary submissions, submissions responsive to a CID, responses to the Second Request (both narrative and data responses to interrogatories and documents), white papers, and presentations given to DOJ.*

    - <u>DFA's Response</u>: By your letter, Plaintiffs have now requested (1) a list of items that DFA has provided to DOJ since November 11, 2019, that it believes fall outside Request No. 1 (other than those materials that solely concern milk processing plants outside the Relevant Area) and (2) confirmation that DFA will produce any voluntary submissions, submissions responsive to a CID, responses to the Second Request (both narrative and data responses to interrogatories and documents), white papers, and presentations given to DOJ. As to both requests, DFA has already provided detailed Responses and Objections to Plaintiffs' Requests for Production, spent hours meeting and conferring with Plaintiffs on the First Requests, and provided this response letter. In each instance, DFA has taken great care, spent significant time, and spared no expense in detailing exactly those items to which it objects and what items it intends to provide in response to each Request. This new request is burdensome and unnecessary. Further, since receipt of this letter, Plaintiffs have served a second set of forty-five (45) additional Requests for Production that seek many of the same types of information.

    b. **Request No. 2**

- *Plaintiffs' 7/31/20 Position: DFA confirmed that it will produce all materials that it produced or filed, as well as any DFA deposition transcripts, in the Bankruptcy Proceedings, in unredacted form, to the extent that the sealing or redaction was to protect the confidential information of DFA or legacy Dean.*

    *DFA confirmed that it will produce all materials that were produced or filed by others and that DFA came into its possession of by virtue of its participation in the Bankruptcy Proceedings. DFA agreed to provide Plaintiffs with a list of such*

> *materials, so that we may discuss any confidentiality or protective order concerns. Plaintiffs stressed that materials sealed or redacted as containing DFA or legacy Dean confidential or proprietary information should be produced unredacted. You asked if we were interested in any materials in particular; although Plaintiffs has no means of identifying/specifying those Bankruptcy Proceedings materials that are in DFA's own possession, custody, or control, Plaintiffs did state that we would like a prompt production of an unredacted copy of ECF No. 1069.*
>
>> o <u>DFA's Response</u>: As concerns Request No. 2, we believe your summaries misstate DFA's position. As stated in DFA's Responses and Objections, and as amended by the parties' further communications, DFA has agreed to produce non-public, relevant, non-privileged, non-duplicative documents that relate to the purchase or sale of raw milk in the Relevant Area, as they were produced by DFA in connection with the bankruptcy proceedings in *In re: Southern Foods Groups, LLC, et al.*, No. 19-36313 (Bankr. S.D. Tex.). DFA does not consent to producing deposition transcripts or materials that were produced or filed by others in the Bankruptcy Proceedings. Further, as to the bankruptcy filings, DFA has asked Plaintiffs to provide a narrowed list of materials that they are interested in obtaining because, as Plaintiffs themselves noted, there are more than 2,000 docket entries in the bankruptcy proceedings. As Plaintiffs were themselves a party to the proceedings and the burden of reviewing the docket is equally or less burdensome for them (and, indeed, the process of narrowing their requests can only be done by Plaintiffs), DFA objects to this request. Finally, DFA understands that Plaintiffs have requested an unredacted copy of ECF No. 1069. We have inquired into this document and understand that it was filed, as redacted, by the Ad Hoc Group of Bondholders. As such, DFA believes it would be appropriate to seek this document from the Bondholders.

    c.    **<u>Request No. 3</u>**

- *<u>Plaintiffs' 7/31/20 Position</u>: DFA confirmed that, although it indicated that it will only search the files of "premerger DFA custodians," it will be searching the records of all DFA custodians reasonably likely to have discoverable documents, including legacy Dean employees now employed by DFA.*

  - <u>DFA's Response</u>: Subject to its objections, DFA has committed to searching the records of all DFA custodians reasonably likely to have non-duplicative documents responsive to this Request and produce relevant, non-privileged, non-duplicative communications, if any, relating to the Relevant Area that are responsive to Plaintiffs' Request. To the extent they are deemed to be appropriate custodians, DFAs search will include legacy Dean/now DFA employees in the search. At this time, based on its

      research and the language of the Request, which seeks communications between DFA and Dean (among others), DFA does not believe that those legacy Dean employees now employed by DFA are reasonably likely to have non-duplicative documents responsive to this Request.

