# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| Food Lion, LLC, and Maryland and Virginia Milk Producers Cooperative Association, Inc., | |
| *Plaintiffs*, | Case No. 1:20-cv-00442 |
| v. | |
| Dairy Farmers of America, Inc., | |
| *Defendant*. | |

## PLAINTIFFS' COMBINED SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Stipulated Discovery and Briefing Schedule dated July 2, 2020 [ECF No. 40], Plaintiffs Food Lion, LLC, and Maryland and Virginia Milk Producers Cooperative Association, Inc., by and through undersigned counsel, hereby request that Defendant Dairy Farmers of America, Inc. produce the documents and things herein requested at the offices of Hunton Andrews Kurth LLP, 2200 Pennsylvania Ave. NW, Washington, DC 20037. Each Request is subject to the Definitions and Instructions set forth below.

## **DEFINITIONS**

1.      "Dairy Farmers of America, Inc.," "DFA," "Defendant," "You," or "Your" means and includes Defendant Dairy Farmers of America, Inc., and its current and former predecessors, wholly-owned or controlled subsidiaries or affiliates, other subsidiaries or affiliates, successors, parents, departments, divisions, and joint ventures; any organization or entity managed or controlled thereby, including those merged with or acquired; together with all present and former directors, officers, employees, agents, attorneys, representatives, or anyone acting on behalf of any of the foregoing.  Requests directed to "Dairy Farmers of America, Inc.," "DFA," "Defendant," "You," or "Your," shall encompass those legacy Dean books, records, documents, communications, information, and other materials that have been sold or transferred to or are otherwise in the possession, custody, or control of Defendant Dairy Farmers of America, Inc.

2.      "Dean" means and includes Dean Foods Company, a corporation organized under the laws of the State of Delaware, and its current and former predecessors, wholly-owned or controlled subsidiaries or affiliates, other subsidiaries or affiliates, successors, parents, departments, divisions, and joint ventures; any organization or entity managed or controlled thereby, including those merged with or acquired; together with all present and former directors, officers, employees, agents, attorneys, representatives, or anyone acting on behalf of any of the foregoing.

3.      "Kroger" means and includes the Kroger Company and its affiliated companies and processing plants, including Kroger, assets or entities purchased by Kroger from Harris Teeter, some of which still operate under that name, and the following

- 2 -

Kroger-owned milk-processing facilities; Hunter Farms in High Point, North Carolina; Westover Dairy in Lynchburg, Virginia; and Centennial Farms in Atlanta, Georgia.

4.     "Asset Sale" means the transaction consummated on May 1, 2020, whereby Dean sold substantially all of its assets, including the sale of the assets, rights, interests and properties relating to forty-four of Dean's milk processing facilities to DFA.  *See* Business Wire, "Dean Foods Completes Sale of Assets to Dairy Farmers of America" (May 1, 2020), *available at* https://deanfoodsrestructuring.com/wp-content/uploads/2020/05/Dean-Foods-Completes-Sale-of-Assets-to-Dairy-Farmers-of-America.pdf.

5.     "Bid" means any information on actual or proposed terms of sale or purchase of raw or processed milk, including prices, costs, volumes, and other terms. Where available, bid costs shall be broken down by category (e.g., material costs, transportation costs).

6.     "Processed milk" refers to fluid milk from cows processed for human consumption as liquid milk as described in ¶¶ 10 and 17 of the Complaint in the above-captioned case, ECF No. 1.

7.     "Raw milk" refers to raw Grade A milk from cows as described in ¶¶ 9 and 12-13 of the Complaint in the above-captioned case, ECF No. 1.

8.     Plaintiffs allege a relevant geographic market consisting of the milk processing plants in North and South Carolina and the dairies, cooperatives, and customers that can reasonably turn to those plants, *see* Compl. ¶ 21, ECF No. 1. However, for the purposes of these Requests, the "Relevant Area" is defined as the states of Virginia, North

- 3 -

Carolina, South Carolina, Georgia, and that portion of Tennessee that is included in the boundaries of the Federal Milk Marketing Order 5 (Appalachian Order).

9.     "Side Note" refers to the contingent, subordinated promissory note entered into between Dean Foods Company and DFA in 2001 with the original principal amount of $40 million, and all related addendums, amendments, supplements, or extensions. *See* Dean Foods, FY 2019 Form 10-K, at 39 (Mar. 20, 2020), *available at* https://sec.report/Document/0000931336-20-000006/.

