# Exhibit 3



**Womble Bond Dickinson (US) LLP**

One West Fourth Street
Winston-Salem, NC 27101

t: 336.721.3600
f: 336.721.3660

Brent F. Powell
Direct Dial: (336) 728-7023
Direct Fax: (336) 726-9023
Email: brent.powell@wbd-us.com

August 24, 2020

*By Electronic Mail*

Jack Martin (martinj@hunton.com)
Alan Bakowski (alan.bakowski@troutman.com)
Carter Simpson (csimpson@hunton.com)

Re: *Food Lion, LLC et al. v. Dairy Farmers of America, Inc.*

Counsel,

I write in follow-up to my letter of August 18, 2020 regarding Plaintiffs' Combined Second Set of Requests for Production (the "Second RFPs") served on July 29, 2020, and our meet-and-confer call of August 20, 2020. Thank you again for the taking the time to discuss the requests in detail during that call.

As we discussed, we are concerned generally with the scope of the Second RFPs. This is not a Sherman Act Section 1 horizontal conspiracy case, but is a Section 7/Section 2 foreclosure case focused on the narrow issue raised by the Complaint—i.e., whether DFA's acquisition of the Carolinas Plants in the Dean bankruptcy process may adversely impact competition in Plaintiffs' alleged markets for raw and fluid milk in North and South Carolina. The Second RFPs, however, seem intent to expand the scope of this case well beyond that narrow focus. For example, the requests as drafted seek, *inter alia*, all documents related to all meetings between Dean and DFA years prior to Dean's November 2019 bankruptcy filing, employee union issues, functionally every communication DFA has made with investors over a three year period, the stalking horse bid from the bankruptcy proceeding, all of DFA's financial documents, all documents relating to a decades-old settled litigation, seven years' worth of documents from Kentucky regarding any non-member on the off chance that DFA was trying to recruit MDVA members in the past, documents related to a milk processing facility in New Jersey, and other requests for which Plaintiffs could not articulate a rationale.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.



DFA's objections and responses to the Second RFPs are due on August 26, 2020, and our hope in the meet-and-confer was to narrow the focus of the requests in advance of the response date in order to facilitate an efficient discovery process. We believe we made some progress on that point, as there are a number of requests where the parties agreed to engage in further discussion and negotiations, particularly as it relates to document custodians and search terms. In addition, Plaintiffs agreed to consider modifying several other requests. Accordingly, we believe that those issues can be addressed, and hopefully resolved, in the normal course of discovery.

As discussed at the end of this letter, however, there remain a number of requests where the parties appear to be at an impasse. We request that Plaintiffs withdraw those requests for the reasons detailed below.

Our summary of the results of the meet-and-confer is as follows:

### I. Requests That Plaintiffs Agreed to Re-Evaluate

Our understanding is that Plaintiffs will re-evaluate **RFP Nos. 16, 24, 29, 31, 49** and **50** to determine whether they can narrow the requests and/or clarify the documents sought by these requests. Pending receipt of any revised requests, DFA will object and respond to these requests as drafted.

### II. Requests Subject to Further Discussion and/or Negotiation of Custodians and Search Terms

**RFP Nos. 9 through 15**: We expressed DFA's general concern that the phrase "Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area" makes those requests overbroad. For example, read literally, RFP No. 12 calls for the production of "all communications between or amongst DFA and its . . . customers . . . concerning or relating to . . . the sale or purchase of raw or fluid milk in the Relevant Area." Although Plaintiffs indicated that did not really want every single e-mail related to the purchase of raw or fluid milk in the Relevant Area, they were unable to articulate a limiting principle around these requests. Instead, Plaintiffs indicated that they believed DFA's concerns could be addressed through the negotiation of search terms and document custodians. Based on this discussion, DFA reserves its rights and intends to object and respond to these requests as written, subject to negotiation of custodians and search terms.

In addition, as to **RFP Nos. 9 and 10**, Plaintiffs indicated that they would accept responsive Board minutes and materials that are "non-custodial;" i.e., DFA does not need to search the files of every Board member for responsive documents (assuming that DFA has such documents), but can rely on a centralized collection of Board materials. For **RFP No. 11**, Plaintiffs agreed that DFA need not produce "all documents" or search the emails of every member of DFA's Board. Again, Plaintiffs indicated that they believed DFA's concerns could be addressed through the negotiation of search terms and document custodians, as discussed in the prior paragraph. DFA's objections and responses will reflect this understanding.



**RFP No. 17**: Plaintiffs confirmed that this request is intended to confirm that DFA's prior production of documents provided to the Department of Justice and/or State Attorneys General included documents on the specified topics (i.e., the Side Note, the DFA-Dean Supply Agreement, and the sale or purchase of raw or fluid milk in the Relevant Area). As discussed, we believe that these topics are encompassed by our prior discussions around DFA's response to RFP No. 1, and DFA's response will reflect the status of those discussions to date.

**RFP Nos. 18-23, 28, 30, 32-36**, **38-39, and 51-54:** DFA generally expressed its concern that a number of these requests seek "all documents" on the specified topics, and the lack of limiting principles raised overbreadth and burden issues. DFA also raised relevance concerns as to a number of these requests. Plaintiffs explained that they believed DFAs concerns could be mitigated through the negotiation of custodians and search terms, including further discussions if certain search terms ended up returning high volumes of documents. Based on that discussion, DFA will serve its objections and responses to the requests as written, subject to further negotiation regarding custodians and search terms.

