# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Food Lion, LLC, and Maryland and
Virginia Milk Producers Cooperative
Association, Inc.,

     Plaintiffs,

v.

Dairy Farmers of America, Inc.,

     Defendants.

Case No. 1:20-cv-00442

## BRIEF IN SUPPORT OF DAIRY FARMERS OF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER

### NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs Food Lion, LLC ("Food Lion") and Maryland and Virginia Milk Producers Cooperative Association, Inc. ("MDVA") have brought a narrowly focused antitrust case seeking only injunctive relief relating to the three fluid milk[1] processing plants located in North and South Carolina that Dairy Farmers of America, Inc. ("DFA") acquired out of the bankruptcy of Dean Foods Company ("Dean"). Plaintiffs assured this Court that they were aware of the

---

[1] "Fluid milk" is the term used to denote conventional drinking milk. It encompasses milk sold in various sizes at grocery stores (e.g., gallons and half-gallons), and well as milk sold in schools. It does not include organic milk or milk that is processed and packaged for extended shelf life.

1

need for "discipline" in discovery to "keep the case moving and make sure that the interests of the various parties are protected." (ECF No. 29 at 23:17-19.) But the moment the Court denied DFA's motion to dismiss Plaintiffs' complaint, Plaintiffs launched wide-ranging discovery, serving an additional forty-six (46) document requests on DFA. It would be impossible for any company to comply with Plaintiffs' expansive view of discovery under the expedited schedule in this case.

To make matters worse, Plaintiffs have not engaged in reciprocal discovery. As of the filing of this motion, Plaintiffs have produced only a few dozen actual business documents. Moreover, Food Lion has resisted producing information that would allow DFA to understand the data that it has produced, notwithstanding the Court's order that structured data be provided by August 15, 2020. In contrast, DFA has produced over 18,000 documents, which in turn allowed Plaintiffs to raise specific questions about which custodians DFA should search (something that DFA cannot do as to Plaintiffs' custodians given the sparsity of Plaintiffs' productions to date), and to craft, should they so choose, focused follow-up discovery based on perceived gaps in what Plaintiffs received in response to their initial discovery requests (again, something that DFA cannot do as to Plaintiffs given the sparsity of Plaintiffs' productions to date).

DFA files this Motion to halt Plaintiffs' abuse of the discovery process. DFA requests that the Court intervene to prevent DFA from having to respond to 16 kitchen-sink style discovery requests, most of which have little if anything to do with raw or fluid milk sales or processing in North or South Carolina, the area of the country that Plaintiffs have asserted is the "relevant geographic market."[2]

## BACKGROUND

### A.    The Discovery Schedule

Plaintiffs initially sought expedited discovery in this case and proposed to serve 18 document requests on DFA. At a June 4, 2020 Status Conference, the Court expressed some concern about the scope of Plaintiffs' proposed requests, observing that "it's one thing when you're just in the middle of a regular ordinary 'ole case to ask for the kitchen sink and say we'll work it all out, but when you're asking for expedited discovery on a 90-day time frame, don't you bear a significant responsibility for proposing narrow, targeted discovery?" (ECF No. 29 at 29:15-20.) The Plaintiffs accepted that responsibility.  Subsequently, on June 10, 2020, the Court entered an Order (the "Expedited Discovery Order") (ECF No. 28) allowing Plaintiffs to serve 12

---

[2] DFA timely served written objections and responses to all of the Second RFPs on August 26, 2020.

targeted discovery requests on DFA and requiring DFA to serve written responses and objections to those requests by July 17, with DFA's document production to begin at the same time on a rolling basis. Per the limits of the Expedited Discovery Order, Plaintiffs served on DFA on June 17, 2020 eight requests for production of documents (the "First RFPs").

