# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Food Lion, LLC, and Maryland and
Virginia Milk Producers Cooperative
Association, Inc.,

      Plaintiffs,

v.

Dairy Farmers of America, Inc.,

      Defendants.

Case No. 1:20-cv-00442

## DAIRY FARMERS OF AMERICA, INC.'S
## BRIEF IN OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 37 and Local Rules 7 and 37.1, Dairy Farmers of America, Inc. ("DFA") files this Brief in Opposition to Food Lion, LLC ("Food Lion") and Maryland and Virginia Milk Producers Cooperative Association, Inc.'s ("MDVA") (collectively "Plaintiffs") Motion to Compel ("Motion") (ECF 46 (motion) and 47 (brief in support)).

## INTRODUCTION

Based on the mere fact that the instant lawsuit concerns "antitrust or competition issues," Plaintiffs served blanket requests for all documents in DFA's possession related to the Department of Justice ("DOJ") and state Attorneys General ("state AGs") investigation of the Dean Foods asset sale (the

"Investigation"). The asset sale involved DFA's acquisition of 44 milk processing plants located throughout the country; this case involves just three of those plants, located in only two states (North Carolina and South Carolina). In addition, Plaintiffs requested not just all documents produced to the DOJ and state AGs, but all communications with the DOJ and state AGs—including confidential settlement negotiations—and apparently all supposed communications with third parties about those confidential settlement negotiations.

Federal courts do not condone "cloned" or "piggyback" discovery—a request for everything a party produced in some separate litigation or investigation. Instead, the discovering party must "do its own work" by directly requesting, and explaining the relevance of, the documents it seeks to obtain. Despite Plaintiffs ignoring this guidance, and given the expedited nature of this matter, DFA in good faith produced more than 2,500 documents in response to Plaintiffs' "cloned" request, carefully identifying the documents that pertain to the relevant geographic area[1] in this case and/or "global" business issues that necessarily included the Relevant Geographic Area. From

---

[1] In this case, while Plaintiffs pled a geographic market of North and South Carolina (ECF 1 at ¶ 21), for the purposes of discovery, the parties agreed to an expanded geographic market of Virginia, North Carolina, South Carolina, Georgia, and the portion of Tennessee in Federal Milk Marketing Order 5 (the "Relevant Geographic Area").

the DOJ productions, DFA only withheld documents that had nothing to do with Plaintiffs' claims or the Relevant Geographic Area. In addition, DFA withheld communications with the DOJ that contain compromise or settlement offers that are protected from discovery by Federal Rule of Evidence 408.

Plaintiffs nonetheless now seek to compel production of two categories of documents:

(1) any document DFA has withheld on the basis of Rule 408; and

(2) all materials DFA produced to DOJ "arising from the department's interest in the *In re Southeastern Milk Litigation.*"

Plaintiffs are entitled to neither. Settlement communications are protected by Rule 408 from discovery, and the documents from *Southeastern Milk*— multidistrict litigation originally filed in 2007, and which involved entirely different antitrust claims than those at issue here—have no relevance to the Plaintiffs' claims. Accordingly, DFA requests that the Motion to Compel be denied.

## BACKGROUND

Discovery in this matter has been proceeding on an expedited, 90-day schedule, as DFA described in its recently filed Brief in Support of Motion for Protective Order. (ECF 54 at pp. 3-8). The pending motion seeks to compel DFA to produce materials related to the Investigation.

3

Plaintiffs' **RFP No. 1** requested:

> All documents previously produced by DFA or Dean to the U.S. Department of Justice and/or state Attorneys General in connection with their investigation(s) and review(s) of the Asset Sale, excluding any documents that relate exclusively to milk processing plants outside of the relevant geographic region.

