# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FOOD LION, LLC AND MARYLAND AND VIRGINIA MILK PRODUCERS COOPERATIVE ASSOCIATION, INC.<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC.,<br><br>Defendant. | Case No. 1:20-cv-00442 (CCE) |

### DEFENDANT DAIRY FARMERS OF AMERICA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION PURSUANT TO COURT'S JUNE 10, 2020 ORDER

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Dairy Farmers of America, Inc. ("DFA"), through its counsel, hereby objects and responds to Plaintiffs' First Set of Requests for Production Pursuant to Court's June 10, 2020, Order, dated June 17, 2020.  The following Objections and Responses are made expressly without in any way waiving or intending to waive, but, to the contrary, preserving and intending to preserve: (a) All questions as to the competence, relevance, materiality, privilege, admissibility as evidence, or use for any purpose of the requested information, in any aspect of this or any other action; (b) The right to object on any ground to the use of any such information, in any aspect of this or any other action; (c) The right to object, at any time, to a demand for any further response to this or any other Request; and (d) The right at any time to revise, supplement, correct, amend, or clarify these Objections and Responses and in particular to do so after DFA has gained a greater understanding of those legacy Dean documents and data acquired in the Asset Sale, or Plaintiffs have clarified any ambiguous terms or Requests.

1

# OBJECTIONS TO DEFINITIONS

1. DFA objects to Plaintiffs' definition of "Dairy Farmers of America, Inc.," "DFA," "Defendant," "You," and "Your" on the grounds that it is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome. DFA further objects to Plaintiffs' definition on the basis that such a definition would require DFA to search for and produce documents not in its possession, custody, care or control. DFA construes this definition to mean DFA's corporate headquarters in Kansas City, KS, and its regional office in Knoxville, TN.

2. DFA objects to Plaintiffs' definition of "Dean" on the grounds that it is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome. DFA further objects to Plaintiffs' definition on the basis that such a definition would require DFA to search for and produce documents not in its possession, custody, or control. DFA construes this definition to mean those assets of Dean which it has acquired.

3. DFA objects to Plaintiffs' definition of "Kroger" on the basis that the definition is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome. DFA further objects to Plaintiffs' definition in that it assumes knowledge of a non-party's corporate structure and internal organization, which DFA does not know, and imposes obligations outside of the Federal Rules of Civil Procedure. DFA shall construe "Kroger" to as it understands the entity in DFA's ordinary course of business.

4. DFA objects to Plaintiffs' definition of "Asset Sale" on the basis that it seeks to incorporate any information or broaden the definition of the Asset Sale beyond reference to the

transaction that occurred between Dean and DFA consummated on May 1, 2020. DFA objects to the definition of "Asset Sale" to the extent it is used to seek information and documents outside the Relevant Geographic Region, the relevant time period, claims and defenses in the litigation, and/or beyond the scope of discovery under the Federal Rules of Procedure. DFA's use of the term "Asset Sale" does not concede that all information related to the Asset Sale is relevant to the litigation (*e.g.*, assets outside of the Relevant Area).

5. DFA objects to the Plaintiffs' definition of the term "bid" on the basis that the definition includes "any information…without limitation," on the grounds that the definition is vague, ambiguous, and subject to multiple interpretations. DFA further objects to Plaintiffs' definition to the extent it is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome. DFA further objects to the definition to the "bid" as it is substantially broader than the term "bid" as used in the ordinary course and purports to require DFA to prepare information not kept in the ordinary course of business. DFA shall respond using the term "bid" as it is defined in the ordinary course of business.

6. DFA objects to the Plaintiffs' definition of "processed fluid milk" as vague, ambiguous, and subject to multiple interpretations. Plaintiffs' definition refers to Paragraphs 10 and 17 of their May 19, 2020 Complaint. However, Paragraph 10 refers to the "processed milk market" and does not define "processed fluid milk." Further, Paragraph 17 consists of assertions about the elasticity of the fluid milk market and "cultural and taste" preferences, but does not define what fluid milk is. DFA shall understand and use the term "processed fluid milk" to mean fluid milk from cows processed for human consumption as liquid milk, excluding, for example,

3

aseptic and ESL milk, cream, yogurt, sour cream, cheese, butter, and other milk-derived food products.

7. DFA objects to the Plaintiffs' definition of "raw milk" as vague, ambiguous, and subject to multiple interpretations. Plaintiffs' definition refers to Paragraphs 9 and 12-13 of the Complaint, filed May 19, 2020, and includes information outside the definition of raw milk. DFA shall use and understand the term "raw milk" to mean the Grade A milk of cows before pasteurization or other processing.

