IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Food Lion, LLC, and Maryland and Virginia Milk Producers Cooperative Association, Inc.<br><br>*Plaintiffs*,<br><br>v.<br><br>Dairy Farmers of America, Inc.,<br><br>*Defendant*. | Case No. 1:20-cv-00442 |

**REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION TO COMPEL [ECF No. 46]**

DFA's opposition to Plaintiffs' motion to compel, ECF No. 55 ("Opp."), fails both to address on-point case law making clear that Federal Rule of Evidence 408 is inapplicable in discovery, and to articulate why documents produced as part of the Department of Justice's review of the Asset Sale are irrelevant here. The Fourth Circuit does not recognize a "settlement privilege" protecting otherwise-relevant Rule 408 communications from discovery, and DFA's citations to the contrary are inapt, as they concern either the admissibility of such communications, or the discoverability of settlement communications that take place between the litigating parties. As to relevance, documents DFA provided to the Department of Justice ("DOJ") go to the heart of Plaintiffs' claims that the Asset Sale marks the culmination of DFA's years-long efforts to lessen competition in and around North and South Carolina. DFA has thus failed to

meet its burden of showing why it need not comply with its discovery obligations, and it must be compelled to produce documents responsive to Plaintiffs' Requests for Production Nos. 1 and 3 as specified in Plaintiffs' motion.

**ARGUMENT**

DFA, as the party resisting discovery, bears the burden of showing why it need not produce the discovery sought. *Armitage v. Biogen, Inc*., No. 1:17-cv-1133, 2019 WL 79037, at *2 (M.D.N.C. Jan. 2, 2019).

"Antitrust is an area in which particularly broad discovery is encouraged." *SmithKline Beecham Corp. v. Apotex Corp*., No. CIV.A.00-cv-4888, 2006 WL 279073, at *4 (E.D. Pa. Jan. 31, 2006). "Particularly where allegations of conspiracy or monopolization are involved . . . broad discovery may be needed to uncover evidence of invidious design, pattern or intent." *Seaman v. Duke Univ*., No. 1:15-cv-462, 2018 WL 1441267, at *4 (M.D.N.C. Mar. 21, 2018) (quoting *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217 (D. Del. 1985)). Even so, Plaintiffs' motion concerns two discrete and tailored document requests regarding third-party exchanges that bear directly on the anticompetitive aspects of the Asset Sale: first, DFA's documents provided to DOJ in connection with its antitrust review of the Asset Sale, and second, settlement communications related thereto. As explained below, DFA has provided no valid reason why it can shield these documents from discovery.

## I. PLAINTIFFS ALLEGE THAT DFA'S PAST CONDUCT VIOLATED SECTION TWO.

Because DFA seems to misunderstand Plaintiffs' Section 2 claim, a brief correction would be helpful here. Plaintiffs do not allege a solely forward-looking foreclosure claim based on the Asset Sale. Instead, Plaintiffs allege that DFA's May 1, 2020 purchase of forty-four legacy Dean milk processing facilities (the "Asset Sale") was simply the latest action in DFA's multi-year anticompetitive campaign to dominate the milk supply chain in the relevant market.

In connection with a controversial 2001 merger between the two largest milk processors in the country, DFA and Dean entered into a long-term exclusive supply arrangement pursuant to which Dean promised to buy DFA's raw milk in exchange for DFA's agreement not to compete with Dean at the processing level. Compl. ¶ 39-49. To enforce this agreement, DFA secured a twenty-year, contingent, subordinated promissory note from Dean (the "Side Note"), which was valued at $96 million and made payable to DFA if Dean materially breached or terminated its milk supply agreements before 2021. *Id*. ¶ 47. Over time, the Complaint alleges, DFA increasingly leveraged its relationship with Dean to push rival producers (like MDVA) out of Dean's plants. *Id*. ¶¶ 59-62. In 2013, when DFA was not enforcing its exclusivity arrangement due to the pendency of litigation, MDVA supplied 1.142 billion pounds of raw milk to the Carolinas plants. Shortly thereafter, however, DFA forced Dean to reduce its purchases from MDVA— despite MDVA's excellent quality and service—and by 2019, no Dean facility in the Carolinas purchased MDVA milk. *Id*.

- 3 -

This pre-Asset Sale conduct underlies Plaintiffs' Section 2 claim that DFA has for years maneuvered to monopolize the raw milk market by using its long-term exclusive dealing contracts with Dean to "caus[e] Dean not to purchase raw Grade A milk from MDVA, whether by exercising its rights under the Side Note, entering into and enforcing other anticompetitive agreements with Dean, or through other means." Compl. ¶ 166. The Asset Sale is a thus part of DFA's anticompetitive conduct that Plaintiffs allege in support of their Section 2 claim. *Id*. But equally important are DFA's past efforts to force Dean to stop purchasing raw milk from other suppliers regardless of competitive factors.

