# **EXHIBIT A**

Letter from C. Simpson to B. Powell dated September 9, 2020
Re: Unresolved Issues Related to DFA's Motion for Protective Order



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

CARTER C. SIMPSON
DIRECT DIAL: 202 • 955 • 1850
EMAIL: csimpson@HuntonAK.com

September 9, 2020

**Via E-mail to brent.powell@wbd-us.com**

Brent F. Powell
One West Fourth Street
Winston-Salem, NC 27101
*Counsel for Dairy Farmers of America, Inc.*

Re:   *Food Lion, LLC, et al. v. Dairy Farmers of America, Inc.*, No. 1:20-cv-442
       (M.D.N.C.), Unresolved Issues related to DFA's Motion for Protective Order

Dear Brent:

I write to follow up on our phone conversation of September 4, 2020, in which we discussed DFA's objections and responses to Plaintiffs' Second Set of Requests for Production. Thank you again for your willingness to discuss these Requests. This letter memorializes that conversation as it related to the Requests that are the subject of your Motion for a Protective Order, ECF No. 52 (the Motion), and includes Plaintiffs' proposals for addressing your concerns related therein. I will also note that, as mentioned throughout, several of these Requests are subject to narrowing through our good-faith negotiations on DFA and Dean custodians and on search terms.

At the outset, we believe it would be helpful to correct DFA's characterization of Plaintiffs' claims as set forth in its memorandum in support of its Motion.[1] In short, Plaintiffs do not allege a solely forward-looking foreclosure claim based on the Asset Sale. Instead, Plaintiffs allege that DFA's May 1, 2020 purchase of forty-four legacy Dean milk processing facilities (the "Asset Sale") continued DFA's multi-year anticompetitive campaign to dominate the dairy supply chain in the relevant market.

In connection with a controversial 2001 merger between the two largest processors in the country, DFA and Dean entered into a long-term exclusive supply arrangement pursuant to

---

[1] DFA writes that "Plaintiffs' basic allegation is that DFA's acquisition of three former Dean Foods fluid milk processing plants in North and South Carolina will foreclose Plaintiffs' access to alleged markets for raw and fluid milk in those two states." *See* Memo. in Supp. of Mot. for Protective Order, ECF No. 54 ("Br."), at 11.

ATLANTA   AUSTIN   BANGKOK   BEIJING   BOSTON   BRUSSELS   CHARLOTTE   DALLAS   DUBAI   HOUSTON   LONDON
LOS ANGELES   MIAMI   NEW YORK   NORFOLK   RICHMOND   SAN FRANCISCO   THE WOODLANDS   TYSONS   WASHINGTON, DC
www.HuntonAK.com

which Dean promised to buy DFA's raw milk in exchange for DFA's agreement not to compete with Dean at the processing level. Compl. ¶ 39-49. To enforce this agreement, DFA secured a twenty-year, contingent, subordinated promissory note from Dean (the "Side Note"), which was valued at $96 million and made payable to DFA if Dean materially breached or terminated its milk supply agreements before 2021. *Id.* ¶ 47. Over time, the Complaint alleges, DFA increasingly leveraged its relationship with Dean to push rival producers (like MDVA) out of Dean's plants. *Id.* ¶¶ 59-62. In 2013, when DFA was not enforcing its exclusivity arrangement due to the pendency of litigation, MDVA supplied 1.142 billion pounds of raw milk to the Carolinas plants. Shortly thereafter, however, DFA forced Dean to reduce its purchases from MDVA—despite MDVA's excellent quality and service—and by 2019, no Dean facility in the Carolinas purchased MDVA milk. *Id.*

This pre-Asset Sale conduct underlies Plaintiffs' Section 2 claim that DFA has for years maneuvered to monopolize the raw milk market by using its long-term exclusive dealing contracts with Dean to "caus[e] Dean not to purchase raw Grade A milk from MDVA, whether by exercising its rights under the Side Note, entering into and enforcing other anticompetitive agreements with Dean, or through other means . . . ." Compl. ¶ 166. The Asset Sale is a thus part of DFA's anticompetitive conduct that Plaintiffs allege in support of their Section 2 claim. *Id.* But equally important are DFA's past efforts to force Dean to stop purchasing raw milk from other suppliers regardless of competitive factors.

