IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Food Lion, LLC, and Maryland and Virginia Milk Producers Cooperative Association, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Dairy Farmers of America, Inc.,<br><br>Defendants. | Case No. 1:20-cv-00442 |

**DAIRY FARMERS OF AMERICA, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

## SUMMARY

Plaintiffs barely address the actual document requests at issue, instead devoting two-thirds of their opposition brief to the proposition that broad discovery is allowed in some antitrust cases. Plaintiffs make much of this Court's observation in *Seaman v. Duke University* that "where allegations of conspiracy or monopolization are involved … broad discovery may be needed to uncover evidence of invidious design, pattern or intent." 2018 WL 1441267, at *4 (M.D.N.C. March 21, 2018) (citation omitted). Plaintiffs' reliance on *Seaman* ignores two key details: First, the Court said broad discovery "may" be necessary; not that it "always will be" necessary. Second, the Court's

1

statement came nearly three years into the *Seaman* litigation, and while broad discovery may be necessary and appropriate in the context of claims that are subject to the normal discovery processes, that is not the case here, as Plaintiffs insisted on an accelerated schedule. That trade off means that Plaintiffs' discovery requests must be focused—as the Court previously directed, and as Plaintiffs committed to the Court that they would do.

Even if this case was proceeding on a traditional discovery track, the requests at issue are not relevant or proportional, let alone focused or narrowly tailored to Plaintiffs' theory and requested relief. Plaintiffs take a narrow view of their case when it suits their purpose. For example, in seeking a preliminary injunction and expedited discovery, Plaintiffs asserted, *inter alia*, that:

- "While there are myriad antitrust concerns with the Asset Sale, *this case focuses solely on the anticompetitive effects of DFA's acquisition of the Carolinas plants and the higher prices consumers in this area will bear as a result.*" (ECF No. 17 at 1) (emphasis added);

- "Plaintiffs intend to seek divestiture of at least one of the Carolinas plants at trial as a remedy to preserve competition in the relevant markets *going forward.*" (*Id.* at 3) (emphasis added); and

- "So if we were to prevail on this case, Your Honor, we're ultimately going to come back to you, and you know, there's going to be a question of what's the remedy? Our remedy that we will be seeking in this case is going to be divestiture of one of the three plants in the Carolinas in order to preserve competition." (ECF No. 29 at 28:24-29:4).

2

By way of background, the Complaint discusses a 20-year old promissory note between DFA and Dean Foods Company ("Dean Foods") and alleges that, beginning in 2014, Dean Foods bought less milk from Maryland & Virginia Milk Producers Cooperative ("MDVA"). However, Plaintiffs do not claim that any of this activity was illegal or resulted in higher prices for consumers. Nor do they seek damages based on those allegations. Rather, Plaintiffs allege that "[t]his past conduct provides insight into the post-Asset-Sale world and guidance about the feasibility and likelihood of foreclosure." (ECF No. 1 at ¶118).

Plaintiffs then seek to use this "past is prologue" approach as a springboard for discovery on a host of other issues that have little, if anything, to do with their foreclosure theory or requested relief. For example, Plaintiffs seek documents regarding other dairy cooperatives going back to 2014, even though the Complaint contains no allegations regarding those cooperatives or how they supposedly relate to the Carolinas plants. Plaintiffs even seek discovery related to processing plants that operate in different geographic and product markets. Because this discovery goes well beyond what is relevant and proportional for this case, DFA requests that the Court enter an appropriate protective order to prevent Plaintiffs from seeking discovery beyond the scope permitted under Rule 26(b)(1).

3

# ARGUMENT

## I. PLAINTIFFS' REVISED REQUESTS REMAIN OVERBROAD AND DISPROPORTIONATE TO THE NEEDS OF THIS CASE.

### A. Revised RFP Nos. 27 and 43 Are Untimely and Overbroad.

**RFP No. 27:** RFP No. 27 originally sought "[a]ll documents created since January 1, 2014, concerning or relating to MDVA, its farmer members, or any other non-DFA producer of raw milk in the Relevant Area."[1] Recognizing the facial overbreadth of the request, Plaintiffs "narrowed" it to seek:

> All documents created since January 1, 2014 concerning or relating to DFA's or Dean's strategy in the Relevant Area that mention or relate to MDVA or DFA's efforts to compete with MDVA in the Relevant Area or MDVA's availability as a supplier to Dean.

