IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FOOD LION, LLC, and MARYLAND AND VIRGINIA MILK PRODUCERS COOPERATIVE ASSOCIATION, INC., | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | 1:20-CV-442 |
| v. | )<br>) | |
| DAIRY FARMERS OF AMERICA, INC., | )<br>) | |
| Defendant. | ) | |

**<u>ORDER</u>**

This matter is before the Court upon Plaintiffs Food Lion, LLC, and Maryland and Virginia Milk Producers Cooperative Association, Inc.'s ("Food Lion and MDVA") first motion to compel and request for expedited consideration. (Docket Entry 46.) For the reasons stated herein, the Court grants in part and denies in part Plaintiffs' motion to compel and orders Defendant Dairy Farmers of America, Inc. ("DFA") to respond to Plaintiffs' discovery requests as set forth below.

**I. BACKGROUND**

Food Lion and MDVA filed this action against DFA seeking injunctive relief pursuant to Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 2 of the Sherman Act, 15 U.S.C. § 2. (*See generally* Compl., Docket Entry 1.) Plaintiff Food Lion is a North Carolina limited liability company that operates approximately 600 supermarkets in the Carolinas, making it one of the largest retail purchasers of fluid milk in the region. (Compl. ¶ 1.) Plaintiff MDVA is a dairy cooperative with approximately 950 member farms throughout the Mid-Atlantic and

1

Southeast. (*Id.* ¶ 2.) Defendant DFA is the largest dairy cooperative in the United States, and as of May 2020, the largest milk producer and largest milk processor in the United States. (*Id.* ¶¶ 3, 95.) Food Lion and MDVA allege that DFA has engaged in anti-competitive conduct that will enable the monopolization of the dairy supply chain. (*See id.* ¶¶ 135-37.) More specifically, Plaintiffs contend that DFA consolidated the dairy industry through the enforcement of a twenty-year non-compete deal (the "Side Note") made in 2001 with the newly merged Dean Foods Company and subsequent supply agreements. (*Id.* ¶¶ 39-49.) Plaintiffs allege that the most recent manifestation of DFA's market consolidation is its May 1, 2020 acquisition of forty-four milk processing plants from Dean's bankruptcy estate ("Asset Sale"), including three plants in the Carolinas. (*Id.* ¶¶ 86-96.) Food Lion and MDVA seek an injunction requiring DFA to divest at least one of these plants. (*Id.* ¶ 173.)

Food Lion and MDVA filed their Complaint on May 19, 2020. (Docket Entry 1.) They then filed a motion to expedite discovery, which the Court granted. (Docket Entries 20, 28.) Food Lion and MDVA filed Plaintiffs' First Set of Requests for Production on June 17, 2020. (Ex. 1, Docket Entry 56-1.) Plaintiffs subsequently filed a motion to compel the discovery of certain documents responsive to Requests Nos. 1 and 3 of their requests for production. (Docket Entry 46.) The matter came before the Court for a telephone conference on September 21, 2020. (Minute Entry dated 9/18/2020.)

## II. DISCUSSION

### A. Legal Standard

Federal Rule 26 provides general rules regarding the scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

2

> considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995); *Erdmann v. Preferred Research, Inc. of Georgia*, 852 F.2d 788, 792 (4th Cir. 1988). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Carter Hughes v. Research Triangle Inst.*, No. 1:11CV546, 2014 WL 4384078, at *2 (M.D.N.C. Sept. 3, 2014) (unpublished) (citation omitted).

## B. Food Lion and MDVA's Motion to Compel

Plaintiffs seek document productions relating to two discovery requests served on DFA. Specifically, Food Lion and MDVA seek responses to Plaintiffs' First Requests for Production Nos. 1 and 3. (Docket Entry 46 at 1.) Request No. 1 seeks "[a]ll documents previously produced by DFA or Dean to the U.S. Department of Justice and/or state Attorneys General in connection with their investigation(s) and review(s) of the Asset Sale." (Ex. 1, Docket Entry 56-1 at 8.) Request No. 3 seeks "[a]ll communications between DFA on the one hand and any third party on the other, including Dean, regarding potential antitrust or competition issues associated with the Asset Sale." (*Id.*) Both of these requests exclude documents relating exclusively to milk processing plants outside of the Carolinas. (*Id.*)

DFA initially raised multiple objections to these requests but did produce 2,500 responsive documents from the DOJ investigation. (Ex. 2, Docket Entry 56-2 at 8-11;

3

McDonald Decl. ¶ 6, Docket Entry 56 at 2.)  However, from the DOJ productions, DFA withheld settlement communications between DFA and the Department of Justice ("DOJ") and thirty-two documents from *In re Southeastern Milk Antitrust Litigation*, 739 F.3d 262 (6th Cir. 2014) ("*Southeastern Milk*").  (McDonald Decl. ¶ 7.)  It is these two sets of documents that Plaintiffs now seek through their motion to compel.  (Docket Entry 47 at 4, 7.)

