IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FOOD LION, LLC, and MARYLAND AND VIRGINIA MILK PRODUCERS COOPERATIVE ASSOCIATION, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | 1:20-CV-442 |
| v. | ) ) | |
| DAIRY FARMERS OF AMERICA, INC., | ) ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court upon Defendant Dairy Farmers of America, Inc.'s ("DFA") Motion for Protective Order as to Plaintiffs' Second Requests for Production of Documents. (Docket Entry 52.) For the reasons stated herein, the Court grants in part and denies in part Defendant's motion for a protective order and orders Defendant to respond to Plaintiffs' requests for production as set forth below.

## I. BACKGROUND

Food Lion and MDVA filed this action against DFA seeking injunctive relief pursuant to Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 2 of the Sherman Act, 15 U.S.C. § 2. (*See generally* Compl., Docket Entry 1.) Plaintiff Food Lion is a North Carolina limited liability company that operates approximately 600 supermarkets in the Carolinas, making it one of the largest retail purchasers of fluid milk in the region. (Compl. ¶ 1.) Plaintiff MDVA is a dairy cooperative with approximately 950 member farms throughout the Mid-Atlantic and Southeast. (*Id.* ¶ 2.) Defendant DFA is the largest dairy cooperative in the United States, and

1

as of May 2020, the largest milk producer and largest milk processor in the United States. (*Id.* ¶¶ 3, 95.) Food Lion and MDVA allege that DFA has engaged in anti-competitive conduct that will enable the monopolization of the dairy supply chain. (*See id.* ¶¶ 135-37.) More specifically, Plaintiffs contend that DFA consolidated the dairy industry through the enforcement of a twenty-year non-compete deal (the "Side Note") made in 2001 with the newly merged Dean Foods Company and subsequent supply agreements. (*Id.* ¶¶ 39-49.) Plaintiffs allege that the most recent manifestation of DFA's market consolidation is its May 1, 2020 acquisition of forty-four milk processing plants from Dean's bankruptcy estate ("Asset Sale"), including three plants in the Carolinas. (*Id.* ¶¶ 86-96.) Food Lion and MDVA seek an injunction requiring DFA to divest at least one of these plants. (*Id.* ¶ 173.)

Food Lion and MDVA filed their Complaint on May 19, 2020. (Docket Entry 1.) They then filed a motion to expedite discovery, which the Court granted. (Docket Entries 20, 28.) Food Lion and MDVA served Plaintiffs' First Set of Requests for Production on June 17, 2020. (Ex. 1, Docket Entry 56-1.) Food Lion and MDVA served their Combined Second Set of Requests for Production on July 27, 2020. (Ex. 1, Docket Entry 53-1.) Defendant filed its Motion for Protective Order as to Plaintiffs' Second Requests for Production of Documents on September 1, 2020. (Docket Entry 52.)

## II. DISCUSSION

> Federal Rule 26 provides general rules regarding the scope of discovery:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

2

> Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Discovery rules are to be accorded broad and liberal construction. *See Herbert v. Lando,* 441 U.S. 153, 177 (1979); *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). Nevertheless, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (citation omitted).

Defendant seeks a protective order from this Court providing that DFA need not respond to Plaintiffs Requests for Production Nos. 25, 26, 27, 29, 31, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, and 50. (Docket Entry 52 at 1.)[1] Defendant asserts that these sixteen requests are overbroad, unduly burdensome, lacking in relevance, and/or disproportionate to the needs of this case. The Court notes at the outset that Plaintiffs have acknowledged that they "bear a significant responsibility for preparing narrow, targeted discovery" considering the expedited discovery schedule that they have requested. (Docket Entry 29 at 29:12-22.) Federal Rule 34 further requires that requests for production "describe with reasonable particularity each item or category of items to be inspected" so that the party to whom the request is directed has "sufficient information . . . to identify responsive documents." Fed. R. Civ. P. 34(b)(1)(A); *Hager v. Graham*, 267 F.R.D. 486, 493 (N.D.W. Va. 2010). Having set forth fundamental

---

[1] All citations in this Order to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

3

principles of discovery and the discovery timeline in this case, the court finds the following as to each request:

**Request No. 25**

Request No. 25 seeks:

All documents created since January 1, 2014, concerning or relating to any analyses, studies, strategies, plans, assessments, or reports relating to the supply, sale, or purchase of raw or processed milk in, into, or from the Relevant Area.