- *Plaintiffs' 7/31/20 Position: DFA again confirmed that, despite its stated intent to produce only documents that "relat[e] to processed fluid or raw milk," it will produce documents that relate to competition or antitrust issues regarding the Carolinas plants or the Asset Sale as a whole, excluding those documents that exclusively concern milk processing plants outside of the Relevant Area.*

    - DFA's Response: Again, as to DFA's objection that it will produce only documents that "relat[e] to raw milk or fluid milk," ultimately, all relevant, responsive documents must ultimately relate to the sale or purchase or raw or fluid milk in the Relevant Area. That said, you are correct that DFA will produce documents that relate to competition or antitrust issues regarding the Carolinas plants or the Asset Sale as a whole, subject to its objections, including its objection to produce materials that are protected by Federal Rule of Evidence 408, as explained below.

- *Plaintiffs' 7/31/20 Position: DFA again confirmed that it is withholding documents reflecting compromise offers and settlement discussions on the basis that those materials are protected by Federal Rule of Evidence 408. Plaintiffs believe such documents are discoverable, that Rule 408 bears only on admissibility and not discoverability, and that the confidentiality of such materials can be preserved under the Protective Order. You committed to consult with your team and let us know if you will reconsider your position.*

    - DFA's Response: DFA's position with respect to Federal Rule of Evidence 408 is stated above, concerning Request No. 1, and is incorporated herein.

    d.  **Request No. 4**

- *Plaintiffs' 7/31/20 Position: DFA confirmed that, by limiting its production to documents reflecting its "actual" business plans or analyses, it means that it will search for documents reflecting plans or analyses which have been "written down," and not that DFA will exclude documents reflecting plans or analyses that were never implemented. The parties agreed that "plans" need not be formal business plans captioned as such, but can also be informal written communications in the form of emails or other written format.*

    - DFA's Response: Plaintiff is correct that DFA will provide any responsive, relevant, non-privileged, and nonduplicative written business plans or analyses, if any, located after a reasonable search.

e. **Request No. 5**

- *Plaintiffs' 7/31/20 Position:* DFA represented that it is not aware of any addendums, amendments, supplements, or extensions of the 2001 promissory note entered into between DFA and Dean. Please confirm that DFA has conducted a search for such materials. DFA also took under advisement Plaintiffs' request to produce drafts of the promissory note and, if they exist, draft amendments and other modifications. Mr. Cooney confirmed on June 29th that DFA will be producing the "related milk supply agreements" entered into by DFA and Dean as contemplated by the promissory note, whether as responsive to Request No. 5 or Request No. 6. We understand this to mean that, between Request Nos. 5 and 6, all milk supply agreements between DFA and Dean will be produced, whether they are "related" to the promissory note or not. Please confirm.

  - DFA's Response: DFA confirms that it has conducted a reasonable search for addendums, amendments, supplements, or extensions of the 2001 promissory note entered into between DFA and Dean, and there are no such documents. Next, Jim Cooney's July 29, 2020 email stated that DFA will provide the "historical" milk supply agreements related to the promissory note. DFA will produce all milk supply agreements between DFA and Dean related to the Relevant Area, whether or not they relate to the promissory note, as Plaintiffs now request.

f. **Request No. 6**

- *Plaintiffs' 7/31/20 Position: DFA stated that any contractual agreements other than supply agreements are irrelevant and not proportional to the litigation. Plaintiffs explained that they need at least hauling contracts and co-marketing agreements, because the former go to transportation costs and efficiency issues like cross-shipping, and the latter are integrally related to sales. Plaintiffs also need at least representative samples of farmer membership agreements (e.g. one of each type, not multiple copies that differ only as to the member at issue). Please let us know what other contracts relating to the supply of raw or fluid milk you are withholding based on your relevance objection, so that we may discuss such contracts and see where we can reach agreement.*