10.     "DFA-Dean Supply Agreement(s)" refers to the 2001 agreement described in ¶ 44 of the Complaint, ECF No. 1, under which the newly-merged Dean entity agreed to exclusively buy all of its raw milk from DFA for twenty years, and any subsequent milk supply agreements entered into between DFA and Dean.

11.     "Carolinas plants" shall mean the legacy Dean milk processing plants located in High Point, North Carolina; Winston Salem, North Carolina; and Spartanburg, South Carolina that were acquired by DFA in the Asset Sale.

12.     "Communication" or "Communicated" means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes, publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

- 4 -

13.    "Data" refers to any data or database that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format. Any request for Data should be produced in the most disaggregated form in which it is kept in the regular course of business. Data should be produced in a comma-delimited text file (e.g., a file with a file extension of .csv or .txt), or such other format as the parties may agree.

14.    "Document(s)" shall have the broadest meaning ascribed by Rule 34(a) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and shall be construed to include, without limitation, communications and electronically stored information.

15.    "Electronically stored information" shall have the broadest meaning ascribed by Rule 34(a) of the Federal Rules of Civil Procedure.

16.    "Pending Action" refers to the above-captioned litigation, *Food Lion, LLC, et al. v. Dairy Farmers of America, Inc.*, No. 1:20-cv-00442 (M.D.N.C.).

17.    "Person(s)" means and includes all individuals and entities and shall be deemed to include natural persons, firms, partnerships or any variations thereof (e.g. limited partnerships, limited liability partnerships), limited liability companies, proprietorships, businesses, associations, organizations, joint ventures, corporations, and any other groups or forms of legal entities existing under the laws of the United States, any state, or any foreign country.

18.    As used herein, the singular of any word or phrase includes the plural and the plural of any word or phrase includes the singular.

19.     As used herein, "and" and "or" shall be read interchangeably and construed either conjunctively or disjunctively to give the broadest possible meeting to a particular request in which either or both is used.

20.     "Including" has its ordinary definition—"comprising as part of a whole or group"—and is used to emphasize certain types of documents requested. *See* Include, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/including (last visited July 25, 2020).  It should not be construed as limiting the request in any way, and therefore could be said to mean, though redundant, "including, but not limited to," or "including without limitation."

21.     As used herein, "concerning," "relating to," "referring to," "regarding," or "with respect to" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly.

## **INSTRUCTIONS**

1.     All Documents and other materials should be produced in accordance with these Instructions, the ESI protocol agreed to among the Parties, and the Federal Rules.

2.     Unless otherwise specified, the relevant time period for these Requests is January 1, 2017 through the present. Any Request seeking information related to an agreement or contractual arrangement includes those in effect as of January 1, 2017.

3.      Pursuant to Fed. R. Civ. P. 34(b), all documents produced in response to these Requests should be organized and labeled to correspond to the categories in the associated Request.

4.      You should produce entire documents including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs, and labels appended to or containing any documents.  Each and every draft of a document is a separate document for purposes of these Requests.  Copies that differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately.

5.      Unless otherwise specified or agreed, please produce all documents in native file format.  All electronically stored information and/or Data should be produced in electronic, machine-readable form, together with sufficient documentation of variable names and descriptions and any other information necessary to interpret and perform calculations on such data.

6.      These Requests require You to produce all responsive documents that are in Your actual or constructive possession, custody, or control within the meaning of Federal Rule of Civil Procedure 34(a)(1).  If any Request calls for responsive documents that are not in Your possession or subject to Your control or ascertainable by You upon reasonable inquiry, then where known, please identify the custodian or possessor of such information.

7.      If any Request cannot be responded to in full, please respond to the extent possible, state the reasons why it cannot be completely responded to, and provide whatever information is available concerning the unresponded-to portion.

8.      To the extent that You object to any part of a Request, please produce documents responsive to so much of each Request and each part thereof as is not objectionable in Your view and separately state that part of each Request as to which You raise the objection and the ground for each such objection.

9.      If, in responding to the Requests, You encounter any ambiguity in construing a Request, or a definition or instruction relevant to the inquiry contained therein, please set forth the matter deemed "ambiguous" and set forth the construction chosen or used in responding to the Request.

10.     When a responsive document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, please indicate clearly the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, please identify as to each document the reason for the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

11.     These Requests are deemed to be continuing in nature and require such supplementary productions as may be necessary to their continuing completeness in accord with Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**Request No. 9**: All documents presented to or prepared by the DFA Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area.

**Request No. 10**: All documents, calendar entries, minutes and notes from meetings of the DFA Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area.