**RFP No. 37**: Plaintiffs and DFA agreed that this request is encompassed by the parties' prior discussions regarding the *In re Southeastern Milk Antitrust Litigation*, and does not raise any new issues. Accordingly, DFA's response will reflect the status of the parties' discussions on that topic to date.

### III.     Requests Where the Parties Are at an Impasse

**RFP Nos. 25 and 26**:  These requests seek "[a]ll documents created since January 1, 2014" regarding "analyses, studies, strategies, plans, assessments, or reports" "relating to the supply, sale, or purchase of" or "concerning market conditions, market participants, market shares, or competitors in the production of" "raw milk or processed milk in, into, or from the Relevant Area."

As we explained during the meet-and-confer, DFA does not understand why Plaintiffs are requesting documents going all the way back to January 1, 2014. Plaintiffs' stated position is that DFA's conduct prior to 2017 with regard to the Carolinas Plants is relevant to this case, in that Plaintiffs contend DFA forced Dean to stop sourcing raw milk for the Carolinas Plants from MDVA prior to 2017.

As an initial matter, the requests seek far more than information related to DFA's communications with Dean regarding the sourcing of raw milk for the Carolinas Plants, and accordingly are overbroad. Plaintiffs asked if DFA would agree to search for documents going back to 2014 if Plaintiffs narrowed the scope of the subject-matter of these requests. DFA has considered the issue and its position is that searching for documents back to January 1, 2014 is disproportionate to the needs of this case, even if the requests are narrowed. Accordingly, the parties are at an impasse as to these requests.

**RFP Nos. 27, 42, and 43:** RFP No. 27 seeks "[a]ll documents created since January 1, 2014, concerning or relating to MDVA, its farmer members, or any other non-DFA producer of raw milk in the Relevant Area." In other words, Plaintiffs are requesting that DFA produce every



document for a six-and-a-half-year period that "concerns or relates" to a non-DFA member farm in a five-state area. RFP No. 42 seeks all documents created since January 1, 2013 "concerning or relating to MDVA farmer members located in Tennessee or Kentucky becoming DFA members." RFP No. 43 similarly seeks "[a]ll documents created since January 1, 2014, concerning or relating to communications between DFA and any MDVA member farmers" regardless of geographic limitation.

Plaintiffs' position appears to be that they are entitled to this discovery because they have alleged that some MDVA member farms may switch to DFA as a result of the acquisition of the Carolinas Plants in 2020. DFA's position is that the scope of these requests is disproportionate to the needs of this case as to both time and geographic scope, particularly as Plaintiffs have alleged a relevant geographic market limited to North and South Carolina. DFA understands that Plaintiffs are refusing to modify or withdraw these requests, and the parties at an impasse.

**RFP No. 40:** This request seeks all documents created since January 1, 2016 concerning a milk processing facility in New Jersey. Plaintiffs' stated theory for relevance is that they think that what they contend happened in New Jersey may happen again in North and South Carolina. DFA's position is that Plaintiffs have alleged a relevant geographic market of North and South Carolina, the supply and processing of milk in New Jersey has no relevance to this case, and the requested discovery is disproportionate. Plaintiffs refused to modify or withdraw this request, and the parties at an impasse.

**RFP No. 41:** This requests seeks all documents created since January 1, 2013, regarding "actions and/or decisions by processing facilities owned by or affiliated with Dean and located in Kentucky and Tennessee to reduce or eliminate the volume of raw milk purchased from MDVA." Again, Plaintiffs' stated theory for the relevance of these requests is that they think that what they contend happened in Kentucky and Tennessee seven years ago may happen again in North and South Carolina. DFA's position is that Plaintiffs have alleged a relevant geographic market of North and South Carolina, the supply and processing of milk in Kentucky has no relevance to this case, and the requested discovery is disproportionate. Plaintiffs refused to modify or withdraw this request, and the parties at an impasse.

**RFP Nos. 44 and 45:** These requests seek information related to formation and operation of the Appalachian Dairy Farmers Cooperative. DFA requested that Plaintiffs explain the relevance of the Appalachian Dairy Farmers Cooperative to the issues in this litigation. Plaintiffs were unable to do so during the meet-and-confer. DFA remains of the view that the Appalachian Dairy Farmers Cooperative is of minimal relevance and the requested discovery is disproportionate to the needs of the case. We look forward to receiving an explanation of the relevance of these requests.

**RFP Nos. 46, 47 and 48:** These requests seek all documents created since January 1, 2014 concerning or relating to Piedmont Milk Sales or Cobblestone Milk Cooperative. Plaintiffs were unable to explain the relevance of these requests during the meet-and-confer, particularly as to the time period of the information sought. DFA's view is that the time period of the requested



discovery is disproportionate to the needs of the case, particularly as to the time period of the information sought. We look forward to receiving an explanation of the relevance of these requests.

\* \* \*

If you believe we have misstated Plaintiffs' position on any issue or otherwise disagree with our summary of the meet-and-confer, please let us know as soon as possible. We look forward to receiving the revised requests and other information that Plaintiffs agreed to follow up on. DFA reserve all rights as to its objections and responses to the Second RFPs.

Sincerely,

**Womble Bond Dickinson (US) LLP**

Brent F. Powell