At the Court's suggestion, the parties also negotiated a Stipulated Discovery and Briefing Schedule/Order (the "Scheduling Order"), which the Court entered on July 2, 2020. The Scheduling Order established an expedited 90-day schedule for written discovery and document production. Specifically, the production of structured data by all parties was to be completed by August 15, 2020. The parties had until August 31, 2020 to serve additional written discovery requests, and all document productions are to be completed by October 2, 2020.[3]

## B. The Parties' Document Productions to Date

On July 17, 2020, DFA served its written responses and objections to the First RFPs. (*See* Declaration of Amber L. McDonald ("McDonald Dec.") ¶4.) That same day, DFA produced raw milk sales data for North and South

---

[3] On August 31, Plaintiffs served a Combined Third Set of Requests for Production of Documents containing an additional five requests, including one request that seeks documents responsive to 11 "specifications" contained in a subpoena issued to Southern Foods Group, LLC d/b/a Dean Foods Company, the legacy entity for Dean.

4

Carolina for the time period from January 2017 to May 2020. (*Id*.) In a show of good faith, DFA produced this data while the parties were still in the process of negotiating a Protective Order and ESI Protocol, and did not use those negotiations as a basis to delay the data production, even though it could have waited until August 15 under the terms of the Scheduling Order. In response to Plaintiffs' RFP No. 1, DFA also produced over 18,000 pages of documents relating to raw milk or fluid milk produced or sold in North and South Carolina that were previously produced to the Department of Justice and/or state Attorneys General. (*Id*. ¶5.)

On August 7, 2020, DFA produced documents responsive to Plaintiffs' RFP Nos. 2 and 6, and, per negotiations between the parties, voluntarily supplemented its raw milk sales data to include data for Virginia, North Carolina, South Carolina, Georgia, and part of Tennessee, for the period from January 1, 2017 through June 30, 2020. (*Id*. ¶6.) On August 10, 2020, DFA produced data responsive to Plaintiffs' RFP No. 8. (*Id*. ¶7.) On August 14, 2020, DFA produced documents responsive to Plaintiffs' RFP Nos. 5 and 8, and produced a copy of DFA's Hart-Scott-Rodino filing with the Justice Department. (*Id*. ¶8.) On August 20, DFA made another significant production, including an expanded production of materials produced to the DOJ, and supplementing the previous raw milk sales data with the now-completed July

5

2020 data. (*Id*. ¶9.) On August 31, 2020, DFA produced additional documents responsive to Plaintiffs' RFP Nos. 1, 2, and 8. (*Id*. ¶10.)

Plaintiffs, in contrast, have produced little in the way of discovery. DFA served requests for production of documents on July 10. Both MDVA and Food Lion served their responses on August 10, but neither Plaintiff made any production of documents with its response. (*Id*. ¶12.) On August 14, Food Lion produced 33 documents, and MDVA produced 12 documents. (*Id*. ¶13.) On August 21, Food Lion produced an additional 27 documents, and MDVA produced 23 documents. (*Id*. ¶14.) As of August 31, Plaintiffs have produced a total of 95 documents, more than two weeks after serving their responses, and 45 days after receiving DFA's requests. (*Id*. ¶15.) Of the 95 documents Plaintiffs produced, 88 are communications with DOJ or documents cited by Professor Shor in his declaration (ECF No. 15). (*Id*.) Plaintiffs also have also declined to start custodian and search term-based review until all written discovery is served, despite the Court's Order that allowed written discovery to be served through August 31. (*Id*. ¶16.)

### C.    Plaintiffs' Second Set of RFPs

On July 27, 2020—just ten days after DFA served its written responses to the First RFPs—Plaintiff served a second set of requests for production (the

"Second RFPs") containing an additional 46 document requests. (McDonald Dec. Exhibit 1.)