(*See* Declaration of Amber L. McDonald, filed herewith (hereinafter "Decl."), Ex. 1 at 8).  During the Investigation, DFA produced over 14,000 documents to the DOJ and state AGs.  As RFP No. 1 excludes, by its own terms, documents "that relate exclusively to milk processing plants outside of the relevant geographic region," DFA ran 132 search terms against the DOJ and state AGs productions to identify possibly responsive documents related to the Relevant Geographic Area and had the resulting "hits" reviewed for responsiveness. (Decl. at ¶ 6).  On July 17, 2020, DFA served its written responses and objections to the First RFPs and simultaneously produced[2] 2,500 documents, consisting of over 18,000 pages, related to raw milk or fluid milk produced or sold in the parties' agreed-upon Relevant Geographic Area and previously produced to the DOJ.  (Decl. at ¶ 6 and Ex. 2).

---

[2] DFA notes that it made this initial production even though the parties were still in the process of negotiating a Protective Order and ESI Protocol.  This first production also included its raw milk sales data for North and South Carolina for the time period of January 2017 to May 2020.  (Decl. ¶¶ 6, 9).

**Plaintiffs' RFP No. 3** sought:

> All communications between DFA on the one hand and any third party on the other, including Dean, regarding potential antitrust or competition issues associated with the Asset Sale, excluding any documents that relate exclusively to milk processing plants outside of the relevant geographic region.

(Decl., Ex. 1 at 8). With respect to RFP No. 3, DFA is in the process of collecting custodian emails, applying search terms, and reviewing the resulting documents to identify responsive documents for production. (Decl. ¶ 9).[3] DFA has identified six custodians likely to have non-duplicative documents responsive to this Request. *Id.* It has applied 71 search terms and is reviewing documents for responsiveness. *Id.* DFA began its production of documents responsive to RFP No. 3 on September 4, 2020. *Id.*

Plaintiffs' Motion does not challenge the adequacy of DFA's collection or its process for determining which of the DOJ and state AGs documents relate to the Relevant Geographic Area. Rather, Plaintiffs seek to compel more from DFA, attempting to push out the boundaries of relevance and proportionality, without regard for the guardrails of the Federal Rules. Despite having already produced thousands of pages of relevant documents, Plaintiffs move the Court to compel production of two more categories of documents: (1) a single

---

[3] DFA began the processing of collecting emails and testing search terms on July 3, 2020, several weeks before Plaintiffs initiated discussions regarding document custodians and search terms. (Decl. at ¶ 9).

settlement communication with the DOJ relating to the Relevant Geographic Area; and (2) thirty-two (32) documents from the *Southeastern Milk* litigation that were produced to the DOJ.[4]  While the volume is small, the underlying issue is paramount.  Plaintiffs have alleged certain claims under specific theories to which DFA has responded and produced (and continues to produce) documents.  But, through discovery, Plaintiffs seek to open doors to which they are not entitled, to which they cannot articulate actual relevance to their alleged claims, which are not proportionate, which they cannot pursue at trial, and which are closed by the Federal Rules for good reason.

## ARGUMENT

## I.   LEGAL STANDARD

Rule 26(b)(1) permits discovery of nonprivileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case."  Both relevancy and proportionality are required.  *See Elsayed v. Family Fare LLC*, No. 1:18CV1045, 2019 WL 8586708, at *2 (M.D.N.C. Oct. 31, 2019).  *See also In re Bard IVC Filters Products Liab. Litig.*, 317 F.R.D. 562, 564, (D.

---

[4] The remaining documents from the previous DOJ productions relate to assets outside the Relevant Geographic Area. (Decl. at ¶ 7). (This should not be surprising, as the Asset Sale resulted in a DOJ settlement calling for the divestment of certain plants in the Midwest and Northeast—well outside the Relevant Geographic Area for this case).  The net effect of Plaintiffs' continued insistence on documents reflecting settlement negotiations with the DOJ and state AGs will be the production of a lengthier privilege log.

Ariz. 2016) ("Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case."). Requiring both ensures "discovery of that which is needed to prove a claim or defense [and] eliminate[s] unnecessary or wasteful discovery." *Crystal Lakes v. Bath & Body Works, LLC*, No. 2:16-CV-2989-MCE-GGH, 2018 WL 533915, at *1 (E.D. Cal. Jan. 23, 2018). Proportionality is determined by considering several factors, including "the importance of the issues at stake, … the importance of the discovery in resolving those issues, ... and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *Elsayed*, 2019 WL 8586708, at *2.