8. DFA objects to Plaintiffs' definition of "relevant geographic region" as vague, ambiguous, and subject to multiple interpretations. Plaintiffs' definition refers to Paragraph 21 of their May 19, 2020 Complaint; however, Paragraph 21 defines "relevant geographic market," not "relevant geographic region." DFA further objects to Plaintiffs' definition on the basis that it purports to require to DFA to define the term, which is not DFA's responsibility as Defendant. For purposes of its response to these Requests, DFA shall use and understand "relevant geographic region" to mean the states of North Carolina and South Carolina, as Plaintiffs have defined the term.

9. DFA objects to Plaintiffs' definition of "Side Note" on the basis that it is vague, ambiguous, subject to multiple interpretations, or mischaracterizes a valid promissory note between DFA and Dean. Plaintiffs' definition incorporates the web address of https://ir.deanfoods.com/node/23006/html, which is no longer a viable link. DFA further objects to Plaintiffs' definition to the extent it includes "all related addendums, amendments, supplements, or extensions" on the basis that requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. For purposes of its responses, DFA shall use "Side Note" to refer

4

to the promissory note entered between Dean Foods Company and DFA in 2001 with an original principal amount of $40 million. DFA's use of the term shall not be considered agreement or concession to Plaintiffs' mischaracterizations of the agreement.

10. DFA objects to Plaintiffs' definition of "communication" and "communicated" on the basis that such definition is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome. DFA further objects to the definition of "communication" and "communicated" to the extent such definition seeks to impose burdens on DFA to create documents or other discoverable information not created in the ordinary course of business. DFA further objects to Plaintiffs' definition to the extent such definition seeks information outside the bounds of the Federal Rules of Civil Procedure.

11. DFA objects to Plaintiffs' definitions of "including" to the extent such definition is to mean "including, but not limited to" or "including without limitation" as these phrases render Plaintiffs' Requests using the defined term vague, ambiguous, and subject to multiple interpretations. DFA further objects to Plaintiffs' definition on the basis that requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. DFA further objects to Plaintiffs' definition to the extent such definition seeks information outside DFA's possession, custody, care or control. DFA shall construe the term within the ordinary understanding of the word.

12. DFA objects to Plaintiffs' definition of "concerning," "relating to," "referring to," "regarding," or "with respect to" to the extent such definition is to mean "including without limitation" as this phrase renders Requests using the defined term vague, ambiguous, and subject

to multiple interpretations. DFA further objects to Plaintiffs' definition on the basis that requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. DFA further objects to Plaintiffs' definition to the extent such definition seeks information outside DFA's possession, custody, care or control. DFA shall construe the term within the ordinary understanding of the word.

## OBJECTIONS TO INSTRUCTIONS

1. DFA objects to Instruction No. 1 regarding the relevant time period as requests made pursuant to this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. The time period extends beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets, in certain circumstances. Accordingly, DFA limits its responses to January 1, 2018 to May 1, 2020.

2. DFA objects to Instruction No. 2 on the basis that it seeks to require DFA to "organize[] and label[]" its responses to "correspond to the associated Request" as such a requirement would impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 34(b) also permits for the production of documents "as they are kept in the usual course of business," which DFA shall do.

3. DFA objects to Instruction No. 3 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure. DFA also objects to this Instruction to the extent it seeks production of information that is protected from disclosure by

6

privilege or other doctrine. DFA shall produce documents in accordance with the Rules and the parties' agreed-upon ESI Protocol.

4. DFA objects to Instruction No. 4 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and improperly limits DFA's choices as provided by the Rules. DFA will not produce all documents in native format, but will produce documents in a reasonably useable form, as agreed to by the parties in the ESI Protocol. DFA is available to discuss specific files and formats that it will produce in native format.

5. DFA objects to Instruction No. 5 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and seeks to include interrogatories by way of instruction by purporting to require DFA to provide information about the sources of documents not in its care, custody, or control.

6. DFA objects to Instruction No. 6 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and seeks to include interrogatories by way of instruction by purporting to require DFA to state when and which documents will become available in the future.

7. DFA objects to Instruction No. 8 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure.

8. DFA objects to Instruction No. 9 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and/or any ESI agreement entered into by the parties.

9. DFA objects to Instruction No. 10 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and/or any ESI agreement entered into by the parties.

## OBJECTIONS TO REQUESTS FOR PRODUCTION

**Request No. 1:** All documents previously produced by DFA or Dean to the U.S. Department of Justice and/or state Attorneys General in connection with their investigation(s) and review(s) of the Asset Sale, excluding any documents that relate exclusively to milk processing plants outside of the relevant geographic region.