## II. DFA CANNOT WITHHOLD RELEVANT SETTLEMENT DOCUMENTS ON THE BASIS OF FEDERAL RULE OF EVIDENCE 408.

The first narrow issue is whether Federal Rule of Evidence 408 protects settlement negotiations in one case from discovery in another, something the Rule does not purport to do. The answer in this Court is a resounding no: "Rule 408 does not warrant protecting settlement negotiations from discovery. On its face, [it] applies to the admissibility of evidence at trial, not to whether evidence is discoverable." *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, No. 1:05-cv-955, 2011 WL 2470460, at *11 n.7 (M.D.N.C. June 20, 2011) (quoting *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008)); *see also Townsend v. Nestle Healthcare Nutrition, Corp.*, No. 3:15-cv-06824, 2016 WL 1629363, at *5 (S.D.W. Va. Apr. 22, 2016) ("Courts within the Fourth Circuit have generally declined to recognize a federal settlement privilege.").

In support of its contrary reading, DFA first cites several irrelevant decisions—*Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988), and *Arnold v. Owens*, 78 F.2d 495 (4th Cir. 1935)—which hold that, under Rule 408, settlement negotiations are inadmissible if offered as evidence in the same case in which the settlement negotiation is taking place. Opp. at 9-12. But these cases have no bearing on the issue of *discoverability*, something *Volumetrics* and other on-point case law within the Fourth Circuit handle conclusively. In other words, DFA's reading morphs Rule 408 from a rule governing admissibility in a single case (which *Fiberglass* and *Arnold* address) into a bar on discovery in separate cases (which *Volumetrics* and *Townsend* address), something this Court explicitly declined to do in *Volumetrics*.[1]

DFA's opposition ignores *Volumetrics* and misstates the holding of *Kaplan Companies, Inc. v. Peoplesoft USA, Inc.*, No. 1:03-cv-1014, 2006 WL 8447846, at *2 (M.D.N.C. Mar. 15, 2006), in an effort to support its proposition that "[t]his Court has previously declined to order the production of documents relating to settlement negotiations." Not so. The defendant in *Kaplan* explicitly did not seek settlement negotiations, and the Court required the plaintiff to produce all settlement materials requested. *Id*. DFA's opposition nowhere addresses relevant precedent, cited in Plaintiffs'

---

[1] As Plaintiffs predicted, DFA relies on a single Sixth Circuit decision, *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 332 F.3d 976 (6th Cir. 2003), which has been rejected in the Fourth Circuit and elsewhere. *See* Pls.' Br., ECF No. 47, at 5-6 & n.5.

- 5 -

brief, at 5. It therefore cannot establish that a "settlement privilege" exists, much less that the negotiations it seeks to withhold fall under such a privilege.

Relevance, not admissibility, determines whether a party is entitled to discovery. *Townsend*, 2016 WL 1629363, at *5. As "the party resisting discovery (including on relevance grounds)," DFA "bears the burden of persua[ding]" this Court that the negotiations Plaintiffs seek are irrelevant. *Volumetrics*, 2011 WL 2470460, at *4.[2] DFA cannot do so. These materials include negotiations between DFA and government lawyers related to the nationwide and regional competitive merits of the Asset Sale. Plaintiffs have excluded from their Request documents that solely concern processing plants outside a defined region, rendering all remaining documents relevant to the competitive merits of the sale that are at issue in this case. There is no reasonable dispute that these documents are relevant, and DFA does not attempt to withhold other materials related to the settlement discussions and agreement on relevance grounds.[3] The Court should reject DFA's Rule 408 argument and compel the production of these documents.

---

[2] DFA attempts to shift the burden onto Plaintiffs to make a "heightened or particularized showing" of relevance. Opp. at 12. But the law in this Court is clear: the party resisting discovery must show why the party seeking discovery is not entitled to it. *Volumetrics*, 2011 WL 2470460, at *4. Regardless, there is no reasonable dispute as to relevance here.

[3] Nor may DFA use the DOJ's investigation as both a sword and a shield; DFA cannot argue that DOJ scrutinized and approved of the sale of the Carolinas Plants and then withhold its representations to DOJ made in connection therewith. *See* DFA's Response in Opp. to Pls.' Mot. for Expedited Disc., ECF No. 25, at 12-13 ("[T]hough the Department of Justice ("DOJ") specifically analyzed potential horizontal and vertical antitrust issues in the Carolinas, the resolution of DOJ's investigation did not require any relief [there]. . .").