Finally, Plaintiffs note that the burden placed on DFA by nature of its having to search two companies' records is unavoidable and necessary, as DFA possesses its own records and the books and records it acquired from Dean through the Asset Sale. Plaintiffs are attempting to secure relevant available records from Dean's estate, but Dean is unable to produce the records it transferred to DFA as a part of the Asset Sale, which Dean's counsel says includes all of Dean's corporate email servers. While it is unavoidable that DFA will have to search both entities' records, as it is able, Plaintiffs are mindful that DFA is doing so and will continue to negotiate towards efficiency.

For ease and consistency, this letter will address the Requests as organized in your Motion.

    I.    **Requests related to MDVA, its member farmers, and non-DFA farmers (Request Nos. 27, 42, and 43)**

***Request No. 27***: Plaintiffs propose to narrow this Request to seek "All documents created since January 1, 2014, concerning or relating to DFA's or Dean's strategy in the Relevant Area that mention or relate to MDVA or DFA's efforts to compete with MDVA in the Relevant Area or MDVA's availability as a supplier to Dean."

Documents from this 2014 time period are directly relevant because we believe DFA and Dean decided in 2014 that Dean's processing facilities in the Carolinas would begin reducing the volume of raw milk purchased from MDVA (Compl. ¶ 61). This Request seeks documents

Brent F. Powell
September 9, 2020
Page 3

related to DFA's past actions forcing Dean to push non-DFA producers out of Dean's processing facilities, which is a central allegation to Plaintiffs' attempted monopolization claim (Compl. ¶ 166). The Request thus seeks documents that will both provide direct evidence of the Section 2 claim and show the likely anticompetitive effects of the merger per the Section 7 claim because, among other things, the acquisition of the Dean plants made DFA's control over the Dean plants' purchasing decisions permanent.

*Request No. 42*: Plaintiffs believe that their Request Nos. 41 and 43 (see below) will address the documents sought by Request No. 42, and agree to withdraw this Request.

*Request No. 43*: Plaintiffs propose to narrow this Request to seek "Documents created since January 1, 2014, reflecting DFA's efforts to attract or recruit MDVA farmers who produce raw milk in or ship raw milk to the Relevant Area, including all communications between DFA and MDVA farmers."

Request No. 43 bears on DFA's repeated attempts to monopolize the relevant raw milk market by attracting MDVA farmer-members, and likely intended course of action in and around the Carolinas in the wake of the Asset Sale. As noted above, Plaintiffs are willing to address burden after the parties have agreed to custodians and search terms.

Plaintiffs do not anticipate a heavy burden on DFA related to these Requests, however, particularly as to legacy Dean custodians. Plaintiffs believe that a limited number of Dean executives will possess documents concerning MDVA milk and Dean's desire to purchase it. There also will likely be few such documents after Dean ceased its purchases from MDVA.

    II.    **Documents related to purchases in New Jersey, Kentucky, and Tennessee (Request Nos. 40, 41)**

*Request No. 40*: DFA has indicated that it is unwilling to provide any documents related to Cumberland Dairy in New Jersey, and DFA's decision to reduce or eliminate the volume that the Cumberland Dairy processing facility purchased from MDVA. Plaintiffs note that this Request seeks documents that would prove an allegation in the Complaint (¶ 112) and that would also show DFA's actions in a similar situation and under similar incentives to that alleged in the Carolinas (¶ 118). Plaintiffs also note that Courts often use the benefit of past experience when evaluating the anticompetitive merits of a transaction, and have since *Brown Shoe Co. v. United States*, 370 U.S. 294, 332 (1962) ("Moreover, it is apparent both from past behavior of Brown . . . that Brown would use its ownership of Kinney to force Brown shoes into Kinney stores."). If, however, DFA maintains its position as stated in its Motion, Plaintiffs agree that the parties are at an impasse as to this Request.

*Request No. 41*: Plaintiffs propose to narrow this Request to seek "Documents created since January 1, 2013, concerning or relating to DFA's relationship with MDVA with respect to the former Dean processing facility in Murray, Kentucky."

This request addresses DFA's past actions that had the effect of foreclosing MDVA from access to processing plants, causing MDVA to incur higher transportation costs and to lose members to DFA in Kentucky and Tennessee. Plaintiffs note that the Court will benefit from evidence of DFA's conduct in a similar situation in other markets and under similar incentives to that alleged in and around the Carolinas. If, however, DFA maintains its position as stated in its Motion, Plaintiffs agree that the parties are at an impasse as to this Request.