(ECF No. 60-1 at 3).

This is a new, different, and untimely request.[2] The request also remains overbroad. Plaintiffs have not served a narrowly-tailored request, such as a request for "communications since January 1, 2017 between Dean and DFA

---

[1] For purposes of the Second RFPs, the "Relevant Area" consists of North Carolina, South Carolina, Georgia, Virginia, and the portion of Tennessee located in Federal Milk Marketing Order No. 5 (a small portion in Eastern Tennessee that includes Knoxville).

[2] Under the Stipulated Discovery and Briefing Schedule/Order, written discovery requests were required to be served by August 31, 2020. (ECF No. 40 at ¶7.)

4

regarding Dean's purchase of raw milk from MDVA for the Carolinas plants," but instead seek all strategy documents that so much as *mention* MDVA for a six-year period, even if they have nothing do with the alleged foreclosure of MDVA from the Carolinas plants. Because even Plaintiffs' revisions do not save this request from the problems of overbreadth and disproportionality, a protective order is appropriate.[3]

**RFP No. 43:** DFA's opening brief explained the overbreadth of this Request. Plaintiffs no longer seek every document "concerning or relating" to a communication between DFA and any of MDVA's over 900 member farmers, but now seek documents since 2014 "reflecting DFA's efforts to attract or recruit MDVA farmers in the Relevant Area."

The new request still fails to seek information relevant to Plaintiffs' allegations. Plaintiffs assert that they are entitled to discover "DFA's efforts to recruit MDVA farmers as part of its anticompetitive conduct." (ECF No. 60 at 17.) But Plaintiffs do not allege that DFA improperly recruited MDVA

---

[3] Plaintiffs devote much of their discussion of this request to DFA's responses to RFP Nos. 4 and 22, which are not at issue in this motion. DFA's position is that RFP No. 27 is facially overbroad, but that to the extent it seeks strategy or planning documents related to competition with MDVA in the Relevant Area, it is also duplicative as those documents are likely to be produced in response to RFP Nos. 4 and 22.

5

members in the past. Nor do Plaintiffs contend that DFA's alleged past conduct resulted in a loss of members.[4] Instead, Plaintiffs allege that "foreclosure of access to the Carolinas plants will increase MDVA's transportation costs," thereby prompting some MDVA farmers to switch to DFA *in the future*. (*Id.* at 16.) Plaintiffs also do not establish any link between any historic recruitment or loss of MDVA members and the alleged decline in Dean Foods' purchase of raw milk from MDVA for the Carolinas plants. In short, Plaintiffs' allegations do not provide a basis for this request.

### B. Documents Relating to Plants that Operate in Different Product and Geographic Markets Are Inadmissible and Irrelevant.

**RFP No. 40 and 41:** Plaintiffs do not dispute that the subject of RFP No. 40, the Cumberland Dairy plant in New Jersey, operates in both a different product market (shelf-stable milk—not fluid milk) and different geographic market than the Carolinas plants. Similarly, the subject of revised RFP No. 41, the "former Dean processing facility in Murray, Kentucky," produces extended-shelf life and cultured dairy products, not fluid milk. *See* Exhibit 6.[5]

---

[4] If such losses had occurred, Plaintiffs would presumably know about them and have included specific allegations in the Complaint.

[5] Dean Foods sold the Murray, Kentucky plant to Saputo Inc., a Canadian company with global operations, in late 2012. *See* Exhibit 6. There are no allegations in the Complaint about Saputo.