### C. Plaintiffs are not entitled to the settlement communications.

DFA contends that Federal Rule of Evidence 408 creates an outright privilege or otherwise bars Plaintiffs from discovering documents relating to the settlement negotiations between DFA, the DOJ and state Attorney Generals following the DOJ's antitrust review of the Asset Sale. (Docket Entry 55 at 8.)  In support of this argument, DFA relies on *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003).  In *Goodyear*, the Sixth Circuit Court of Appeals recognized a settlement privilege in the context of discovery based in part on the public policy that underlies Rule 408.  332 F.3d at 980-81 ("The public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein, leads us to conclude that a settlement privilege should exist."). In the alternative, DFA urges this Court to adopt a heightened relevancy standard for discovery related to confidential settlement agreements.  (Docket Entry 55 at 13.)  *See also Reist v. Source Interlink Co.'s*, 2010 WL 4940096, at *3 (M.D. Fla. Nov. 29, 2010) (unpublished).

District courts in the Fourth Circuit have consistently declined to recognize a settlement privilege, based on the policy underlying Rule 408 or otherwise, in discovery disputes.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, No. CIV. CCB-03-3408, 2012 WL 628493, at *3 (D. Md. Feb. 24, 2012) (unpublished) ("[T]he Fourth Circuit, like the

majority of courts, has declined to recognize a federal settlement privilege, and courts in this district have declined to apply a settlement privilege in discovery disputes."); *Polston v. Eli Lilly & Co.*, No. 3:08-3639, 2010 WL 2926159, at *1 (D.S.C. July 23, 2010) (unpublished) ("The Fourth Circuit has never recognized a settlement privilege.").

This Court has also declined to apply Rule 408 to discovery requests, holding instead that relevance, not admissibility, is the proper inquiry. *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, No. 1:05CV955, 2011 WL 2470460, at *11 n. 7 (M.D.N.C. June 20, 2011) (unpublished) ("[Federal] Rule [of Evidence] 408 does not warrant protecting settlement negotiations from discovery. On its face, [Federal Rule of Evidence 408] applies to the admissibility of evidence at trial, not to whether evidence is discoverable.") (*citing Phoenix Sol.'s Inc. v. Wells Fargo Bank, N.A.,* 254 F.R.D. 568, 584 (N.D. Cal. 2008)); *Kaplan Co.'s v. Peoplesoft USA, Inc.*, No. 1:03CV1014, 2006 WL 8447846, at *1 (M.D.N.C. Mar. 15, 2006) (unpublished) ("Plaintiff relies heavily on Fed. R. Evid. 408 to support its contention that settlement agreements should remain confidential. That rule, however, does not protect documents from discovery, but only determines whether such matters are admissible into evidence.").

Accordingly, when considering the admissibility of the settlement negotiations at issue here, the correct initial inquiry considers their relevance. The question remains, however, whether policy favoring the confidentiality of negotiations nonetheless warrants a heightened showing of relevance for disclosure. Several courts in the Fourth Circuit have expressly declined to impose "any special form of burden" on parties seeking disclosure of final settlement *agreements. See Volumetrics*, 2011 WL 2470460 at *4 n.5; *Polston*, 2010 WL 2926159, at *1. *But see Kaplan*, 2006 WL 8447846, at *2 (closely scrutinizing discovery requests for

settlement agreements on public policy grounds, but ordering disclosure after noting the "special relevance" of the "direct connection" between the defendant and the agreements sought).

However, in the context of pre-settlement *negotiations*, at least one district court in the Fourth Circuit found it appropriate to "apply enhanced protections to settlement documents and communications sought in discovery." *Wyeth v. Lupin Ltd.,* Civil No. WDQ-07-632, 2008 U.S. Dist. LEXIS 132943, at *9 (D. Md. Mar. 28, 2008) (unpublished) (disallowing discovery of settlement communications because the party seeking such communications had "not demonstrated that injustice will result from non-disclosure, nor demonstrated a particularized showing of the likelihood that the discovery will generate admissible evidence"). Furthermore, in *In re Anonymous*, considering whether confidential communications made during mediation should be disclosed, the Fourth Circuit itself found that courts "must balance the public interest in protecting the confidentiality of the settlement process and countervailing interests." 283 F.3d 627, 637 (4th Cir. 2002). To balance those interests, the Court required the party seeking disclosure of mediation communications to show that "manifest injustice" would result from nondisclosure. *Id.*