(Ex. 1, Docket Entry 53-1 at 13.) DFA contends that this request is overbroad, disproportionate, and improper because it asks for "all documents . . . concerning or relating to" the subject matter. (Docket Entry 54 at 18, citing *Donnelly v. Arringdon Dev., Inc*, No. 1:04CV889, 2005 WL 8167556, at *1 (M.D.N.C. Nov. 8, 2005) (unpublished).) Defendants also challenge the relevance of documents prior to 2017, alleging that Plaintiffs have failed to explain "why or how analyses of market conditions or market shares from 2014 are probative of the markets for raw and processed milk *as they exist today*." (*Id.* (emphasis in original).)

The documents are certainly relevant because Plaintiffs allege that the Asset Sale "was simply the latest action in DFA's multi-year anticompetitive campaign to monopolize the milk supply chain in the relevant market." (Docket Entry 60 at 5-6; *see also* Compl. ¶¶ 165-66.) The year 2014 is relevant as the year in which Dean allegedly notified MDVA that it would be replacing its milk volume with DFA's pursuant to the Side Note. (Compl. ¶¶ 59-62.)

With regard to the breadth of the request, however, in *Donnelly*, this Court held that requests seeking "all documents identified or relied upon in response to [the d]efendant's interrogatories" and any photo "concerning the events and happening alleged in the complaint" were overbroad. 2005 WL 8167556, at *2. The applicable principle from *Donnelly*

4

is that "broad and undirected requests for all documents which relate in any way to the complaint [should be] stricken as too ambiguous." *Id.* at *2 n.1 (citing *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)). In other words, for a request to meet Rule 34's mandate, it must not be "so open-ended as to call simply for documents related to a claim or defense in this action." Fed. R. Civ. P. 34(b)(1)(A); *Parsons*, 141 F.R.D. at 412. "This test, however, is a matter of degree depending on the circumstances of the case. *Hager*, 267 F.R.D. at 493.

Here, and as compared to *Donnelly*, Plaintiffs request a specific genre of document: those concerning analyses, studies, strategies, plans, assessments, or reports. Accordingly, and contrary to Defendant's arguments, the request is not overly broad merely by requesting "[a]ll documents." It is, however, overbroad as it seeks any such documents "relating to the supply, sale, or purchase of raw or processed milk in, into, or from the Relevant Area." Given that this entire case, and certainly all of DFA's business, involves the supply, sale or purchase of raw or processed milk, this request is effectively a request for all materials "in any way concerning the events and happenings alleged in the complaint." *Donnelly*, 2005 WL 8167556, at *2. Accordingly, Defendant's protective order is granted as to Request No. 25.

**Request No. 26**

Request No. 26 seeks:

All documents created since January 1, 2014, concerning or relating to any analyses, studies, strategies, plans, assessments, or reports concerning market conditions, market participants, market shares, or competitors in the production, processing, or sale of raw milk or processed milk in, into, or from the Relevant Area.

(Ex. 1, Docket Entry 53-1 at 13.) Defendant argues that this request, like No. 25, is overbroad, disproportionate, and improperly requests "all documents . . . concerning or relating to" the

5

subject matter. (Docket Entry 54 at 17-18.) This request, however, is not "too ambiguous" under *Donnelly*. 2005 WL 8167556, at *2. As already noted, Plaintiffs have articulated why documents relating to DFA's conduct predating 2017 are needed for their Section 2 claims, and DFA agrees that these documents may be relevant. (Docket Entry 60 at 8-12; Docket Entry 54 at 18.) Contrary to DFA's argument that this request would require the production of all documents that "so much as mention another raw or fluid milk producer in the Relevant Area," the Court finds that this request is sufficiently narrowed by the types of documents it seeks. (Docket Entry 62 at 10-11.) Further the request is only for documents "concerning market conditions, market participants, market shares, or competitors" rather than more generally for "reports relating to the supply, sale, or purchase of raw or processed milk" as in Request No. 25. (Ex. 1, Docket Entry 53-1 at 12.) Therefore, Defendant's protective order is denied as to Request No. 26.