  - DFA's Response: Having considered Plaintiffs' Request, DFA consents to produce its marketing-agency-in-common ("MAC") agreements that relate to the Relevant Area. In addition, DFA consents to produce legacy Dean's fluid milk supply agreements, to the extent such documents were acquired by DFA in the asset purchase. As to all other non-supply-related agreements, Plaintiffs are correct that DFA stands by its objections that "all" contractual agreements are irrelevant and not proportional to the litigation. For example, DFA entirely disagrees that farmer-member

agreements (which, Plaintiffs stated would be necessary to show that DFA's members are free to leave DFA) are in any way related to a foreclosure case. DFA also objects to Plaintiffs' interrogatory by letter, which asks DFA to provide Plaintiffs with a list of what other contracts it maintains as a cooperative. Certainly, MDVA, as a fellow cooperative, understands the types of contracts necessary to its operations and – further – understands that the vast majority of these contracts are completely unrelated to this litigation.

g. **Request No. 7**

- *Plaintiffs' 7/31/20 Position: DFA confirmed its understanding of the term "bids" to include formal and informal proposals and bids (e.g., by email, by e-platform, or otherwise recorded or written down), and to include proposals and bids kept in both structured (data) and nonstructured formats.*

  - DFA's Response: Plaintiffs are correct as to DFA's understandings of the term "bids."

- *Plaintiffs' 7/31/20 Position: DFA confirmed that, as to raw milk proposals and bids received by or made by DFA or Dean, it will produce responsive bid information related to all milk processing plants in the relevant geographic area, and not only the legacy Dean plants.*

  - DFA's Response: DFA will produce its raw milk bids for all milk processing plants in the relevant geographic area, as well as all bids received by the legacy Dean plants, located as the result of a reasonable search.

- *Plaintiffs' 7/31/20 Position: DFA stated that its production of bids and proposals for legacy Dean's sale of fluid milk was implicated by Mr. Phair's July 23 email. Now that DFA has agreed to produce structured data concerning legacy Dean's sales of fluid milk, please confirm that DFA will also produce materials responsive to Request No. 7, as concerns bid and proposals for legacy Dean's sale of fluid milk.*

  - DFA's Response: DFA confirms that it will also produce bids for the sale of fluid milk out of the legacy Dean plants, located as the result of a reasonable search.

- *Plaintiffs' 7/31/20 Position:* DFA confirmed that it will not withhold documents solely because they might be duplicative of documents that MDVA already possesses.

- - DFA's Response: DFA confirms that it will not withhold documents responsive to this Request solely because they might be duplicative of documents that MDVA already possesses.

    h.   **Request No. 8**

- *Plaintiffs' 7/31/20 Position*: In addition to Mr. Cooney's commitment to produce structured data reflecting legacy Dean's sales of processed fluid milk, DFA confirmed that it will produce structured data reflecting legacy Dean's purchases of raw milk. To the extent that hauling and transportation details (distances/locations, and costs) are not reflected in Dean's purchase and sales data, please identify other sources of such hauling and transportation data.

    - DFA's Response: Plaintiffs are correct that DFA will produce structured data reflecting legacy Dean's purchases of raw milk. However, it has recently come to our attention that the USDA will not allow DFA to access this data prior to May 1, 2020, as data prior to this date is considered to belong to the Dean Estate. As such, DFA is limited to producing data for May and June 2020. DFA will produce July 2020 data once it is available.

- *Plaintiffs' 7/31/20 Position*: DFA asked that Plaintiffs identify those other categories of structured data that Plaintiffs feel are relevant to the litigation. Without prejudice to their ability to identify other categories as they assess DFA's data in the coming weeks, Plaintiffs request data concerning DFA's payments for, supply of, and shipping/hauling details for raw milk received from its farmer-members, which subjects Plaintiffs expect to be encompassed within pay price data of the type that DFA produced to DOJ.

    - DFA's Response: DFA anticipates that Plaintiffs will inform us to the extent that it needs additional shipping/hauling data not already provided, at which point we will investigate the availability of such data, if any.

We hope that this letter has resolved any outstanding questions about DFA's Responses and Objections and its positions regarding Plaintiffs' additional requests as made in your letter of July 31, 2020. To the extent you have any remaining questions, we can discuss those in our call this afternoon. As you note, we also look forward to resolving outstanding issues quickly and amicably.

Sincerely,

*Amber L. McDonald /AC*
Amber L. McDonald