**Request No. 11**: All communications between or amongst members of the DFA Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

**Request No. 12**: To the extent not produced in response to Plaintiffs' First Request No. 3, all communications between or amongst DFA and its financial advisors (*e.g.* Houlihan Lokey), lenders (*e.g.* Wells Fargo), rating agencies (*e.g.* S&P), shareholders, investors, partners, suppliers, customers, and unions concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of

- 9 -

raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

    **Request No. 13**: All documents, calendar entries, minutes and notes from meetings between DFA and its financial advisors, lenders, rating agencies, shareholders, investors, partners, suppliers, customers, and unions concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

    **Request No. 14**: To the extent not produced in response to Plaintiffs' First Request No. 3, all communications between or amongst DFA and Dean concerning or relating to the Asset Sale, any proposed transaction involving Dean, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

    **Request No. 15**: All documents, calendar entries, minutes, and notes from meetings between or amongst DFA and Dean concerning or relating to the Asset Sale, any proposed transaction involving Dean, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

    **Request No. 16**: All expense reports, travel reports and itineraries concerning or relating to meetings between DFA and Dean regarding the Asset Sale or any actual or proposed transaction involving Dean.

**Request No. 17**: In addition to the documents produced in response to Plaintiffs' First Request No. 1, all communications between DFA or its counsel with the U.S. Department of Justice or state Attorneys General regarding the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

**Request No. 18**: All documents concerning or relating to DFA's decision to make a single bid for all of the Dean plants subject to the Asset Sale instead of bidding separately for all or some portion of the plants, including the Carolinas plants.

**Request No. 19**: All documents concerning or relating to DFA's valuation of the Carolinas plants alone and in any combination in connection with the Asset Sale. If there are any Carolinas plants for which no such analyses exist, please include all documents related to any requests for such a valuation and the decision to forgo such a valuation.

**Request No. 20**: All documents concerning or relating to Dean's ability to restructure or reorganize its assets rather than sell its assets under Chapter 11 of the bankruptcy laws.

**Request No. 21**: To the extent not produced in response to Plaintiffs' First Request No. 3, all documents concerning or relating to Dean's discussions with, consideration of, solicitation of bids or offers from, or receipt of bids or offers from, potential acquirers of any of the Dean assets that ultimately were sold in connection with the bankruptcy proceedings in *In re Southern Foods Groups, LLC, et al.*, No. 19-36313 (Bankr. S.D. Tex.).

**Request No. 22**: To the extent not produced in response to Plaintiffs' First Request No. 4, all documents concerning or relating to DFA's integration of and future plans for the Carolinas plants.

**Request No. 23**: To the extent not produced in response to Plaintiffs' First Request No. 4, all documents concerning or relating to the benefits, costs, risks, and potential efficiencies associated with the Asset Sale as related to the Carolinas plants and the sale or purchase of raw and processed milk, including all documents concerning DFA's ability or inability to achieve each benefit, cost saving, economy, or other efficiency without the Asset Sale.

**Request No. 24**:  All financial statements, budgets, profit and loss statements, profitability reports, and other financial reports regularly prepared by or for DFA or Dean during the Relevant Time Period concerning or relating to the production, processing, or sale of raw or processed milk in, into, or from the Relevant Area.

**Request No. 25**: All documents created since January 1, 2014, concerning or relating to any analyses, studies, strategies, plans, assessments, or reports relating to the supply, sale, or purchase of raw or processed milk in, into, or from the Relevant Area.

**Request No. 26**: All documents created since January 1, 2014, concerning or relating to any analyses, studies, strategies, plans, assessments, or reports concerning market conditions, market participants, market shares, or competitors in the production, processing, or sale of raw milk or processed milk in, into, or from the Relevant Area.

- 12 -

**Request No. 27**: All documents created since January 1, 2014, concerning or relating to MDVA, its farmer members, or any other non-DFA producer of raw milk in the Relevant Area.

**Request No. 28**: All documents concerning or relating to (1) the MilkCo processing facility in Asheville, North Carolina; (2) the Borden processing facility in North Charleston, South Carolina; (3) the Kroger milk processing facilities in the Relevant Area; and (4) any other milk processing facility in the Relevant Area, including any studies, business plans, planning documents, analysis, reports, strategies, pro formas, and modeling concerning or relating to such processing facilities.

**Request No. 29**: To the extent not produced in response to Plaintiffs' First Requests, all documents concerning or relating to the supply of processed milk in, into, or from the Relevant Area by DFA, Dean, or a competitor, to Food Lion and other customers in connection with the purchase of raw or processed milk.

**Request No. 30**: All documents concerning or relating to monthly, quarterly, and/or annual forecasted orders in 2020, 2021, or 2022 by Your customers of raw or processed milk in the Relevant Area.