DFA notified Plaintiffs of its concerns about the scope and breadth of the Second RFPs on August 18, 2020 and requested a meet-and-confer before DFA's written responses were due. (*Id.* Exhibit 2.) The parties met-and-conferred telephonically on August 20, 2020, and DFA confirmed the substance of that call on August 24, 2020. (*Id.* Exhibit 3.) During the meet-and-confer, Plaintiffs agreed to consider modifying six requests, and the parties agreed to table their discussion of some of the other requests pending DFA's service of its formal objections and responses and further negotiations between the parties. (*Id.*) As to a dozen of the Second RFPs, however, the parties remained at an impasse. (*Id.* at 3-5.) On August 26, 2020, the day that DFA's responses were due, Plaintiffs followed up on the meet-and-confer by reformulating three of the requests they agreed to reconsider, but remaining firm on the others. (*Id.* Exhibit 4.) Although Plaintiffs indicated a full response to DFA's August 24, 2020 letter would be forthcoming, DFA has not received a response. DFA timely served its objections and responses to the Second RFPs on August 26, 2020. (*Id.* Exhibit 5.)

Based on Plaintiffs' current position, DFA seeks relief as to 16 of the 46 requests. Those 16 requests fall into six categories: 1) Requests seeking

7

discovery of "all documents" having to do with MDVA, its farmer members, and other non-DFA farmers **(RFP Nos. 27, 42, and 43)**; 2) requests for "all documents concerning or relating" to raw milk purchases for a non-fluid milk processing plant located in New Jersey going back to January 1, 2016, and "all documents concerning or relating" to Deans' raw milk purchasing decisions in Kentucky and Tennessee going back to January 1, 2013 **(RFP Nos. 40 and 41)**; 3) requests for "all documents related to or used in" preparing DFA's Answer and "all documents pertaining to, relied upon, identified, or referred to by DFA in its interrogatory responses **(RFP Nos. 49 and 50)**; 4) requests for "all documents" related to studies or analyses of the raw and fluid milk markets for a five-state area going back six years **(RFP Nos. 25 and 26)**; 5) requests for "all documents" created regarding two other dairy farmer cooperatives and a dairy marketing company **(RFP Nos. 44 through 48)**, and 6) "catch-all" requests for "all documents concerning or relating to DFA's, Dean's, *or any other company's*" pricing for fluid milk and "to the extent not produced in response" to Plaintiffs' first document requests, "documents concerning or relating to the supply of processed milk" in the Relevant Area **(RFP Nos. 29 and 31**).

# I.  STANDARD OF REVIEW

Under Rule 26(b)(2)(c), "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Rule 26(b)(1), in turn, permits discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit

Under Rule 26(b)(1), "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Products Liab. Litig.*, 317 F.R.D. 562, 564, (D. Ariz. 2016). "The purpose of the presently codified proportionality principle is to permit discovery of that which is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Crystal Lakes v. Bath & Body Works, LLC*, No. 2:16-CV-2989-MCE-GGH, 2018 WL 533915, at *1 (E.D. Cal. Jan. 23, 2018). Even prior to the

amendments to Rule 26 to incorporate the proportionality principle, this Court recognized that "requests seeking 'any and all' documents 'relating to' are overly broad." *Donnelly v. Arringdon Dev., Inc*, No. 1:04CV889, 2005 WL 8167556, at *1 (M.D.N.C. Nov. 8, 2005).

As the party resisting discovery, DFA bears the burden of persuasion, *Santiago v. S. Health Partners*, No. 15CV589, 2016 WL 4435229, at *2 (M.D.N.C. Aug. 19, 2016), but as noted in the advisory committee notes to the 2015 amendments to Rule 26, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."