Pursuant to Rule 37(a)(3)(B)(iii), a party may move to compel production of documents. The party seeking discovery must establish "threshold or apparent relevance." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009); *see also* Fed. R. Civ. P. 26 *advisory committee's note to 2015 amendment* (moving party "should be able to explain the ways in which the underlying information bears on the issues as that party understands them"). If this threshold showing is made, the resisting party has the ultimate burden of persuading the Court that the sought-after documents are overbroad or not relevant to the claims at issue, *see Merz N. Am., Inc. v. Cytophil, Inc.*, 5:15-CV-262-H-KS, 2017 WL 4274856, at *1 (E.D.N.C. Sept. 26,

7

2017), or that the documents have only "marginal relevance" that is outweighed by competing factors, *Desrosiers*, 675 F. Supp. 2d at 601.

Similarly, the parties have a "collective responsibility" with respect to proportionality. Fed. R. Civ. P. 26 *advisory committee's note to 2015 amendment*. "The party seeking discovery has the burden to establish its … proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted." *Bost v. Wexford Health Sources, Inc.*, CV ELH-15-3278, 2020 WL 1890506, at *8 (D. Md. Apr. 15, 2020).

A party resisting discovery on the basis of a privilege has the burden of proving that the privilege applies. *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46, 50 (M.D.N.C. 1987) ("This duty requires the proponent to make a sufficient evidentiary showing, through *in camera* submissions if necessary, in order to explain and prove the basis for the privilege.").

## II. PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY OF DFA'S SETTLEMENT COMMUNICATIONS WITH THE DOJ AND STATE AGs.

### A. DFA's Settlement Negotiations with the DOJ and State AGs Are Protected from Disclosure Under Rule 408.

Federal Rule of Evidence 408 protects the confidentiality of certain materials relating to settlement, including conduct or statements made during

8

settlement negotiations. *See* Fed. R. Evid. 408(a)(2) (specifically identifying "negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority").

This Court has previously declined to order the production of documents relating to settlement negotiations, even while concluding that settlement agreements themselves are not protected by Rule 408. *Kaplan Companies, Inc. v. Peoplesoft USA, Inc.*, No. 1:03CV1014, 2006 WL 8447846, at *2 (M.D.N.C. Mar. 15, 2006) ("Clearly, all documents which form the settlement agreements must be produced, but *Kaplan need not produce documents concerning negotiations, etc.*") (emphasis added). As the *Kaplan* court noted, Rule 408 "has as its major purpose the protection of [settlement] ***negotiations***. The rule allows parties to engage in open and frank discussion without fear of reprisal at trial. Once an agreement has been reached, there is a lesser interest in protecting the settlement agreement as opposed to the negotiations themselves." *Id.* (emphasis added). Accordingly, the Court in *Kaplan* concluded that fully executed settlement agreements were subject to production but not the surrounding negotiations. *Id.*

The Sixth Circuit has treated Rule 408 as an outright "privilege" from discovery. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) ("[W]e believe a settlement privilege serves a

9

sufficiently important public interest, and therefore should be recognized."); *Westlake Vinyls, Inc. v. Goodrich Corp.*, 5:03 CV 00240 R, 2007 WL 1959168, at *3 (W.D. Ky. June 29, 2007) (affirming order "protecting from discovery only those documents created in furtherance of settlement negotiations"); *Allen Cty. v. Reilly Indus., Inc.*, 197 F.R.D. 352 (N.D. Ohio 2000) (denying motion to compel content of settlement negotiations); *cf. Carey-Canada, Inc. v. Aetna Cas. & Sur. Co.*, 118 F.R.D. 250, 251 (D.D.C. 1987) (applying attorney-client privilege to protect "the fruits of settlement negotiations").