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 1 as overbroad because its geographic limitation is insufficient and would not properly limit, for example, non-relevant raw milk sales data, non-fluid milk products produced at Dean plants, materials related to the *Sitts, et al. v. Dairy Farmers of America, Inc., et al.* litigation, compromise offers and settlement discussions protected by Federal Rule of Evidence 408, or productions made to Attorneys General outside of North and South Carolina. As such, the Request seeks documents and information irrelevant to the claims and defenses of the litigation and seeking such documents exceeds the scope of Rule 26. DFA interprets this Request to exclude such materials. DFA further objects to this Request on the basis that it seeks production of materials produced to the U.S. Department of Justice ("DOJ") from *In re: Southeastern Milk Antitrust Litigation*, which materials are publicly available and/or equally available to Plaintiffs. DFA further objects to this Request on the basis that it is duplicative, as it seeks (re)production of various data produced to the DOJ that are also sought in Request No. 8. As the vast majority of the data produced to the DOJ is unrelated to the claims and North and South Carolina, DFA interprets this Request to exclude all data produced to the DOJ. DFA further objects to this Request on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA's response will be limited to information in DFA's own files, excluding legacy Dean materials produced by the Dean Estate to the DOJ as these documents were not among the Dean assets acquired by DFA. Subject to and without waiving these objections, DFA will produce relevant, non-

8

privileged, non-duplicative documents relating to raw milk or fluid milk produced or sold in North and South Carolina, which were produced to Department of Justice and/or state Attorneys General in connection with their investigation(s) and review(s) of the Asset Sale.

**Request No. 2: All documents previously produced by DFA or Dean, as well as any deposition transcripts or filings, in connection with the bankruptcy proceedings in *In re: Southern Foods Groups, LLC, et al.*, No. 19-36313 (Bankr. S.D. Tex.), excluding any documents that relate exclusively to milk processing plants outside of the relevant geographic region.**

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 2 as overbroad and the Request seeks documents and information irrelevant to the claims and defenses of the litigation. As noted in response to Request 1, the assets of the former Dean Foods that DFA acquired in accordance with the referenced bankruptcy proceedings produced numerous products other than fluid milk. And the matters before the bankruptcy court extended to virtually all aspects of the former Dean Foods's business including union contracts, pension plans, and leases of buildings and other assets. Such matters are well outside any relevance to this litigation, and seeking such documents exceeds the scope of Rule 26. DFA interprets this Request to exclude such materials. DFA further objects to this Request on the basis that it seeks documents that are publicly available and/or equally available to Plaintiffs. DFA further objects to this Request to the extent Plaintiffs seek redacted or sealed information that is not relevant to Plaintiffs claims and/or are privileged and protected from disclosure. DFA further objects to this Request on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA's response will be limited to information in DFA's own files, excluding legacy Dean materials produced by the Dean Estate as part of the bankruptcy proceedings, as these

9

documents were not among the Dean assets acquired by DFA. Subject to and without waiving these objections, DFA will produce non-public, relevant, non-privileged, non-duplicative documents produced by DFA in connection with the bankruptcy proceedings in *In re: Southern Foods Groups, LLC, et al.*, No. 19-36313 (Bankr. S.D. Tex.), which relate to the purchase or sale of raw milk in North and South Carolina and are not otherwise publicly available.

**Request No. 3: All communications between DFA on the one hand and any third party on the other, including Dean, regarding potential antitrust or competition issues associated with the Asset Sale, excluding any documents that relate exclusively to milk processing plants outside of the relevant geographic region.**

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 3 on the basis that it seeks "all" communications as such a request is overbroad in that it seeks duplicative communications and communications unrelated to processed fluid milk or raw milk. DFA will search the files of pre-merger DFA custodians who are reasonably likely to have non-duplicative documents responsive to this Request, and DFA will limit its response to documents related to processed fluid or raw milk. DFA further objects to Request No. 3 as overbroad because its geographic limitation is insufficient and the Request seeks documents and information irrelevant to the claims and defenses of the litigation. As Plaintiffs well know, the Asset Sale was national in scale and contained data and documents that have no relevance to the relevant geographic area or Plaintiffs' claims, even when excluding any documents that relate to non-relevant milk processing plants. Seeking such documents exceeds the scope of Rule 26. Further, DFA objects to this Request on the basis that it seeks compromise offers and settlement discussions protected by Federal Rule of Evidence 408. DFA interprets this Request to exclude such materials. DFA further objects to Request No. 3 as the phrase "competition issues" is ambiguous and subject to multiple interpretations. DFA

10

construes the Request to seek documents relating to "antitrust and competition law issues." DFA further objects to Request No. 3 to the extent it seeks information that is protected by attorney-client privilege, work product doctrine, the joint defense privilege, or any other applicable protection. Subject to and without waiving these objections, DFA will search the files of persons reasonably likely to have non-duplicative documents responsive to this Request and produce relevant, non-privileged, non-duplicative communications, if any, relating to North and South Carolina that are responsive to Plaintiffs' Request.