### III. DFA CANNOT WITHHOLD RELEVANT DOCUMENTS FROM *SOUTHEASTERN MILK*.

The second narrow issue is whether DFA may withhold 32 relevant documents from a prior litigation, *Southeastern Milk*,[4] that it provided to DOJ to aid its antitrust review of the Asset Sale. The answer, again, is no.

First, DFA predictably cannot meet its burden to show these materials are irrelevant. Pls.' Br. at 7-9. Both *Southeastern Milk* and this case concern the impact of DFA's control on Dean's raw milk purchasing decisions and involve the same illegal "Side Note." Plaintiffs are requesting the 32 *Southeastern Milk* documents because those documents concern an improper DFA-Dean relationship that Plaintiffs will use to provide context for their Section 2 attempted monopoly claim. Specifically, the requested *Southeastern Milk* documents show that Dean continued to buy raw milk from DFA despite the fact that the Side Note drove up the price of raw milk. Evidence of a horizontal non-compete between Dean and DFA-owned processing entities at the milk processing level—at issue in *Southeastern Milk*—also sheds light on the origins of DFA's scheme to monopolize the raw milk market. All of this was made possible by the Side Note and ensuing exclusive supply agreements that Plaintiffs allege set the stage for DFA's attempted monopolization. The similarity in antitrust issues between *Southeastern Milk* and the Asset Sale is precisely why DOJ asked DFA to review these particular 32 documents, and why they are relevant here.

---

[4] *In re Southeastern Milk Antitrust Litigation*, 739 F.3d 262 (6th Cir. 2014) ("*Southeastern Milk*").

- 7 -

Despite acknowledging Plaintiffs' "several reasons" showing the relevance of these materials, Opp. at 18, DFA maintains that these 32 documents are irrelevant for three reasons.[5] Plaintiffs address each in turn.

First, DFA argues that "cloned" requests "are presumptively irrelevant and immaterial." Opp. at 14, citing *TravelPass Grp., LLC v. Caesars Entm't Corp.*, No. 5:18-CV-153-RWS-CMC, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020).[6] Not so. Instead, such requests "could save the time and expense of duplicating discovery aimed at the same issues and materials already produced in prior litigation." *Austin v. Nestle USA, Inc.*, No. C.A. 7:09-cv-03320, 2010 WL 4318815, at *4 (D.S.C. Oct. 26, 2010). The

---

[5] DFA tries to shift its burden of proof onto Plaintiffs by claiming that "Plaintiffs have the initial burden of making a threshold showing of relevance." Opp. at 13. This contradicts clear statements of law by this Court. But even if it were true, Plaintiffs spent three pages articulating the relevance of these materials in their opening brief, at 7-9. If this explanation is "conclusory" and fails to meet a "threshold showing," Opp. at 17, it is unclear how to meet DFA's expectations. Further, DFA's repeated attempts to shift its burden is "not in the spirit of Rule 26." *Peterson v. Wright Med. Tech., Inc.*, 2013 WL 655527, at *5-6 (C.D. Ill. Feb. 21, 2013) (finding plaintiff entitled to "cloned" discovery).

[6] DFA omitted half the Court's statement in *TravelPass*. The full quotation reads "[cloned discovery] is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case." 2020 WL 698538, at *6 (emphasis added). This is the same principle cited in the other case DFA uses for support, *Midwest Gas Services, Inc. v. Ind. Gas Co.*, IP 99-690-C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000). Opp. at 14. Even if this were the applicable standard, the fact that DFA produced these materials in response to DOJ's investigation into antitrust issues surrounding the raw milk market and the Asset Sale informs the Court's ultimate inquiry into whether the materials sought are relevant here. *See Munoz v. PHH Corp.*, No. 1:08-CV-0759-AWI-BAM, 2013 WL 684388, at *4 (E.D. Cal. Feb. 22, 2013) (ordering defendant to comply with "cloned" discovery request where an agency was "investigating the same alleged wrongful conduct as [wa]s alleged by Plaintiffs," and as such, the "Court need not make an illogical leap to conclude that the documents that [the defendant] has produced to the [agency] are relevant to subject matter in this case").

ultimate inquiry, as with settlement negotiations discussed in Part I, is relevance. Any hesitation with "cloned" requests comes where "the Court cannot ascertain whether the documents requested actually relate to Plaintiffs' claims and defenses." *TravelPass*, 2020 WL 698538, at *6. There is no such issue here. DFA has identified the materials sought, Opp. at 15-16 ("DFA only produced 32 documents to the DOJ in connection with the Investigation," including "expert reports, DFA's responses to requests for admission and interrogatories, and summary judgment materials"), and Plaintiffs have explained their relevance. The "cloned" form of the Request is therefore of no consequence; rather, Plaintiffs used this form to simplify DFA's production because "the fruits of [the document selection] process are readily available and in the possession of a party to this very litigation." *United States v. Am. Tel. & Tel. Co.*, 461 F. Supp. 1314, 1339 (D.D.C. 1978).