### III.   Documents related to or used by DFA in preparing its Answer and Interrogatory responses (Request Nos. 49, 50)

***Request No. 49***: Plaintiffs propose to narrow this Request to seek "Documents and Data supporting, contradicting, referring to, or relating to DFA's affirmative defenses or Plaintiffs' allegations that the Asset Sale will have the effect of substantially lessening competition, or to Plaintiffs' allegations that DFA has attempted to monopolize the market for raw fluid milk in the relevant geographic area."

***Request No. 50***: Plaintiffs propose to narrow this Request to seek "Documents and Data identified in Your Objections or Responses to any interrogatories issued to You in this action."

Both Requests now essentially mirror DFA's requests for documents from Plaintiffs and should be acceptable to DFA, with the exception of the reference to DFA's affirmative defenses. In our September 4 call, we agreed that the parties could address any remaining issues regarding the breadth of these Requests in the context of our custodian and search term negotiations; with affirmative defenses, Plaintiffs agreed that this Requests calls only for a search of terms specific to the enumerated defenses, and not for a fishing expedition as to any document that could conceivably bear on an affirmative defense. As such, the parties have not yet reached impasse as to these Requests.

### IV.   Past studies or analyses of the relevant markets (Request Nos. 25, 26)

***Request Nos. 25-26***: These requests seek information concerning DFA's strategies with respect to the relevant markets from 2014 to the present. As discussed above, documents related to DFA's years-long process of pushing MDVA out of Dean's processing plants is at the heart of Plaintiffs' Section 2 claim. The reason "analyses of market conditions or market shares from 2014 are probative of markets for raw and processed milk as they exist today" is because 2014 marked the last year there was competition. Plaintiffs therefore maintain their position that these documents are highly relevant. Plaintiffs also note that search term and custodian negotiations should alleviate DFA's concern regarding the breadth and burden of these Requests. However, if DFA's maintains a position that it need not produce documents from 2014, the parties have indeed reached impasse.

Brent F. Powell
September 9, 2020
Page 5

### V. Documents related to other dairy farmer cooperatives (Request Nos. 44, 45, 46, 47, 48)

***Request Nos. 44-45***: Plaintiffs propose to narrow these Requests into a single request seeking "All documents reflecting studies, business plans, planning documents, analyses, reports, or strategies concerning the Appalachian Dairy Farmers Cooperative."

***Request No. 46***: Plaintiffs propose to narrow this Request to seek "All documents created since January 1, 2014, reflecting analyses, studies, strategies, plans, assessments, or reports concerning Piedmont Milk Sales, LLC."

***Request No. 47***: Plaintiffs propose to narrow this Request to seek "All documents created since January 1, 2014, reflecting analyses, studies, strategies, plans, assessments, or reports concerning Cobblestone Milk Cooperative."

***Request No. 48***: Plaintiffs propose to narrow this Request to seek "All communications since January 1, 2014, between DFA or Dean and Cobblestone Milk Cooperative relating to MDVA or efforts to compete with MDVA in the Relevant Area."

These requests seek documents relating to DFA's involvement with other cooperatives operating in the Relevant Area throughout the time period that DFA was actively seeking to foreclose MDVA from processing capacity.

### VI. Pricing and supply documents (Request Nos. 29, 31)

***Request No. 29***: Plaintiffs understand that DFA takes the position that this Request is overbroad. In our call, we agreed that the parties will address its breadth in the context of our custodian and search term negotiation. As such, the parties have not yet reached impasse. We are willing to discuss the appropriate custodians and search terms with you promptly this week in order to determine whether or not the parties can reach agreement.

***Request No. 31***: Plaintiffs propose to narrow this Request to seek "Documents sufficient to show DFA's and Dean's pricing strategies and methodologies for setting prices for sales of raw or processed milk into or from the Relevant Area." As with Request No. 29, we expect that our search term and custodian negotiations will address any remaining concerns with the breadth of this Request.

We thank you for your prompt attention to this matter and appreciate your ongoing efforts to work through these discovery issues. Plaintiffs' opposition brief is due by Tuesday, September 15, and we would accordingly appreciate hearing from you by Friday, September 11. Plaintiffs remain willing to engage in further discussions by phone.

Brent F. Powell
September 9, 2020
Page 6

Sincerely,

*/s/ Carter C. Simpson*

Carter C. Simpson

cc:   Counsel of record for the parties