6

Plaintiffs cannot credibly argue that what allegedly happened at two plants involving different geographic and product markets in 2013 and 2014 is probative of what may happen in the Carolinas in 2021. *See Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360, 1433-34 (D. Kan. 1987) (citing Fed. R. Evid. 404(a) and excluding FTC's finding that hospital violated the Clayton Act as "not probative of any issue of motive, intent, knowledge, common plan or scheme *in the marketplace at issue in the present case*" where the FTC proceeding "involved a different product market and a different geographic market") (emphasis added). And "[w]hile admissibility and discoverability are not equivalent, it is clear that the object of the inquiry must have some evidentiary value" to justify discovery. *In re Kemper Ins. Cos.*, 2003 WL 25672797, at *2 (N.D. Ga. June 17, 2003); *see also Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 651 (N.D. Ill. 1994) (holding that discovery of evidence barred by an exclusionary rule may be obtained "(1) by showing that the evidence is admissible for another purpose other than that barred by the Federal Rules of Evidence or (2) by articulating a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence"). In short, Plaintiffs have articulated no permissible use for or relevance of this evidence.

The primary case cited by Plaintiffs, *Cobb Theatres III, LLC v. AMC Entm't Holdings, Inc.*, 2015 WL 10891939 (N.D. Ga. Nov. 6, 2015), is distinguishable. There, independent movie theaters accused a chain of using national market power to coerce film distributors into anticompetitive local licensing agreements. *Id.* at *2. The plaintiffs' theory required them to prove both that the chain had national market power and that it had previously used that power in other markets (thus making credible its threats in the relevant geographic market). *See id.* (noting that plaintiff contended that evidence from other markets was "relevant to prove AMC's national circuit power" and could bolster its claim that AMC would "make good on its threats to use its full weight and power" in anticompetitive ways) (internal quotation and citation omitted). That is nothing like the theory Plaintiffs advance here. Plaintiffs do not accuse DFA of using national market influence to limit competition in the Carolinas. Just the opposite: Plaintiffs' foreclosure theory depends on treating the Carolinas as isolated from other markets across the country (*See* ECF No. 1 at ¶¶22-25).

### C. Plaintiffs' Request for All Documents That Relate or Pertain to Plaintiffs' Allegations Are Overbroad and Lack the Required Particularity.

**RFP No. 49:** Originally, this request sought "[a]ll documents related to or used in the preparation of any allegation, denial, or affirmative defense

8

raised in [DFA's] pleadings in the Pending Action." Plaintiffs' revision expands the Request beyond DFA's pleadings to include documents "supporting, contradicting, referring to, or relating" to *Plaintiffs'* allegations "that the Asset Sale will have the effect of substantially lessening competition" or "that DFA has attempted to monopolize the market for raw fluid milk in the relevant geographic area." Once again, Plaintiffs have served a new document request after the deadline, and the Court may decline to enforce this request on that basis alone.

In addition, Plaintiffs do not address DFA's overbreadth concerns directly, instead arguing that search terms negotiations can resolve these issues. Search terms, however, cannot cure a facially overbroad request. *See Hay Creek Royalties, LLC v. Roan Res. LLC*, 2020 WL 2850902, at *5 (N.D. Okla. June 2, 2020) (rejecting proposal to limit facially-overbroad request through use of custodians and search terms where there were "other requests [that] are more narrowly tailored to obtain such relevant information.")[6]

Plaintiffs' assertion that the revised request "mirror[s] DFA's reciprocal request" is also incorrect. DFA sought documents *from Plaintiffs* about specific

---

[6] *Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery*, 2010 WL 11565920, at *3 (E.D.N.C. Jan. 20, 2010) is inapposite. In that case, the defendant sought a protective order to prevent *any* electronic discovery.

9

allegations made *by* Plaintiffs; Plaintiffs now seek documents *from DFA* about Plaintiff's own generalized allegations. *Compare* Plaintiffs' Revised RFP No. 49 (ECF No. 60-1 at 5) *with* DFA's 2nd Requests for Production to MDVA at Nos. 28, 29, 37 and 38 (excerpts attached as Exhibit 7) (identifying specific paragraph numbers in the Complaint). Even as reformulated, Plaintiffs' request "is analogous to seeking all documents relating to the allegations in a complaint, and it has been shown that such a sweeping request is not permitted." *Donnelly v. Arringdon Dev., Inc*, 2005 WL 8167556, at *2 (M.D.N.C. Nov. 8, 2005).