Although *Anonymous* arose in a different context (a mediation conference governed by additional confidentiality provisions), this Court agrees that public policy warrants judicial caution in exposing communications made during the negotiations leading up to a final settlement. *Id.* at 630. As noted in *Kaplan*, "[o]nce an agreement has been reached, there is a lesser interest in protecting the settlement agreement as opposed to the negotiations themselves." 2006 WL 8447846, at *2. Because parties engaging in settlement negotiations

6

may be "motivated by a desire for peace rather than from a concession of the merits of the claim . . . [they] may assume disputed facts to be true for the unique purposes of settlement negotiations," the discovery of which would be misleading if used for other purposes." *Wyeth*, 2008 U.S. Dist. LEXIS 132943, at *13.

Accordingly, the Court finds that when the disclosure of settlement negotiations is at issue, a particularized showing of relevance by the party seeking such documents is appropriate. Plaintiffs have not made such a showing. Accordingly, the Court denies Food Lion and MDVA's Requests for Production Nos. 1 and 3 to the extent that they pertain to pre-settlement communications and compromise offers between DFA, the DOJ and state Attorney Generals following the DOJ's antitrust review of the Asset Sale.

### D. Plaintiffs are entitled to the *Southeastern Milk* documents, insofar as they relate to the Side Note and supply agreements between Dean and DFA.

Plaintiffs seek thirty-two documents relating to the *Southeastern Milk* litigation that DFA acknowledges were produced to the DOJ for its review of the Asset Sale. (Docket Entry 58 at 7; McDonald Decl. ¶ 8, Docket Entry 56.) Those thirty-two documents include "expert reports, DFA's responses to requests for admission and interrogatories, and summary judgment materials." (McDonald Decl. ¶ 8.) In its Brief in Opposition to Plaintiffs' Motion to Compel, DFA first contends that Plaintiffs' Request for Production No. 1 is a "cloned" discovery request (a request that replicates a discovery request made in another lawsuit) and is therefore "presumptively irrelevant and immaterial." (Docket Entry 55 at 13-14, citing *TravelPass Grp., LLC v. Caesars Entm't Corp.,* No. 5:18-CV-153-RWS-CMC, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020) (unpublished).) DFA asserts that Plaintiffs "cannot meet their burden of showing threshold relevance by simply arguing that other cases and investigations

7

had some general 'overlap' with [their] case." (Docket Entry 55 at 17.) DFA further argues that these documents are irrelevant to Plaintiffs' "prospective case seeking divestiture of a single milk processing plant" because they related to "a case that alleged a different product market, a different geographic market, different antitrust claims, and a time period that stretched back almost twenty years from the present." (Docket Entry 55 at 19.)

As the party resisting discovery of the documents Plaintiffs seek, DFA bears the burden of showing that they are not relevant. *See Carter Hughes v. Research Triangle Inst.*, No. 1:11CV546, 2014 WL 4384078, at *2 (M.D.N.C. Sept. 3, 2014) (unpublished) (citation omitted). This Court does not find that a presumption of irrelevance is raised by Plaintiffs' purportedly "cloned" discovery request. This Court has not recognized such a presumption. Nor is this Court convinced that such a presumption would bar discovery if applied here. The full principal disfavoring "cloned" discovery requests described in *TravelPass* is that "requesting *all* documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case." 2020 WL 698538, at *6 (citing *King County v. Merrill Lynch & Co., Inc.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) (unpublished)) (emphasis added); *see also Ludlow v. Flowers Foods, Inc.,* No. 18-CV-01190-JLS-JLB, 2019 WL 6252926, at *18 (S.D. Cal. Nov. 22, 2019) (unpublished) ("Asking for all documents produced in another matter is not generally proper."); *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (unpublished) (denying discovery request for "any and all documents received from or provided to the United States Justice Department from 1995 to the present").

8

First, Plaintiffs' Request for Production No. 1 did not request *all* documents produced by DFA to the DOJ in its investigation. Plaintiffs limited their original request to documents relating to the geographic area at issue in this case. (*See* Ex. 1, Docket Entry 56-1 at 8.) The scope of Plaintiffs' request is now further narrowed to a subset of thirty-two documents from the *Southeastern Milk* litigation. Second, the fact that these documents were produced for the DOJ's antitrust investigation of the Asset Sale does suggest relevancy. Paralleling Plaintiffs' allegations, the anticompetitive conduct at issue in *Southeastern Milk* was predicated on the 2001 Side Note and subsequent long-term supply agreements between DFA and Dean. (Docket Entry 47 at 7-8; Compl. ¶¶ 39-49.) Because "extensive evidence was developed in *Southeastern Milk* regarding the circumstances surrounding the negotiation and execution of the Side Note," Plaintiffs plausibly argue that the *Southeastern Milk* documents are needed to "provide context for their Section 2 attempted monopoly claim." (Docket Entry 47 at 9; Docket Entry 58 at 7.)