**Request No. 27**

Request No. 27 seeks:

> All documents created since January 1, 2014, concerning or relating to MDVA, its farmer members, or any other non-DFA producer of raw milk in the Relevant Area.

(Ex. 1, Docket Entry 53-1 at 14.) DFA asserts that this request is overbroad and disproportionate because it seeks documents covering a six-and-a-half-year period and a five-state area. (Docket Entry 54 at 12.) Plaintiffs agreed in writing to revise this request on September 9, 2020, so that it now seeks:

> All documents created since January 1, 2014, concerning or relating to DFA's or Dean's strategy in the Relevant Area that mention or relate to MDVA or DFA's efforts to compete with MDVA in the Relevant Area or MDVA's availability as a supplier to Dean.

6

(Ex. A, Docket Entry 60-1 at 3.) DFA contends that the revised request "remains overbroad" and was untimely made pursuant to the Court's scheduling order requiring that all requests for production be served on or before August 31, 2020. (Docket Entry 62 at 4; Stipulated Discovery and Briefing Schedule/Order ¶ 6, Docket Entry 40.) The Court agrees that that the original request was facially overbroad. The revised request, however, is sufficiently narrow. Because the revision was promptly communicated in writing after the Parties met to discuss the requests, the request will not be disallowed for untimeliness. It appears that there may be significant overlap between this request and Requests Nos. 4, 22, and 26, in that they all seek strategy documents. As such, the Court does not find the request unduly burdensome. DFA's protective order is denied as to the revised Request No. 27.

**Request No. 29**

Request No. 29 seeks:

> To the extent not produced in response to Plaintiffs' First Requests, all documents concerning or relating to the supply of processed milk in, into, or from the Relevant Area by DFA, Dean, or a competitor, to Food Lion and other major customers in connection with the purchase of raw or processed milk.

(Ex. 1, Docket Entry 53-1 at 14.) The revised request modifies the last clause of the request to "Food Lion or other major customers in the Relevant Area." (Docket Entry 62 at 13.) Plaintiffs argue that any overbreadth can be cured by crafting search terms, for example, to define what is meant by "major customers." (Docket Entry 60 at 21-22.) Considering Plaintiffs' responsibility to conduct narrow, targeted discovery on this expedited timeline, the Court finds this request is facially overbroad and fails to "describe with reasonable particularity" the items sought. Fed. R. Civ. P. 34(b)(1). However, the Court recognizes the importance of this information to proving rising milk prices, the alleged antitrust injury

7

suffered by Plaintiff Food Lion. (*See* Compl. ¶¶ 144-46.) As such, the court strikes the phrase "and other major customers" from the revised Request No. 29, but DFA's motion for a protective order as to this request is otherwise denied.

**Request No. 31**

Request No. 31 seeks:

> All documents concerning or relating to DFA's, Dean's, or any other company's transaction prices, price lists, pricing plans, price announcements, pricing policies, pricing forecasts, pricing strategies, pricing analyses, pricing decisions, or any other incentives offered in connection to raw or processed milk sales in, into, or from the Relevant Area.

(Ex. 1, Docket Entry 53-1 at 14.) Defendant contends that this request is overbroad and disproportionate. (Docket Entry 54 at 20-21.) Plaintiffs have agreed to the following revision:

> Documents sufficient to show DFA's and Dean's pricing strategies and methodologies for setting prices for sales of raw or processed milk into or from the Relevant Area.

(Ex. A, Docket Entry 60-1 at 6.) The Parties do not appear to have addressed this request any further in their briefs. (*See generally* Docket Entries 60, 62.) Defendant "does not dispute that pricing data is relevant to Plaintiffs' allegations," and the revised version appears to address Defendant's concerns with overbreadth and disproportionality. (Docket Entry 54 at 21.) Therefore, the Court denies DFA's motion for a protective order as to the revised Request No. 31.