**Request No. 31**: All documents concerning or relating to DFA's, Dean's, or any other company's transaction prices, price lists, pricing plans, price announcements, pricing policies, pricing forecasts, pricing strategies, pricing analyses, pricing decisions, or any other incentives offered in connection to raw or processed milk sales in, into, or from the Relevant Area.

- 13 -

**Request No. 32**: All documents concerning or relating to DFA and Dean's distribution routes of raw or processed milk in, into, or from the Relevant Area.

**Request No. 33**: All documents concerning or relating to the effects on costs, pricing, or competition associated with the geographic distance between a raw milk producer and milk processor or a milk processor and customer.

**Request No. 34**: All documents concerning or relating to the processing capacities and percentage utilization of raw milk processing capacities of any or all milk processing plants in the Relevant Area.

**Request No. 35**: All documents concerning (a) the quality of DFA's raw milk or DFA's or Dean's processed milk in the Relevant Area and (b) the services provided by DFA or Dean in connection therewith.

**Request No. 36**: All documents concerning or relating to barriers, requirements, or costs for entry into the production or sale of raw or processed milk.

**Request No. 37**: To extent not produced in response to Plaintiffs' First Request No. 1, all documents produced, filed, or exchanged by DFA or any other party in *In re Southeastern Milk Antitrust Litigation*, No. 2:08-md-01000 (E.D. Tenn.), including but not limited to unredacted court filings, deposition transcripts and exhibits, and proposed trial exhibits.

**Request No. 38**: In addition to the specific documents sought in Plaintiffs' First Request No. 5, all documents concerning or relating to the DFA-Dean Supply Agreement(s) and the Side Note, including all documents from 2015 to the present relating to or discussing DFA's actual or contemplated enforcement of or exercise of rights

- 14 -

thereunder, Dean's analysis of its rights and obligations thereunder, including its right to most favored pricing, and Dean's responses to any actual or contemplated enforcement thereof by DFA.

**Request No. 39**: In addition to the contractual agreements sought in Plaintiffs' First Request No. 6, all documents concerning or relating to any supply agreement for the sale of processed milk by the Carolinas plants, including all attachments, exhibits, supplements, modifications, related agreements, or addendums thereto, and including documents relating to the negotiation, execution, performance, or enforcement of rights under any such agreement.

**Request No. 40**: All documents created since January 1, 2016, concerning or relating to the decisions and/or actions of Cumberland Dairy in New Jersey and/or DFA to reduce or eliminate the volume of raw milk that the Cumberland Dairy processing facility purchased from MDVA.

**Request No. 41**: All documents created since January 1, 2013, concerning or relating to actions and/or decisions by processing facilities owned by or affiliated with Dean and located in Kentucky or Tennessee to reduce or eliminate the volume of raw milk purchased from MDVA.

**Request No. 42**: All documents created since January 1, 2013, concerning or relating to MDVA farmer members located in Tennessee or Kentucky becoming DFA members, including documents relating to DFA's efforts to recruit such farmers, the circumstances that led such farmers to become DFA members, and all communications between DFA and such MDVA farmers that became DFA members.

- 15 -

**Request No. 43**: All documents created since January 1, 2014, concerning or relating to communications between DFA and any MDVA farmer members.

**Request No. 44**: All documents concerning or relating to the formation of the Appalachian Dairy Farmers Cooperative.

**Request No. 45**: All documents concerning or relating to Appalachian Dairy Farmers Cooperative, its farmer members, and/or farms that ultimately became members of Appalachian Dairy Farmers Cooperative, including any studies, business plans, planning documents, analyses, reports, or strategies.

**Request No. 46**: All documents created since January 1, 2014, concerning or relating to Piedmont Milk Sales, LLC, including any studies, business plans, planning documents, analyses, reports, or strategies.

**Request No. 47**: All documents created since January 1, 2014, concerning or relating to Cobblestone Milk Cooperative or its farmer members, including any studies, business plans, planning documents, analyses, reports, or strategies.

**Request No. 48**: All documents created since January 1, 2014, concerning or relating to communications between DFA or Dean and Cobblestone Milk Cooperative or any of its farmer members.

**Request No. 49**: All documents related to or used in the preparation of any allegation, denial, or affirmative defense raised in Your pleadings in the Pending Action.

**Request No. 50**: All documents pertaining to, relied upon, identified, or referred to by You in responding to any Interrogatory propounded by Plaintiffs in the Pending Action.