## II. PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION ARE DISPROPORTIONATE TO THE NEEDS OF THIS CASE.

This is not an antitrust case alleging a horizontal conspiracy among competitors to fix prices, nor is it a monopolization (or intent to monopolize) case where a plaintiff seeks monetary damages. Rather, this a narrow lawsuit under Section 7 of the Clayton Act and Section 2 of the Sherman Act seeking to force a divestiture of one or more fluid milk processing plants in North and

10

South Carolina that DFA acquired out of Dean's bankruptcy, pursuant to an open, court-supervised bidding process.[4]

Plaintiffs' basic allegation is that DFA's acquisition of three former Dean Foods fluid milk processing plants in North and South Carolina will foreclose Plaintiffs' access to alleged markets for raw and fluid milk in those two states. Plaintiffs assert that their theory allows them to take timeless, geographically limitless discovery under the rubric that "everything is relevant" in an antitrust case. In doing so, Plaintiffs not only ignore the narrow focus on the theory of their case and this Court's admonition that, in exchange for an expedited discovery process, Plaintiffs bear responsibility to conduct focused discovery.

---

[4] This lawsuit represents Plaintiff MDVA's third bite at the apple as to the Carolinas Plants. MDVA initially attempted to buy one of the plants out of the bankruptcy proceeding, but its bid was rejected. MDVA also attempted unsuccessfully to convince the Department of Justice to force DFA to divest the Carolinas Plants as a condition of DOJ's approval of the Asset Sale.

Food Lion did not even submit a bid for a plant in the Dean bankruptcy, even though it is part of a $62 billion multi-national grocery conglomerate that operates six brands of grocery stores in the U.S. alone.

**A.** **Plaintiffs' Requests for All Documents Concerning or Related to MDVA or Independent Farmers for a Six-Year Period Are Overbroad and Disproportionate.**

**Requests for Production Nos. 27, 42, and 43:** RFP No. 27 seeks "[a]ll documents created since January 1, 2014, concerning or relating to MDVA, its farmer members, or any other non-DFA producer of raw milk in the Relevant Area."[5] In other words, Plaintiffs are requesting that DFA produce every document for a six-and-a-half-year period that "concerns or relates" to MDVA, any of its members, or any non-DFA member farm in a five-state area, regardless of context or substance. RFP No. 42 seeks all documents created since January 1, 2013 "concerning or relating to MDVA farmer members located in Tennessee or Kentucky becoming DFA members." RFP No. 43 similarly seeks "[a]ll documents created since January 1, 2014, concerning or relating to communications between DFA and any MDVA member farmers" without any limitation as to geographic scope or substance. To give this request some context, MDVA purports to have over 950 members in 11 states. (ECF No. 1 at ¶2).

---

[5] For purposes of the Second RFPs, the "Relevant Area" consists of North Carolina, South Carolina, Georgia, Virginia, and the portion of Tennessee located in Federal Milk Marketing Order No. 5 (a small portion in Eastern Tennessee that includes Knoxville).

These requests are disproportionate and overbroad in that they seek all of DFA's documents regarding MDVA and its member farmers for a six-year period (and even longer for MDVA members in Kentucky or Tennessee), regardless of context or subject matter. In *Elsayed v. Family Fare LLC*, No. 1:18CV1045, 2019 WL 8586708 (M.D.N.C. Oct. 31, 2019), this Court rejected a similarly broad request that would "require Defendants to produce all e-mails for a three-year period and all text or instant messages for a six-year period . . . without regard to the substance of those communications" as a "blatant fishing expedition essentially seeking all communications relating to Plaintiff rather than only those having any apparent or possible nexus to the issues in this case." 2019 WL 8586708, at *3 (quoting *Ge v. Dun & Bradstreet, Inc.*, 2017 WL 10059004, at *4 (M.D. Fla. Jan. 4, 2017) (brackets and alterations omitted)). *See also Kleppinger v. Texas Dep't of Transp.*, No. CV L-10-124, 2012 WL 12893652, at *20 (S.D. Tex. Mar. 12, 2012) ("This request is overbroad in that it basically seeks all communications regarding Plaintiff.") Plaintiffs' requests here suffer from the same overbreadth problem.