In line with the reasoning of this Court in *Kaplan*, *Goodyear* explained that the privilege, at its core, attached to settlement *negotiations*. *Goodyear*, 332 F.3d at 977 ("[S]tatements made **in furtherance of settlement** are privileged and protected from third-party discovery."). Parties "must be able to make hypothetical concessions, offer creative quid pro quos, and generally make statements that would otherwise belie their litigation efforts. Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost." *Goodyear*, 332 F.3d at 980.

The document sought by Plaintiffs directly implicates the policy concerns raised by *Goodyear* and *Kaplan*. Importantly, the settlement agreement between DFA and DOJ is not at issue, as the terms of the final settlement are

publicly available: a Complaint, Proposed Final Judgment, and competitive impact statement were filed in the District Court for the Northern District of Illinois (1:20-cv-2658). The settlement agreement did not require any divestiture or action in the Relevant Geographic Area for this case; rather it required the divestment of three plants, located in Illinois, Wisconsin, and Massachusetts (the "DOJ Settlement"). Although Plaintiffs have full knowledge of the DOJ Settlement, they seek the communications between DFA, its counsel, and the DOJ and state AGs around the DOJ Settlement. These are the very types of communications the Court has acknowledged trigger the "major purpose" of Rule 408.

Although Plaintiffs assert that "Fourth Circuit law is clear," (ECF 47 at 5), the Fourth Circuit has not actually ruled on the issue of whether Rule 408 protects settlement negotiations from discovery.[5] However, the Fourth Circuit has acknowledged the critical importance of the policies behind Rule 408. *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) ("The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank

---

[5] Only one Fourth Circuit case cites *Goodyear*, and it is a mere passing reference among a list of cases recognizing various "testimonial privileges." *United States v. Sterling*, 724 F.3d 482, 531 (4th Cir. 2013) (Gregory, J., dissenting).

11

discussions."); *Arnold v. Owens*, 78 F.2d 495 (4th Cir. 1935) ("It is of course settled that an offer of compromise is privileged and may not be received in evidence."). And, to protect this policy interest, the Fourth Circuit has enacted its own confidentiality rule related to mediation talks. *See* L.R. 33 ("Information disclosed in the mediation process shall be kept confidential … and shall not be disclosed to … any other person outside the mediation program participants."); *In re Anonymous*, 283 F.3d 627, 636–37 (4th Cir. 2002) (explaining that disclosure of confidential mediation communications is not permitted "unless the party seeking such disclosure can demonstrate that 'manifest injustice' will result from non-disclosure"). Plaintiffs cite no controlling authority that precludes this Court from protecting DFA's negotiations with DOJ and the state AGs from discovery and these cases suggest that the Fourth Circuit would recognize a "settlement privilege."

## B. DFA's Settlement Negotiations with DOJ and the State AGs Are Irrelevant.

Even if the Court determines that Rule 408 does not provide a bar to discovery of settlement negotiations, it should still deny Plaintiffs' motion on the basis that Plaintiffs failed "to make a particularized showing of likelihood that admissible evidence will be generated." *Reist v. Source Interlink Companies, Inc.*, 2010 WL 4940096, at *3 (M.D. Fla.) (collecting cases). Plaintiffs argue that the withheld settlement negotiations with DOJ are

12

relevant "because the Department of Justice and state Attorneys General examined the similar competition concerns with the Asset Sale that are at issue in this case."[6] ECF 47 at 6. Plaintiffs' conclusory statement that the two matters involve "similar competition concerns" does not establish relevance, much less any heightened or particularized showing the Court should require given the importance of Rule 408.

DFA recognizes that Rule 26 does not require every discoverable document to contain admissible material, but given the clear inadmissibility of settlement negotiations under Rule 408, Plaintiffs must articulate how such settlement negotiations might at least "lead" them to admissible evidence. They have not done so.

## III. THE *SOUTHEASTERN MILK* DOCUMENTS ARE NOT RELEVANT AND THEIR PRODUCTION WOULD BE DISPROPORTIONAL TO THE NEEDS OF THE CASE.

### A. Plaintiffs Cannot Satisfy Their Burden By Relying On "Cloned" Requests And Assuming Relevance And Proportionality.