**Request No. 4: All documents reflecting DFA's actual or contemplated business plans or analyses concerning or relating to the supply of raw or processed milk in the relevant geographic region during the relevant time period.**

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 4 on the basis that it seeks "all" documents "concerning or relating to" the identified categories as such a request is overbroad in that it seeks duplicative documents. DFA will search the files of DFA custodians who are reasonably likely to have non-duplicative documents responsive to this Request. DFA further objects to the Request No. 4 as vague as the term "processed milk" is undefined. DFA will interpret "processed milk" to refer to "processed fluid milk." Subject to and without waiving these objections, DFA will search the files of DFA custodians who are reasonably likely to have non-duplicative documents responsive to this Request and produce relevant, non-privileged, non-duplicative documents reflecting DFA's actual business plans or analyses, if any, for North and South Carolina that are responsive to Plaintiffs' Request.

11

**Request No. 5**: Without regard for the time period identified above, the Side Note and any drafts, attachments, exhibits, supplements, modifications, or addendums thereto, including but not limited to the "related milk supply agreements" between DFA and Dean. See Dean Foods, FY 2019 Form 10-K, at 39 (Mar. 20, 2020).

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 5 as overbroad because it seeks drafts, which, having already been rejected, are irrelevant. Subject to and without waiving these objections, DFA will produce the promissory note and any attachments or exhibits, as well as any implemented modifications or addendums thereto.

**Request No. 6**: All contractual agreements concerning or relating to (1) the supply of raw milk to a milk processing plant in the relevant geographic region, (2) the sale of processed fluid milk from processing plants in the relevant geographic region to customers, or (3) any national or overarching supply agreement between DFA and Kroger, which were effective in the year prior to the Asset Sale or that will be effective following the Asset Sale.

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 6 as overbroad to the extent it seeks "all" contractual agreements "concerning or relating to" the identified categories. DFA further objects to this Request on the basis that it fails to specify with reasonable particularity the documents sought. As phrased, this Request would cover every contract in any way related to any aspect of raw milk supply and the sale of fluid milk, including, for example, farmer membership agreements and hauling contracts. Such requests seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. Further, in Plaintiffs' Motion for Expedited Discovery, Plaintiffs represented to the Court that they are only seeking supply agreements. Thus, in light of Plaintiffs' statements and the foregoing objections, subject to and without waiving its objections, DFA will produce raw and fluid milk supply

agreements relating to North and South Carolina that were entered into or effective during the relevant time period.

**Request No. 7: Documents sufficient to show any and all bids and/or proposals for the supply of raw milk to a milk processing plant in the relevant geographic region, or the sale of processed fluid milk from a plant in the relevant geographic region to a customer during the relevant time period, including but not limited to the bid itself and information concerning the bidders' names and addresses, and the dates, specifications, and outcomes of their bids.**

RESPONSE: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 7 to the extent it seeks "any and all bid and/or proposals…including but not limited to the bid itself," thereby rendering the Request vague and confusing. DFA further objects to this Request on the basis that it purports to require DFA to create documents or other discoverable information not created in the ordinary course of business, as bid information is generally not kept in the manner requested by Plaintiffs. DFA further objects to this Request because it seeks irrelevant information; Plaintiffs claim that DFA's acquisition of certain Dean assets foreclosed them from raw milk supply and fluid milk purchases opportunities, and DFA's bids to others have nothing to do with that claim. DFA further objects to this Request to the extent it purports to require DFA to produce MDVA's bids to supply raw milk to legacy Dean plants on the basis that such information would be within the possession, custody, care or control of MDVA and is therefore equally available to Plaintiffs. As such, Plaintiffs' Request seeks information that is not proportional to the needs of the case. DFA further objects to this Request on the basis that it fails to specify with reasonable particularity the documents sought. DFA further objects to Plaintiffs' request for bids for "the sale of processed fluid milk from a plant in the relevant geographic region" because this request seeks information not related to the allegations in this case and is not proportional to the needs of the case.

13

Plaintiffs claim that DFA's acquisition of certain Dean assets foreclosed them from raw milk supply and fluid milk purchases opportunities, and the sale of processed milk out of the legacy Dean plants is not relevant to those claims. Subject to and without waiving its objections, DFA will produce bids and/or proposals for the supply of raw milk made to plants located in North and South Carolina during the relevant period.