Next, DFA argues that Plaintiffs' own arguments related to market definition distinguish *Southeastern Milk* from this case such that the documents produced in that litigation are not relevant here. Opp. at 15-17. This does not follow. Certainly, the cases are not identical. The theory in *Southeastern Milk* was a horizontal conspiracy in violation of Sherman Act Section 1. There, the Side Note was the quid pro quo for an agreement in a milk market that spanned, as DFA points out, a number of Southeastern states. Here, Plaintiffs allege that the Side Note was part of DFA's years-long attempt to monopolize the raw milk market in and around the Carolinas. The market definition calculations in each case were, therefore, understandably based on "different facts and

legal theories." Opp. at 16. But this does not mean that the evidence developed in *Southeastern Milk* related to the DFA-Dean relationship, the Side Note, and the Carolinas Plants is unrelated to this case. To the contrary; DOJ certainly thought the materials were relevant to its review of the Asset Sale, and Plaintiffs have repeatedly articulated their relevance here.

Third, DFA argues that *Southeastern Milk* involved past conduct which is irrelevant to "a prospective case" brought "to prevent a prospective 'foreclosure' of competition." Opp. at 19-20. DFA's error is easy to fix: Plaintiffs' claims are not merely prospective. As Plaintiffs have consistently explained, their attempted monopolization claim alleges that DFA has already foreclosed MDVA from access to the Carolinas plants as part of its ongoing efforts to dominate the raw milk market. Compl. ¶¶ 61-63, 70; *see also* Pls.' Opp. to Mot. to Dismiss, ECF No. 41, at 3 ("Plaintiffs are seeking . . . relief . . . to reverse and arrest the anti-competitive effects of DFA's past and future conduct, respectively."). Thus, while the Asset Sale is a part of DFA's anticompetitive conduct that Plaintiffs allege in support of their Section 2 claim, equally important are DFA's past efforts to stop Dean from purchasing raw milk from other suppliers regardless of competitive factors. Accordingly, the *Southeastern Milk* documents that relate to these very efforts are relevant here.

Finally, DFA cannot seriously contend that it is disproportionately burdened by producing 32 documents that it already reviewed for its production to DOJ. If it is too difficult to separate documents that Plaintiffs do not ask for—those relating "exclusively

to milk processing plants outside of the relevant geographic region," Opp. at 20-21—DFA is certainly free to produce them all.

## CONCLUSION

Plaintiffs therefore respectfully ask this Court to enter an order compelling DFA to produce the requested documents.

DATED:  September 15, 2020

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

s/ Ryan G. Rich
A. Todd Brown, Sr., N.C. State Bar No. 13806
Ryan G. Rich, N.C. State Bar No. 37015
101 South Tryon Street, Suite 3500
Charlotte, North Carolina 28280
Telephone: (704) 378-4700
tbrown@huntonak.com
rrich@huntonak.com

Ryan P. Phair (*admitted pro hac vice*)
John S. Martin (*admitted pro hac vice*)
Kevin Hahm (*admitted pro hac vice*)
Carter C. Simpson (*admitted pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC  20037
Telephone: (202) 955-1500
rphair@huntonak.com
martinj@huntonak.com
khahm@huntonak.com
csimpson@huntonak.com

*Attorneys for Food Lion, LLC*

**TROUTMAN SANDERS LLP**

s/ Jason D. Evans
Jason D. Evans, N.C. State Bar No. 27808
301 S. College Street, 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1502
jason.evans@troutman.com

James A. Lamberth (*admitted pro hac vice*)
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3362
james.lamberth@troutman.com

*Attorneys for Maryland and Virginia Milk Producers Cooperative Association, Inc.*

## CERTIFICATE OF COMPLIANCE

   Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the word count for the foregoing memorandum does not exceed 3,125 words. The word count excludes the case caption, signature lines, cover page, and required certificates of counsel. In making this certification, the undersigned has relied upon the word count of the word-processing system used to prepare the brief.

   This the 15th day of September 2020.

               s/ Ryan G. Rich
                Ryan G. Rich