### D. Plaintiffs' Requests for General Strategy and Market Documents Going Back Six Years Are Overbroad.

**RFP Nos. 25 and 26**: Plaintiffs also gloss over DFA's overbreadth objections to these requests, asserting that DFA "seeks to withhold documents related to its strategies in the relevant markets." (ECF No. 60 at 19.) Plaintiffs seek far more than documents related to "strategies"—they have requested "all documents . . . concerning or relating to analyses, studies, strategies, plans, assessments, or reports relating to the supply, sale, or purchase of" raw or fluid milk, as well as all documents "concerning market conditions, market participants, market shares or competitors in the production of" raw and fluid milk in the Relevant Area. Read literally, these requests cover any document

10

during a six-year period that so much as mentions another raw or fluid milk producer in the Relevant Area.

Plaintiffs instead focus only on the time period of these requests, arguing that "2014 marked the last year before DFA pressured Dean to foreclose MDVA's access to the Dean plants and to undermine competition in the raw milk market." (Opp. Br. at 20.) Even if that were true, however, the requests go far beyond the supply contracts and the promissory note that had been in existence before 2014 and any alleged discussion between DFA and Dean Foods regarding MDVA's access to the Carolinas plants. Instead, the requests seek documents regarding any "competitor in the production of" raw or fluid milk since 2014, regardless of whether that document has anything to do with MDVA or the Carolinas plants. Similarly, the requests cover any "report" "relating to the supply, sale, or purchase of" raw or fluid milk in the Relevant Area since 2014, again regardless of whether the report has anything to do with MDVA or the Carolinas plants.

### E. Plaintiffs' Revised Requests for Documents Related to Other Milk Cooperatives Remain Disproportionate and Irrelevant.

**RFP Nos. 44 through 47:** Plaintiffs revised RFP Nos. 44 through 47 to no longer seek "all documents" "concerning or relating" to three other dairy cooperatives and milk marketers, but instead seek "all documents reflecting

11

studies, business plans, planning documents, analyses, reports, or strategies concerning" those cooperatives and marketers. The limitation to studies, business plans, and analyses does not make these requests relevant, and Plaintiffs' only response to DFA's relevance objection is to assert that "DFA does not explain why these documents are irrelevant." The explanation for irrelevance is obvious—the Complaint contains no allegations about DFA's alleged actions vis-à-vis other dairy cooperatives.

In attempting to establish relevance, Plaintiffs again claim they need discovery back to 2014 because that was allegedly "the time period that DFA was actively seeking to foreclose MDVA from the relevant milk processing facilities." (Opp. at 21.) But Plaintiffs do not allege that DFA sought to foreclose MDVA through use of other milk cooperatives or marketers. To the contrary, MDVA alleges that DFA pressured Dean Foods to foreclose MDVA from the Carolinas plants. In addition, even though Plaintiffs contend that these requests relate to cooperatives "that were operating or seeking to operate in the Relevant Area," the requests contain no geographic limitation. These requests are a fishing expedition.

**RFP No. 48:** This request originally sought "all documents" since January 1, 2014 "concerning or relating to communications between DFA or Dean and Cobblestone Milk Cooperative or any of its farmer members." ECF

12

53-1 at 16. In response to DFA's motion, Plaintiffs revised this request to seek "[a]ll communications since January 1, 2014, between DFA or Dean and Cobblestone Milk Cooperative relating to MDVA or efforts to compete with MDVA in the Relevant Area." Plaintiffs still provide no explanation as to purported relevance of communications between DFA or Dean Foods and Cobblestone going back to 2014 beyond their assertion that Cobblestone was operating in the Relevant Area at the time. Again, the Complaint contains no allegations about DFA's conduct vis-à-vis Cobblestone going back to 2014.[7]