The Court cannot conclude that the *Southeastern Milk* documents are not relevant to Plaintiffs' claims based upon the age of the documents.[1] "Particularly where allegations of conspiracy or monopolization are involved … broad discovery may be needed to uncover evidence of invidious design, pattern or intent." *Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 217 (D. Del. 1985). "[T]he temporal scope of discovery in antitrust suits should not be confined to the limitations period of the antitrust statutes." *Id.* at 218 (citing *Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.,* 632 F.2d 1135, 1143 (4th Cir.1980) (finding that discovery of

---

[1] DFA has not disclosed the exact age of the thirty-two *Southeastern Milk* documents Plaintiffs seek. According to DFA, the consolidated *Southeastern Milk* cases were filed in 2007 and settled in 2018. (Docket Entry 55 at 15.)

agreements made two years prior to the limitations period should have been permitted because of their relevance to the issue of conspiracy). Rather, "plaintiff is ordinarily permitted to discover defendant's activities for a reasonable period of time antedating the earliest possible date of the actionable wrong." *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, No. 01-2410-JAR, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003) (unpublished) (internal quotations omitted).

To succeed on its Section 2 monopolization claim, Plaintiff must prove "the possession of monopoly power" and "willful acquisition or maintenance of that power." 15 U.S.C. § 2; *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 441 (4th Cir. 2011). An attempted monopolization claim requires "(1) the use of anticompetitive conduct; (2) with specific intent to monopolize; and (3) a dangerous probability of success." *Id.* Here, showing acquisition of market power and anticompetitive conduct logically involves an investigation of DFA's past actions. Indeed, Plaintiffs' Complaint alleges that DFA's market consolidation "began with a 'corrupt bargain' struck in 2001," namely, a supply agreement between Dean and DFA secured by the Side Note. (Compl. ¶¶ 39, 44, 47.)

Certainly DFA "should not be subjected to discovery from unreasonably remote time periods." *Cyntegra, Inc. v. IDEXX Labs., Inc.*, No. CV 06-4170-PSG(CTX), 2007 WL 9701999, at *5 (C.D. Cal. June 29, 2007) (unpublished). However, because Plaintiffs do not seek broad historical discovery (but rather thirty-two documents that relate to agreements between Dean and DFA contextualizing their claims), production is appropriate. *See id.* (holding that "twenty-two years is not a reasonable period" for discovery in general, but permitting focused discovery of exclusive dealing agreements dating back to 1995) (citing *United States v. Grinnell Corp.,* 30 F.R.D. 358, 360 (D.R.I. 1962) (allowing discovery of agreements between defendant

10

and competitors going back to 1907, but limiting scope of all other discovery to ten years prior to the filing of the complaint)).

Neither does the Court find that the documents Plaintiffs seek will be unduly burdensome to produce. "As a general rule, under Federal Rule of Civil Procedure 26(b)(2)(C)'s proportionality analysis, 'the court must limit the frequency and extent of discovery otherwise allowed by these rules . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit." *CSX Transp., Inc. v. Peirce*, No. 5:05-CV-202, 2012 WL 12892735, at *5 (N.D.W. Va. July 18, 2012) (unpublished) (citation omitted). The Court acknowledges the difficulties that may arise in noticing entities about the disclosure of confidential *Southeastern Milk* documents. (*See* McDonald Decl. ¶ 12.) The Court is also aware that discovery in this case is taking place on an expedited schedule. (Docket Entry 28.) However, considering the relatively limited number of documents now at issue and their recent production to the DOJ, the court does not find that the burden on DFA to produce them outweighs their potential relevance to the case. Therefore, Plaintiffs are entitled to these thirty-two documents insofar as they relate to agreements that allegedly enabled the anticompetitive conduct that forms the basis of their case.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Food Lion and MDVA's motion to compel (Docket Entry 46) is **GRANTED IN PART AND DENIED IN PART.** DFA shall supplement its responses as stated herein no later than seven (7) days from the date of this Order.

11

_____
Joe L. Webster
United States Magistrate Judge

September 29, 2020
Durham, North Carolina