**Request No. 40**

Request No. 40 seeks:

> All documents created since January 1, 2016, concerning or relating to the decisions and/or actions of Cumberland Dairy in New Jersey and/or DFA to reduce or eliminate the volume of raw milk that the Cumberland Dairy processing facility purchased from MDVA.

8

(Ex. 1, Docket Entry 53-1 at 16.) Defendant challenges the relevance and proportionality of this request because it seeks documents relating to a different product market (shelf-stable milk, not fluid milk) and pre-2017 conduct outside the Relevant Area. (Docket Entry 54 at 15; Docket Entry 62 at 6.) Plaintiffs respond that the evidence sought by this request is "valuable because DFA's past conduct in other markets reveals its likely intent and probable future conduct in the market alleged here." (Docket Entry 60 at 18.) Defendant responds that these markets are too distinct to be probative of what actions DFA might take in the Carolinas. (Docket Entry 62 at 7.)

The documents sought by Request No. 40 relate to Plaintiffs' allegations. (*See* Compl. ¶ 112 ("[I]n 2017, DFA purchased Cumberland Dairy . . . Almost immediately following DFA's takeover of the facility, MDVA lost all of its raw milk business as Cumberland quickly switched to DFA for its milk supply.").) The Court agrees that DFA's past actions outside of the Relevant Area may be instructive for understanding DFA's incentives and future conduct. The Court does not find this request disproportionate or unduly burdensome because Cumberland Dairy was specifically mentioned in the Plaintiffs' complaint, and the time period of this request predates the Parties' negotiated default time period for document requests (January 1, 2017) by only one year. (Docket Entry 60 at 8.) Therefore, DFA's motion for a protective order is denied as to Request No. 40.

**Request No. 41**

Request No. 41 seeks:

All documents created since January 1, 2013, concerning or relating to actions and/or decisions by processing facilities owned by or affiliated with Dean and located in Kentucky or Tennessee to reduce or eliminate the volume of raw milk purchased from MDVA.

9

(Ex. 1, Docket Entry 53-1 at 16.) The revised Request No. 41 now seeks:

> Documents created since January 1, 2013, concerning or relating to DFA's relationship with MDVA with respect to the former Dean processing facility in Murray, Kentucky.

(Ex. A, Docket Entry 60-1 at 4.) Defendant makes the same challenges to the relevance and proportionality of this requests as made in response to Request No. 40 because it seeks pre-2017 conduct that occurred outside the Relevant area and in a different product market. (Docket Entry 54 at 16.) The Court agrees. Plaintiffs have made no allegations about a former Dean processing facility in Murray, Kentucky, and this request spans a significant time period. (*See generally* Compl.) Furthermore, Defendant notes that this plant was acquired by Saputo, Inc. in 2012, prior to the start of the time period indicated in this request. (Docket Entry 62 at 6.) Plaintiffs have not offered any clarification as to why MDVA farmers' relationship with a processing facility controlled by neither Dean nor DFA would be probative of what is likely to happen in the Carolinas due to DFA's acquisition of processing plants. Therefore, Defendant's protective order is granted as to Request No. 41.

**Request No. 42**

> Request No. 42 seeks:
>
> All documents created since January 1, 2013, concerning or relating to MDVA farmer members located in Tennessee or Kentucky becoming DFA members, including documents relating to DFA's efforts to recruit such farmers, the circumstances that led such farmers to become DFA members, and all communications between DFA and such MDVA farmers that became DFA members.

(Ex. 1, Docket Entry 53-1 at 16.) Plaintiffs have since withdrawn Request No. 42. (Ex. A, Docket Entry 60-1 at 4.) Therefore, DFA is not required to produce any documents responsive to this withdrawn request.

**Request No. 43**

Plaintiff' original Request No. 43 sought:

All documents created since January 1, 2014, concerning or relating to communications between DFA and any MDVA farmer members.

(Ex. 1, Docket Entry 53-1 at 17.) The revised request now seeks:

Documents created since January 1, 2014, reflecting DFA's efforts to attract or recruit MDVA farmers who produce raw milk in or ship raw milk to the Relevant Area, including all communications between DFA and MDVA farmers.