- 16 -

**Request No. 51**: All documents and data that underlie, support, or refute Your factual contentions in Defendant's Motion to Dismiss, ECF No. 31 ("Motion to Dismiss") and Reply in Further Support, ECF No. 43 ("Reply"), including without limitation:

    a.    That "DFA's purchase . . . allows continued access to processing facilities for DFA's farmer members' and other farmers' milk by the continued operation of the plants and the pro-competitive efficiencies that come with vertical integration." Motion to Dismiss, at 15.

    b.    That "Dean made a good faith effort to seek other buyers." *Id.* at 19.

    c.    That "Buyers consider areas outside the Carolinas to be an alternative source for Processed Milk." *Id.* at 22.

    d.    That "[I]t is common for raw and Processed Milk to be moved from Virginia to South Carolina, or from North Carolina or South Carolina to Georgia," *id.* at 21, and "raw milk is commonly shipped from Virginia, Maryland, Pennsylvania, and other states into the Carolinas for processing." *Id.* at 22.

    f.    That "DFA and MDVA are not the only suppliers of raw milk in the Carolinas." Reply at 7, n.3.

    g.    The "no feasible reorganization plan emerged" in bankruptcy. *Id.* at 10.

    h.    That the other bids in the Dean bankruptcy "would not keep Dean largely operational." *Id.*

**Request No. 52**: To the extent not produced in response to Plaintiffs' First Request Nos. 6 or 8, data or documents sufficient to show Your costs for the production, marketing, and other services You provide related to raw milk and for the processing, packaging, and other services You and Dean provide related to processed milk in the Relevant Area.

**Request No. 53**: To the extent not produced in response to Plaintiffs' First Request Nos. 6 or 8, data or documents sufficient to show hauling, shipping, and other transportation costs of raw or processed milk in, into, or from the Relevant Area, as well

- 17 -

as all documents concerning or related to such transportation of raw or processed milk, associated costs, and the effects of transportation costs on raw or processed milk costs, pricing, or competition.

 **Request No. 54**: To the extent not produced in response to Plaintiffs' First Request Nos. 6 or 8, data or documents concerning payments made to DFA farmer members concerning the sale of raw milk in, into, or from the Relevant Area, including documents concerning costs paid by DFA farmer members for transportation, marketing, and other services provided by DFA relating to the sale of raw milk.

DATED: July 27, 2020    Respectfully submitted,

        **HUNTON ANDREWS KURTH LLP**

        s/ Ryan G. Rich
        A. Todd Brown, Sr., N.C. State Bar No. 13806
        Ryan G. Rich, N.C. State Bar No. 37015
        101 South Tryon Street, Suite 3500
        Charlotte, North Carolina 28280
        Telephone: (704) 378-4700
        tbrown@huntonak.com
        rrich@huntonak.com

        Ryan P. Phair (admitted *pro hac vice*)
        John S. Martin (admitted *pro hac vice*)
        Kevin Hahm (admitted *pro hac vice*)
        Carter C. Simpson (admitted *pro hac vice*)
        2200 Pennsylvania Avenue, NW
        Washington, DC  20037
        Telephone: (202) 955-1500
        rphair@huntonak.com
        martinj@huntonak.com
        khahm@huntonak.com
        csimpson@huntonak.com

- 18 -

*Attorneys for Food Lion, LLC*

**TROUTMAN SANDERS LLP**

s/ Jason D. Evans
Jason D. Evans, N.C. State Bar No. 27808
301 S. College Street, 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1502
jason.evans@troutman.com

James A. Lamberth (admitted *pro hac vice*)
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3362
james.lamberth@troutman.com

*Attorneys for Maryland and Virginia Milk
Producers Cooperative Association, Inc.*

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION** upon the Defendant in this lawsuit by email to the following:

James P. Cooney, III
Sarah Motley Stone
Womble Bond Dickinson LLP
301 S. College Street, Suite 3500
Charlotte, NC 28202
Jim.Cooney@wbd-us.com
Sarah.Stone@wbd-us.com

Brent F. Powell
Womble Bond Dickinson LLP
One West Fourth Street
Winston-Salem, NC 27101
Brent.Powell@wbd-us.com

W. Todd Miller
Amber McDonald
Baker & Miller PLLC
2401 Pennsylvania Avenue N.W., Suite 300
Washington, D.C. 20037
TMiller@bakerandmiller.com
AMcDonald@bakerandmiller.com

Michael G. Egge
Latham & Watkins LLP
555 Eleventh Street, NW
Washington, DC 20004
Michael.Egge@lw.com

This the 27th day of July, 2020.

s/  Ryan G. Rich
Ryan G. Rich

- 20 -