Plaintiffs' position appears to be that they are entitled to this discovery because they have alleged that some MDVA member farms may switch to DFA as a result of the acquisition of the Carolinas Plants. (Compl. ¶116.) Plaintiffs' requests are disproportionate to that narrow allegation, however, as Plaintiffs

13

seek all documents concerning or related to non-DFA farmers *who are also non-MDVA farmers*. Plaintiffs have offered no explanation as to how documents regarding non-MDVA members are relevant to their allegations.

Nor have Plaintiffs explained how documents "concerning or related to communications between DFA and any MDVA farmer members," without any limit on geography or subject matter, are relevant to their allegations that some MDVA farmers may switch to DFA as a result of the acquisition of the Carolinas Plants. Moreover, the six-year time period of these requests—especially when coupled with the lack of any geographic limitation as to the request for communications with MDVA's member farmers—is also unreasonable given Plaintiffs' failure to point to any specific relevance that documents and communications from 2014 may have in this case (in addition to their disregard of the otherwise agreed-upon time period). In short, much like the request at issue in *Elsayed*, Plaintiffs' requests are little more than a "fishing expedition" seeking all documents concerning or relating to MDVA, "rather than only those having any apparent or possible nexus to the issues in this case."

### B. Plaintiffs' Requests for Documents That Relate to Events Far Outside the Relevant Geographic Area Are Irrelevant and Disproportionate.

**Request for Production No. 40:** This request seeks "[a]ll documents created since January 1, 2016, concerning or relating to the decisions and/or actions of Cumberland Dairy in New Jersey and/or DFA to reduce or eliminate the volume of raw milk that the Cumberland Dairy processing facility purchased from MDVA." Cumberland Dairy is a milk processing plant that produces shelf-stable products.[6] In other words, Plaintiffs seek discovery about raw milk purchasing decisions made as long as four years ago for a processing plant located in New Jersey that does not operate in the fluid milk market that Plaintiffs have contended is the relevant product market for the analysis of this case. Plaintiffs' apparent theory of relevance is that they contend that what Cumberland and DFA allegedly did in 2016 in New Jersey is probative of what DFA allegedly *might* do in North and South Carolina in 2021. This request—which would inevitably lead to a "trial-within-a-trial" about Cumberland Dairy—seeks irrelevant information and is disproportionate to the needs of the case because it has nothing to do with Plaintiffs' alleged product market of fluid milk, the alleged geographic market of North and

---

[6]   See   https://cumberlanddairy.com/wp_super_faq/what-is-ultra-pasteurization/ (last retrieved on September 1, 2020).

South Carolina, or even anything to do with the expanded "Relevant Market" set out in the Second RFPs.

**Request for Production No. 41:** This request seeks "[a]ll documents created since January 1, 2013, concerning or relating to actions and/or decisions by processing facilities owned by or affiliated with Dean and located in Kentucky and Tennessee to reduce or eliminate the volume of raw milk purchased from MDVA." Again, Plaintiffs appear to contend that actions allegedly taken by Dean Foods in Kentucky and Tennessee seven years ago are probative of what DFA allegedly will do in North and South Carolina in 2021. As with the prior request, RFP No. 41 would lead to litigation of issues that have at best tangential relevance to the present case, and is disproportionate in light of Plaintiffs' alleged geographic market of North and South Carolina. Plaintiffs' request for documents going all the way back to January 1, 2013 is similarly disproportionate given the parties' agreement that the relevant time period in this case is January 1, 2017 to July 30, 2020.

### C. Plaintiffs' Requests for All Documents That Relate or Pertain to DFA's Pleadings and Interrogatory Responses Lack the Required Particularity.