Plaintiffs have the initial burden of making a threshold showing of relevance. Federal courts have explained that "cloned discovery" like RFP No. 1—produce "[a]ll documents previously produced . . . to the U.S. Department

---

[6] Plaintiffs made the same conclusory argument regarding communications responsive to RFP No. 3—"they bear on the same or similar competition concerns with the Asset Sale that are at issue here."

Case 1:20-cv-00442-CCE-JLW   Document 55   Filed 09/08/20   Page 13 of 22

of Justice and/or state Attorneys General"—are presumptively "irrelevant and immaterial." *See TravelPass Group, LLC v. Caesars Entm't Corp.*, 5:18-CV-153-RWS-CMC, 2020 WL 698538, at \*6 (E.D. Tex. Jan. 16, 2020). *See also Wollam v. Wright Med. Group, Inc.*, 10-CV-03104-DME-BNB, 2011 WL 1899774, at \*1 (D. Colo. May 18, 2011) ("A party's requested discovery must be tied to the particular claims at issue in the case" and "just because the information was produced in another lawsuit does not mean that it should be produced in this lawsuit." (quotations and alterations omitted)). A party must serve "direct" requests that permit the Court to "ascertain whether the documents requested actually relate to Plaintiffs' claims and defenses." *TravelPass*, 2020 WL 698538, at \*6. A party is not entitled to a "wholesale reproduction" simply because there may be "overlap" between two cases. *Id.*

Indeed, at least one federal court has applied this principle in a private antitrust case to deny a motion to compel any documents provided in response to DOJ investigation demands. *Midwest Gas Services, Inc. v. Indiana Gas Co.*, IP 99-690-C-D/F, 2000 WL 760700, at \*1 (S.D. Ind. Mar. 7, 2000) ("The plaintiffs' counsel must do their own work and request the information they seek directly.").

So it is here. RFP No. 1 broadly seeks anything produced to DOJ or state AGs having to do with the Asset Sale. The Asset Sale involved the transfer of

14

44 separate facilities located all over the country. (Decl., Ex. 1 at 4, 8). In reviewing the Asset Sale, the DOJ sought materials from the *Southeastern Milk* litigation. *Southeastern Milk* was the name used for two cases filed in 2007 and consolidated in the Eastern District of Tennessee in 2008 as MDL No. 1899 (Master File No. 2:08-MD-1000). (*See* ECF 1 and 45 at ¶ 55 (describing the purported class of dairy farmers) and ECF 1 and 45 at ¶ 58 (describing the putative class of retailers)). The cases were fully closed in 2018, following a series of settlements, including (1) settlement with certain dairy farmers who sold milk from 2001 to 2011 in the states of Alabama, Arkansas, Georgia, Mississippi, Louisiana, North Carolina, South Carolina, and Tennessee, and parts of Florida, Kentucky, Indiana, Missouri, Virginia, and West Virginia and (2) settlement with retailers, which included Food Lion. (Decl. at ¶ 10; *see also* ECF 1 and 45 at ¶¶ 56, 58, and ECF 45 at Ex. A).[7] From this multiyear, multiparty case, DFA only produced thirty-two (32) documents to the DOJ in connection with the Investigation, consisting only of expert reports, DFA's responses to requests for admission and interrogatories, and

---

[7] To put a finer point on it, *Southeastern Milk* dealt with an additional **nine** states that are not at-issue in this matter, based on the parties' agreed-upon Relevant Geographic Area.

15

summary judgment materials. (Decl. at ¶ 8). It is these 32 documents that Plaintiffs seek through this Motion.[8]

Plaintiffs admit that their claims are "narrowly focused on the area in which dairy farmers supply raw milk to, and customers purchase processed milk from, milk processing plants located in North and South Carolina." (ECF 1 at 4; *see also* ECF 1, ¶ 21 (defining the "relevant geographic market" as sellers to, and buyers from, "the [three] milk processing plants in North and South Carolina")). They further acknowledge that *Southeastern Milk* involved anticompetitive conduct that is "distinct from the attempted monopolization and lessening of competition in recent years at issue in Plaintiffs' complaint." (ECF 47 at 7–8). Indeed, to find that Plaintiffs have not and cannot show that RFP No. 1 meets the standard for relevance, the Court need look no further than Plaintiffs' own assertion that the world today is not the world twenty years ago:

> *Southeastern Milk* was based on **completely different facts and legal theories** than those outlined in the Complaint, and the conduct at issue there necessarily affected the contours of the current market, as it now exists twenty years later. The Complaint plausibly alleges a geographic market, according to

---

[8] Plaintiffs now also seek, through their 37th Request for Production, *all* documents that DFA may have from *Southeastern Milk*. DFA has objected to this request, noting that the case included more than 2,000 docket entries and more than 150 depositions. (Decl. at ¶ 10.)

> ***today's market dynamics***, encompassing the three Carolinas plants and their regional competitors.

(ECF 41 at p. 21-22 (emphasis added)).  Whatever may have occurred twenty years ago has no relevance to ***today's*** market dynamics.[9]

As a result, Plaintiffs cannot meet their burden of showing "threshold" relevance by simply arguing that other cases and investigations had some general "overlap" with this case.  But that is precisely what Plaintiffs attempt to do here, by arguing that "these materials are relevant ... because the Department of Justice and state Attorneys General examined the similar competition concerns with the Asset Sale that are at issue in this case."  (ECF 47 at 6).  Plaintiffs' conclusory reference to "similar competition concerns" does not sufficiently explain the relevance of ***all*** documents given to DOJ.

## B.   The *Southeastern Milk* Documents Are, In Fact, Not Relevant To The Claims In This Case And Their Discovery Is Not Proportional To The Needs Of The Case.

In scrutinizing relevance, it is appropriate for the Court to limit discovery to documents according to the particular claims or theories at issue, rather than broad or general topics.  *See, e.g.*, *Bost v. Wexford Health Sources,*

---

[9] Indeed, many of the entities involved in the litigation have moved, no longer exist, or have changed representation.   DFA has been notified by some of the entities that they do not consent to the production of their materials to the Plaintiffs in this matter or that they have concerns that the protective order in the instant litigation contemplated protections for other litigations.  (Decl. at ¶ 12).

17

*Inc.*, CV ELH-15-3278, 2020 WL 1890506, at *13 (D. Md. Apr. 15, 2020) (limiting discovery to documents relevant to emergency care and excluding those related to routine medical care). For example, in the products liability context, the relevance of other incidents and injuries subject to separate lawsuits requires showing that those incidents have the same "salient characteristic[s]." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 604 (D. Md. 2009) (reviewing requested documents from other products liability lawsuits to determine if the mechanism of injury was sufficiently similar to mechanism in the case at hand). As such, despite liberal discovery rules, the *Desrosiers* Court was "not prepared to compel discovery of incidents which bear no apparent relationship to the issues...." *Id.* at 602.

Plaintiffs assert several reasons why all of the *Southeastern Milk* documents DFA previously provided to DOJ are supposedly relevant to Plaintiffs' claims in this action and must be produced in response to RFP No. 1. (ECF 47 at 7–10). However, none of these reasons sufficiently connect those documents to the claims in the instant lawsuit, and their production would in any event be disproportional to the needs of this case.

Indeed, Plaintiffs have already admitted that *Southeastern Milk* involved anticompetitive conduct that is "distinct from the attempted monopolization and lessening of competition in recent years at issue in

18

Plaintiffs' complaint." (ECF 47 at 7–8). Instead, Plaintiffs tie their relevancy argument to so-called "shared" "incentives" that purportedly existed two decades ago and are allegedly still motivating behavior today.