**Request No. 8: Structured Data sufficient to show the terms of any transactions concerning or relating to the supply of raw milk to a milk processing plant in the relevant geographic region, or the sale of processed fluid milk from a plant in the relevant geographic region to a customer during the relevant time period. The data should include fields mutually agreed upon by the parties after consultation, in good faith, to adequately capture information pertinent to such transactions.**

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 8 as overbroad to the extent it seeks "any" transactions "concerning or relating to" the identified categories. As phrased, this Request would cover every transaction in any way related to any aspect of raw milk supply and the sale of fluid milk, much of which is neither relevant nor proportional to the litigation. As DFA is in the business of marketing its members' raw milk to processing plants, this Request seeks information related to every aspect of DFA's business, including hauling contracts or even IT contracts, which are tied to DFA's raw milk marketing business and, ultimately, relate to the identified categories. Responses to this Request would be unduly burdensome. DFA further objects to Plaintiffs' addition of "the sale of processed fluid milk" to these revised Requests, because this addition seeks information not related to the allegations in this case and is not proportional to the needs of the case. Plaintiffs claim that DFA's acquisition of certain Dean assets foreclosed them from raw milk supply and fluid milk purchases opportunities, and the sale of processed milk out of the legacy Dean plants is not relevant to those claims. Moreover, the

14

Court tasked Plaintiffs with narrowing their requests, not expanding them, as Plaintiffs have attempted here. DFA further objects to this Request on the basis that it fails to specify with reasonable particularity the information sought. Subject to and without waiving its objections, DFA will produce its raw milk sales data relating to North and South Carolina for the relevant time period.

DATED: July 17, 202 Respectfully submitted,

*/s/ Amber L. McDonald*_____ _____
Amber L. McDonald

**WOMBLE BOND DICKINSON (US) LLP**

James P. Cooney III
N.C. State Bar No. 12140
Sarah Motley Stone
N.C. State Bar No. 34117
WOMBLE BOND DICKINSON (US) LLP
Charlotte, North Carolina 28202
Phone: 704-331-4900
Fax: 704-331-4955
Jim.Cooney@wbd-us.com
Sarah.Stone@wbd-us.com

Brent F. Powell
N.C. State Bar No. 41938
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: 336-721-3600
Fax: 336-721-3660
Brent.Powell@wbd-us.com

**BAKER & MILLER PLLC**

W. Todd Miller*
Amber L. McDonald*
2401 Pennsylvania Avenue N.W.
Suite 300
Washington, D.C. 20037
Phone: 202-663-7820
Fax: 202-663-7849
TMiller@bakerandmiller.com
AMcDonald@bakerandmiller.com

**LATHAM & WATKINS LLP**

Michael G. Egge*
555 Eleventh Street, NW
Washington, D.C. 20004-1304
Phone: 202-637-2285
Michael.Egge@lw.com

*Attorneys for Dairy Farmers of America, Inc.*


*\*By Special Appearance*

16

## CERTIFICATE OF SERVICE

       I hereby certify that on July 17, 2020, I, Amber L. McDonald, have served the foregoing **DEFENDANT DAIRY FARMERS OF AMERICA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION PURSUANT TO COURT'S JUNE 10, 2020 ORDER** upon the Plaintiffs in this lawsuit by email at the e-mail addresses below:

| | |
|---|---|
| A. Todd Brown, Sr.<br>Ryan G. Rich<br>Hunton Andrews Kurth LLP<br>101 South Tryon St. Suite 3500<br>Charlotte, North Carolina 28280<br>tbrown@huntonak.com<br>rrich@huntonak.com | Jason D. Evans<br>Troutman Pepper Hamilton Sanders LLP<br>301 S. College Street, 34th Floor<br>Charlotte, NC 28202<br>jason.evans@troutman.com |
| Ryan P. Phair<br>John S. Martin<br>Kevin Hahm<br>Carter C. Simpson<br>Hunton Andrews Kurth LLP<br>2200 Pennsylvania Ave., NW<br>Washington, DC 20037<br>rphair@huntonak.com<br>martinj@huntonak.com<br>khahm@huntonak.com<br>csimpson@huntonak.com | James A. Lamberth<br>Troutman Pepper Hamilton Sanders LLP<br>600 Peachtree Street, NE, Suite 3000<br>Atlanta, GA 30308<br>james.lamberth@troutman.com |

DATED: July 17, 2020                  */s/ Amber L. McDonald*

17

Case 1:20-cv-00442-CCE-JLW   Document 56-2   Filed 09/08/20   Page 18 of 18