### F. Plaintiffs' Overbroad "Catch-All" Request Cannot Be Fixed by Search Terms.

**RFP No. 29**: Plaintiffs' revised RFP No. 29 seeks, "[t]o the extent not produced in response to Plaintiffs' First Requests, documents concerning or relating to the supply of processed milk in, into, or from the Relevant Area by DFA, Dean, or a competitor, to Food Lion or other major customers in the Relevant Area." Plaintiffs do not respond in any meaningful way to DFA's concerns that this request calls for the production of *any* document related to the supply of processed milk to Food Lion and an unspecified universe of "major

---

[7] To be clear, DFA does not object to conducting a search of agreed-upon document custodians for communications with Cobblestone since January 1, 2017 that relate to MDVA or efforts to compete with MDVA. DFA objects to the time period of the search extending back to January 1, 2014.

13

customers." Plaintiffs offer no criteria for determining when a document "concerns or relates" to the supply of processed milk, but instead assert "that search term negotiations and the identities of DFA's custodians can address DFA's concerns with the breadth of this Request." (ECF No. 60 at 22). As noted above, however, search terms are not a cure-all for a facially overbroad request.

And even if search terms could solve the overbreadth concerns (they will not), Plaintiffs fail to address DFA's particularity objection or explain how a request that seeks documents "[t]o the extent not produced in response" to other requests specifies the documents sought. In short, Plaintiffs make no effort to explain the scope of this request or how DFA will determine the specific documents requested. Because "[a] court requires no further response when inadequate guidance exists to determine the proper scope of a request for discovery," *Thompson v. Reg'l W. Med. Ctr.*, 2007 WL 3232603, at \*3 (D. Neb. Oct. 31, 2007), DFA requests that the Court excuse it from responding to this request.

## **CONCLUSION**

For the reasons set forth above and in its opening brief, DFA requests that the Court enter a protective order providing that DFA need not respond to Plaintiffs' Requests for Production Nos. 25-27, 29, 40-41, and 43-49 and to grant such other relief as it deems necessary and appropriate.

14

Date: September 24, 2020            Respectfully submitted,

| **BAKER & MILLER PLLC** | **WOMBLE BOND DICKINSON (US) LLP** |
|---|---|
| W. Todd Miller* | _/s/ Brent F. Powell_ |
| Amber L. McDonald* | James P. Cooney III |
| 2401 Pennsylvania Avenue N.W. | N.C. State Bar No. 12140 |
| Suite 300 | Sarah Motley Stone |
| Washington, D.C. 20037 | N.C. State Bar No. 34117 |
| Phone: 202-663-7820 | One Wells Fargo Center, |
| Fax: 202-663-7849 | 301 S College St |
| TMiller@bakerandmiller.com | Suite 3500 |
| AMcDonald@bakerandmiller.com | Charlotte, North Carolina 28202 |
| | Phone: 704-331-4900 |
| **LATHAM & WATKINS LLP** | Fax: 704-331-4955 |
| | Jim.Cooney@wbd-us.com |
| Michael G. Egge* | Sarah.Stone@wbd-us.com |
| 555 Eleventh Street, NW | |
| Washington, DC 20004-1304 | Brent F. Powell |
| Phone: 202-637-2285 | N.C. State Bar No. 41938 |
| Michael.Egge@lw.com | One West Fourth Street |
| Attorneys for | Winston-Salem, North Carolina 27101 |
| Dairy Farmers of America, Inc. | Phone: 336-721-3600 |
| | Fax: 336-721-3660 |
| *_By Special Appearance_ | Brent.Powell@wbd-us.com |

*Attorneys for Dairy Farmers of America, Inc.*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I hereby certify that the foregoing brief complies with the word limits in Local Rule 7.3.

    */s/ Brent F. Powell*
Brent F. Powell (N.C. Bar No. 41938)
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston Salem, NC 27101
Tel: 336-728-7023
Email: Brent.Powell@wbd-us.com

*Attorney for Dairy Farmers of America, Inc.*