(Ex. A, Docket Entry 60-1 at 4.) Defendant argues that this request is disproportionate and overbroad considering the six-year time period at issue and the fact that MDVA has "approximately 950 member farms in eleven states throughout the Mid-Atlantic and Southeast." (Docket Entry 54 at 12, citing Compl. ¶ 2, Docket Entry 1.) DFA further argues that "Plaintiffs' allegations do not provide a basis for this [revised] request." (Docket Entry 62 at 6.)

The Court agrees that Plaintiffs made no allegations concerning "DFA's long-term efforts to recruit MDVA's member-farmers," which they now point to as the reason for this request. (Docket Entry 60 at 17.) Plaintiffs' complaint does predict a loss of MDVA membership due to DFA's acquisition of the three Dean processing facilities in the Carolinas. (*See* Compl. ¶¶ 139-41.) But the allegations that MDVA members "will face a choice" between DFA and other less profitable processors and may choose DFA for economic reasons does not allege recruitment efforts by DFA. (*Id.*) Therefore, DFA's protective order is granted as to Request No. 43 because the Court does not find this request relevant to Plaintiffs' claims as alleged.

11

**Request No. 44 through 47**

Requests Nos. 44 through 47 seek the following:

Request No. 44: All documents concerning or relating to the formation of the Appalachian Dairy Farmers Cooperative.

Request No. 45: All documents concerning or relating to Appalachian Dairy Farmers Cooperative, its farmer members, and/or farms that ultimately became members of Appalachian Dairy Farmers Cooperative, including any studies, business plans, planning documents, analyses, reports, or strategies.

Request No. 46: All documents created since January 1, 2014, concerning or relating to Piedmont Milk Sales, LLC, including any studies, business plans, planning documents, analyses, reports, or strategies.

Request No. 47: All documents created since January 1, 2014, concerning or relating to Cobblestone Milk Cooperative or its farmer members, including any studies, business plans, planning documents, analyses, reports, or strategies.

(Ex. 1, Docket Entry 53-1 at 17.) DFA contends that these requests are overbroad and disproportionate because they are not limited to activities within the relevant area and they are best obtained from the named entities directly. (Docket Entry 54 at 19.) Plaintiffs agreed in writing to revise and consolidate these requests on September 9, 2020, so that they now seek:

Request No. 44-45: All documents reflecting studies, business plans, planning documents, analyses, reports, or strategies concerning the Appalachian Dairy Farmers Cooperative.

Request No. 46: All documents created since January 1, 2014, reflecting analyses, studies, strategies, plans, assessments, or reports concerning Piedmont Milk Sales, LLC.

Request No. 47: All documents created since January 1, 2014, reflecting analyses, studies, strategies, plans, assessments, or reports concerning Cobblestone Milk Cooperative.

(Ex. A, Docket Entry 60-1 at 6.) DFA asserts that limiting these requests to studies, business plans, and analysis does not render them relevant as Plaintiffs have not "alleged actions vis-à-vis other dairy cooperatives." (Docket Entry 62 at 12.)

12

That assertion, however, mischaracterizes Plaintiffs claims. MDVA and Food Lion contend that "DFA has a history of anti-competitively leveraging its supply agreement to restrict and eventually eliminate *competitors'* access to legacy Dean plants." (Compl. ¶ 118 (emphasis added).) Even more generally, Plaintiffs assert that this behavior in the Carolinas, together with behavior in other areas, demonstrates "that DFA has found foreclosure to be a profitable practice because of its effect on *competitors* and because it provides leverage to compel farmers to switch to DFA." (*Id.* (emphasis added).) The complaint therefore clearly expands beyond DFA's behavior towards MDVA and incorporates its alleged actions towards other dairy cooperatives more generally.