**RFP Nos. 49 and 50:** These requests seek "[a]ll documents related to or used in the preparation of any allegation, denial, or affirmative defense raised in Your pleadings in the Pending Action," and [a]ll documents

16

pertaining to, relied upon, identified, or referred to by You in responding to any Interrogatory propounded by Plaintiffs in the Pending Action." This Court has repeatedly rejected such "broad-brush" requests. In *Donnelly v. Arringdon Dev., Inc*, No. 1:04CV889, 2005 WL 8167556, at *2 (M.D.N.C. Nov. 8, 2005), the party served a request for "all documents identified in or relied upon in response to Defendant's interrogatories." The Court explained that "[s]uch a broad-brush request is analogous to seeking all documents relating to the allegations in a complaint, and it has been shown that such a sweeping request is not permitted." Similarly, in *Preferred Carolinas Realty*, *Inc. v. Am. Home Realty Network*, *Inc.*, No. 1:13CV181, 2014 WL 1320133 (M.D.N.C. Mar. 28, 2014), a party had requested "not only documents that *support* Plaintiff's interrogatory answers, but also those that *refer* or *relate* to facts identified." *Id.* at *4 (emphasis in original). The Court had little trouble concluding that the request violated Rule 34's particularity requirement. *Id.* The same result should apply here.

### D. Plaintiffs' Requests for Documents Going Back Six Years Are Overbroad and Disproportionate.

**RFP Nos. 25 and 26**:  These requests seek "[a]ll documents created since January 1, 2014, concerning or relating to analyses, studies, strategies, plans, assessments, or reports relating to the supply, sale, or purchase of" or "concerning market conditions, market participants, market shares, or

17

competitors in the production of" "raw milk or processed milk in, into, or from the Relevant Area." As noted above, Plaintiffs' request for "all documents . . . concerning or related to" the items listed in the RFPs is improper. *See Donnelly*, 2005 WL 8167556, at \*1. DFA does not dispute that market assessments or analyses may be relevant to Plaintiffs' allegations and discoverable, but Plaintiffs have failed to serve narrowly-tailored requests or explain why or how analyses of market conditions or market shares from 2014 are probative of the markets for raw and processed milk *as they exist today*.

During the meet-and-confer, Plaintiffs contended that this request was relevant to allegations that DFA forced Dean to stop sourcing raw milk for the Carolinas Plants from MDVA prior to 2017. Even if that were true or relevant (it is not), however, the requests go far beyond that narrow issue and instead seek documents going back six-years and covering a five-state area. Moreover, Plaintiffs' logic is circular since they seem to contend that it is relevant to explore how MDVA stopped being a supplier to Dean many years ago to show that the DFA acquisition would foreclose them now. Again, in light of the narrow scope of Plaintiffs' theory of harm, and the relief requested, the breadth of these requests is disproportionate.

## E. Plaintiffs' Requests for Documents Related to Other Milk Cooperatives Are Disproportionate and Irrelevant.

**RFP Nos. 44 through 48:** These requests seek "all documents" "concerning or relating" to the formation and operation of the Appalachian Dairy Farmers Cooperative, as well as all documents created since January 1, 2014 concerning or relating to Piedmont Milk Sales or Cobblestone Milk Cooperative. The requests are not limited to documents that deal with the activities of those entities within North or South Carolina or even the Relevant Area. DFA requested that Plaintiffs explain the relevance of these requests to the issues in this litigation during the meet-and-confer, but Plaintiffs were unable to do so, particularly as to the time period of the information sought.

DFA does not dispute that data regarding sales or marketing of raw milk in the relevant area by Appalachian, Piedmont, and Cobblestone will likely be relevant to market definition issues, or that Appalachian, Piedmont, and Cobblestone may even have relevant information in their possession. Any such information, however, is best obtained from those entities. *See* Rule 26(b)(1) (listing "the parties' relative access to relevant information" as a factor in the proportionality analysis). Moreover, Plaintiffs' requests are not narrowly-tailored to focus on market definition. DFA does not understand—and Plaintiffs have not explained—how the "formation and operation" of Appalachian, a cooperative that is legally distinct from DFA and MDVA, is

19

relevant. Nor have Plaintiffs explained why they require "all documents" since January 1, 2014 in DFA's possession that concern or relate to Piedmont and Cobblestone, without regard to the subject matter of the documents. Once again, Plaintiffs' requests appear to be a "fishing expedition" without any nexus to their allegations in this case.