Whatever "incentives" may have existed almost twenty years ago for DFA, Dean, and the other parties involved in *Southeastern Milk* are irrelevant here. Seeking discovery from a case that alleged a different product market, a different geographic market, different antitrust claims, and a time period that stretched back almost twenty years from the present is not relevant to a prospective case seeking divestiture of a single milk processing plant. Indeed, Plaintiffs themselves recognize that in the years since the *Southeastern Milk* settlement, "the supply and demand factors … ha[ve] changed." (ECF 1 at ¶ 59). "Consumer demand for processed milk ha[ve] decreased, whereas DFA's production capacity ha[s] increased." *Id.*[10] Not only has DFA's production capacity changed, upon information and belief, Plaintiff MDVA also owned a milk processing plant *in North Carolina* until 2014. (ECF 45 at ¶ 72). The market dynamics considered in the *Southeastern Milk* case are completely different than the case at hand: in *Southeastern Milk* there were many more

---

[10] Indeed, in the intervening decade between the commencement and the settlement of the *Southeastern Milk* litigation, DFA's ownership of milk processing plants in the Relevant Geographic Area changed. When the litigation commenced, it had ownership interests in processing plants in the Relevant Geographic Area, but these plants were sold in 2009. (Decl. at ¶ 11).

19

states at issue and additional milk marketing orders at issue. Further, since the filing of *Southeastern Milk* there have been many changes in the numbers and ownership of milk processing plants. There is no relevance for expert reports, discovery responses, and summary judgment materials that describe a world that by Plaintiffs' own admission "ha[s] changed."

Plaintiffs' attempts to link the current case to the long-settled *Southeastern Milk* litigation are faulty. Plaintiffs cannot merely rely on the unsupported allegations set forth in its Complaint to support the so-called relevance of the *Southeastern Milk* materials. (*Cf.* ECF 47 at 9). Contrary to Plaintiffs' assertions, *Southeastern Milk* did not merely involve the "impact on competition in North and South Carolina and the surrounding area," but it looked at a fourteen-state region. (Decl., at ¶ 10). Plaintiffs' apparent desire to re-litigate the factual issues in *Southeastern Milk* (a case to which Plaintiff Food Lion was a settling party) is not proportional to the needs in this case— a case that is purportedly being brought, on an expedited basis, to prevent a prospective "foreclosure" of competition.

Finally, the burden and proportionality argument set forth by Plaintiffs is of no import. The request to DFA **excludes** "any documents that relate exclusively to milk processing plants outside of the relevant geographic

region." (Decl., Ex. 1 at 8). Thus, of course DFA must do more than simply "copy a disk or hard drive." (ECF 47 at 9–10).

## CONCLUSION

For these reasons, Plaintiffs' Motion to Compel should be denied.

Date: September 8, 2020    Respectfully submitted,

**BAKER & MILLER PLLC**
W. Todd Miller*
Amber L. McDonald*
2401 Pennsylvania Avenue N.W.
Suite 300
Washington, D.C. 20037
Phone: 202-663-7820
Fax: 202-663-7849
TMiller@bakerandmiller.com
AMcDonald@bakerandmiller.com

**LATHAM & WATKINS LLP**
Michael G. Egge*
555 Eleventh Street, NW
Washington, DC 20004-1304
Phone: 202-637-2285
Michael.Egge@lw.com
Attorneys for
Dairy Farmers of America, Inc.

*By Special Appearance*

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Sarah Motley Stone*
James P. Cooney III
N.C. State Bar No. 12140
Sarah Motley Stone
N.C. State Bar No. 34117
One Wells Fargo Center,
301 S College St
Suite 3500
Charlotte, North Carolina 28202
Phone: 704-331-4900
Fax: 704-331-4955
Jim.Cooney@wbd-us.com
Sarah.Stone@wbd-us.com

Brent F. Powell
N.C. State Bar No. 41938
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: 336-721-3600
Fax: 336-721-3660
Brent.Powell@wbd-us.com

*Attorneys for Dairy Farmers of America, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT</u>

I hereby certify that the foregoing brief complies with the word limits in

Local Rule 7.3.

*/s/ Sarah Motley Stone*
Sarah Motley Stone (N.C. Bar No. 34117)
WOMBLE BOND DICKINSON (US) LLP
One Wells Fargo Center,
301 S College St
Suite 3500
Charlotte, North Carolina 28202
Phone: 704-331-4900
Fax: 704-331-4955
Sarah.Stone@wbd-us.com

*Attorney for Dairy Farmers of America, Inc.*