However, while Plaintiffs do mention competitors generally, they fail to mention Appalachian Dairy Farmers Cooperative or Piedmont Milk Sales, LLC, specifically in their complaint. It is therefore not clear on the face of the complaint why DFA's actions against these particular dairy cooperatives are relevant to this dispute, and Plaintiffs have not offered much in the way of clarification. Whatever benefit Plaintiffs will derive from obtaining these documents is outweighed by the burden on DFA to produce them, given the lack of geographical limitation in the requests and the six-year time period at issue. Finally, to the extent that these requests seek information about market competitors in the Relevant Area, Request No. 26 is broad enough to capture such relevant information.

Accordingly, the Court grants DFA's motion for a protective order as to Requests Nos. 44 through 47. To the extent Plaintiffs want more information than what DFA must produce pursuant to other requests for production, they can acquire it from those entities directly.

**Request No. 48**

Request No. 48 seeks:

> All documents created since January 1, 2014, concerning or relating to communications between DFA or Dean and Cobblestone Milk Cooperative or any of its farmer members.

(Ex. 1, Docket Entry 53-1 at 17.) As with Requests Nos. 44 through 47, DFA contends that this request is overbroad and disproportionate because it is not limited to activities within the relevant area and covers an extensive time period. (Docket Entry 54 at 19). Plaintiffs agreed in writing to revise this request on September 9, 2020, so that it now seeks:

> All communications since January 1, 2014, between DFA or Dean and Cobblestone Milk Cooperative relating to MDVA or efforts to compete with MDVA in the Relevant Area.

(Ex. A, Docket Entry 60-1 at 6.) Defendant asserts that the revised request still seeks irrelevant information insofar as it requests communications between DFA or Dean and Cobblestone dating back to 2014. (Docket Entry 62 at 13.)

As follows under the analysis for Requests Nos. 44 through 47, Cobblestone Milk Cooperative is not mentioned in Plaintiffs' complaint, which raises questions about the original Request No. 48's relevance. However, unlike Requests Nos. 44 through 47, the revised Request No. 48 seeks communications "*relating to MDVA* or efforts *to compete with MDVA* in the Relevant Area," thereby drawing a nexus with MDVA that Requests Nos. 44 through 47 lack. The request is also geographically limited to the Relevant Area, rendering it proportional. Accordingly, the DFA's motion for a protective order as to Request No. 48 is denied.

14

**Request No. 49**

Plaintiffs' original Request No. 49 sought:

All documents related to or used in the preparation of any allegation, denial, or affirmative defense raised in Your pleadings in the Pending Action.

(Ex. 1, Docket Entry 53-1 at 17.) As revised, the request now seeks:

Documents and Data supporting, contradicting, referring to, or relating to DFA's affirmative defenses or Plaintiffs' allegations that the Asset Sale will have the effect of substantially lessening competition, or to Plaintiffs' allegations that DFA has attempted to monopolize the market for raw fluid milk in the relevant geographic area.

(Ex. A, Docket Entry 60-1 at 5.) The original request is plainly overbroad, and the revised version does not effectively narrow the breadth of documents sought. This request clearly runs afoul of the principle that requests for production cannot be "so open-ended as to call simply for documents related to a claim or defense in this action." *Parsons*, 141 F.R.D. at 412. Therefore, DFA's motion for a protective order as to Request No. 49 is granted.

**Request No. 50**

Request No. 50 seeks:

All documents pertaining to, relied upon, identified, or referred to by You in responding to any Interrogatory propounded by Plaintiffs in the Pending Action.

(Ex. 1, Docket Entry 53-1 at 17.) The Court finds this request overbroad for the same reasons articulated immediately above. Therefore, DFA's motion for a protective order as to Request No. 50 is granted.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Protective Order as to Plaintiffs' Second Requests for Production of Documents (Docket Entry 52) is **GRANTED IN PART** (as to Requests Nos. 25, 41, 43, 44, 45, 46, 47, 49 and

15

50) **AND DENIED IN PART** (as to Request Nos. 26, 27, 29, 31, 40 and 48). DFA shall supplement its responses as stated herein no later than thirty (30) days from the date of this Order.

$\underline{\qquad\qquad\qquad\qquad\qquad}$
Joe L. Webster
United States Magistrate Judge

October 6, 2020
Durham, North Carolina