### F. DFA's "Catch-All" Requests Are Disproportionate and Fail to Specify the Documents Requested.

**RFP Nos. 29 and 31**: As revised by Plaintiffs, RFP No. 29 seeks, "[t]o the extent not produced in response to Plaintiffs' First Requests, documents concerning or relating to the supply of processed milk in, into, or from the Relevant Area by DFA, Dean, or a competitor, to Food Lion or other major customers in the Relevant Area." The request for documents "to the extent not produced" in response to prior requests is an inappropriate "catch all" request that fails to specify the requested documents with reasonable particularity. *See U.S. ex rel. Fago v. M & T Mortgage Corp.*, 238 F.R.D. 3, 13 (D.D.C. 2006) ("Such a catch-all request cannot operate as a substitute for tailored document requests.") Moreover, the request for documents "concerning or relating" to the supply of processed milk" suffers from the same overbreadth and proportionality issues discussed above.

RFP No. 31 is a similarly broad request for "[a]ll documents concerning or relating to DFA's, Dean's, *or any other company's*" pricing in connection with

20

raw or processed milk sales in the Relevant Area (emphasis added). This request essentially asks for every document relating to raw or fluid milk pricing in DFA's possession, and suffers from the "all documents concerning or relating" defect as discussed above. Moreover, DFA has already produced data regarding its actual sales of raw and processed milk in the Relevant Area. DFA does not dispute that pricing data is relevant to Plaintiffs' allegations in this case, but Plaintiffs' catch-all request for every document "concerning or relating" to milk pricing is overbroad and disproportionate.

## CONCLUSION

For the reasons set forth above, DFA requests that the Court enter a protective order providing that DFA need not respond to Plaintiffs' Requests for Production Nos. 25 through 27, 29, 31, and 40 through 50, and to grant such other relief as it deems necessary and appropriate.

21

Date: September 1, 2020                    Respectfully submitted,

**BAKER & MILLER PLLC**                    **WOMBLE BOND DICKINSON (US)**
W. Todd Miller*                            **LLP**
Amber McDonald*
2401 Pennsylvania Avenue N.W.              */s/ Brent F. Powell*
Suite 300                                  James P. Cooney III
Washington, D.C. 20037                     N.C. State Bar No. 12140
Phone: 202-663-7820                        Sarah Motley Stone
Fax: 202-663-7849                          N.C. State Bar No. 34117
TMiller@bakerandmiller.com                 One Wells Fargo Center,
AMcDonald@bakerandmiller.com               301 S College St
                                           Suite 3500
**LATHAM & WATKINS LLP**                   Charlotte, North Carolina 28202
Michael G. Egge*                           Phone: 704-331-4900
555 Eleventh Street, NW                     Fax: 704-331-4955
Washington, DC 20004-1304                  Jim.Cooney@wbd-us.com
Phone: 202-637-2285                        Sarah.Stone@wbd-us.com
Michael.Egge@lw.com
Attorneys for
Dairy Farmers of America, Inc.             Brent F. Powell
                                           N.C. State Bar No. 41938
*By Special Appearance*                    One West Fourth Street
                                           Winston-Salem, North Carolina 27101
                                           Phone: 336-721-3600
                                           Fax: 336-721-3660
                                           Brent.Powell@wbd-us.com

*Attorneys for Dairy Farmers of America, Inc.*

22

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT</u>

I hereby certify that the foregoing brief complies with the word limits in

Local Rule 7.3.

*/s/ Brent F. Powell*
Brent F. Powell (N.C. Bar No. 41938)
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston Salem, NC 27101
Tel: 336-728-7023
Email: Brent.Powell@wbd-us.com

*Attorney for Dairy Farmers of America, Inc.*
