# EXHIBIT B

**Defendant Dairy Farmers of America, Inc.'s Responses And Objections to Plaintiffs' Combined Second Set of Requests for Production**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Food Lion, LLC, and Maryland and Virginia
Milk Producers Cooperative Association, Inc.,

　　　　　　　　　　*Plaintiffs*,

v.

Dairy Farmers of America, Inc.,

　　　　　　　　　　*Defendant*.

Case No. 1:20-cv-00442

---

## DEFENDANT DAIRY FARMERS OF AMERICA, INC.'S
## RESPONSES AND OBJECTIONS TO PLAINTIFFS' COMBINED
## SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Dairy

Farmers of America, Inc. ("DFA"), through its counsel, hereby responds and objects to Plaintiffs'

Combined Second Set of Requests for Production.  The following Objections and Responses are

made expressly without in any way waiving or intending to waive, but, to the contrary, preserving

and intending to preserve: (a) All questions as to the competence, relevance, materiality, privilege,

admissibility as evidence, or use for any purpose of the requested information, in any aspect of

this or any other action; (b) The right to object on any ground to the use of any such information,

in any aspect of this or any other action; (c) The right to object, at any time, to a demand for any

further response to this or any other Request; and (d) The right at any time to revise, supplement,

correct, amend, or clarify these Objections and Responses and in particular to do so if DFA's

understanding of those legacy Dean documents and data acquired in the Asset Sale changes, or

Plaintiffs have clarified any ambiguous terms or Requests.

As memorialized in DFA's August 24, 2020 letter to Plaintiffs, which DFA incorporates

by reference, DFA objects to the overall scope of the Plaintiffs' Combined Second Set of Requests

for Production (the "Requests"). As noted in that letter, the above-captioned matter is not a Sherman Act Section 1 horizontal conspiracy case. Rather, this litigation involves a Section 7/Section 2 claim, which is focused on the narrow issue of whether DFA's acquisition of the Carolinas Plants in the Dean bankruptcy process may adversely impact competition in Plaintiffs' alleged markets for raw and fluid milk in North and South Carolina. The Requests, however, seem intent on expanding the scope of this case well beyond that narrow focus. As drafted, the Requests seek, *inter alia*, all documents related to all meetings between Dean and DFA for years prior to Dean's November 2019 bankruptcy filing, employee union issues, functionally every communication DFA has made with rating agencies over a three-year period, the stalking horse bid from the bankruptcy proceeding, all of DFA's financial documents, all documents relating to a decade-old settled litigation, seven years' worth of documents from Kentucky regarding any non-DFA members on the off chance that DFA was trying to recruit MDVA members in the past, documents related to a milk processing facility in New Jersey, and other requests for which Plaintiffs could not articulate a rationale. At the parties' June 4, 2020 status conference, the Plaintiffs acknowledged to the Court that they "bear a significant responsibility for proposing narrow, targeted discovery" in light of their request for expedited discovery. (Tr. 29:17-21.) These Requests do not reflect that responsibility.

Plaintiffs have indicated that they believed DFA's concerns about the Requests could be addressed through the negotiation of search terms and document custodians, and DFA's Responses and Objections attempt to address this position. However, the fact remains that the Requests are, as a whole, grossly overbroad and would be inappropriate even in a litigation where the contemplated discovery period was much longer.

## DEFINITIONS

1.     DFA objects to Plaintiffs' definition of "Dairy Farmers of America, Inc.," "DFA," "Defendant," "You," and "Your" on the grounds that it is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome. DFA further objects to Plaintiffs' definition on the basis that such a definition would require DFA to search for and produce documents not in its possession, custody, or control. DFA construes this definition to mean DFA's corporate headquarters in Kansas City, KS, and its regional office in Knoxville, TN.

2.     DFA objects to Plaintiffs' definition of "Dean" on the grounds that it is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome.  DFA further objects to Plaintiffs' definition on the basis that such a definition would require DFA to search for and produce documents not in its possession, custody, or control.  Where appropriate, DFA construes this definition to mean those assets of Dean which it has acquired.

3.     DFA objects to Plaintiffs' definition of "Kroger" on the basis that the definition is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome. DFA further objects to Plaintiffs' definition in that it assumes knowledge of a nonparty's corporate structure and internal organization, which DFA does not know, and imposes obligations outside of the Federal Rules of Civil Procedure. DFA shall construe "Kroger" as it understands the entity in DFA's ordinary course of business, which includes entities purchased by Kroger from Harris Teeter still operating under that name and the following Kroger-owned milk-processing facilities: Hunter Farms in High Point, North Carolina; Westover Dairy in Lynchburg, Virginia; and Centennial Farms in Atlanta, Georgia.

Case 1:20-cv-00442-CCE-JLW   Document 86-2   Filed 11/05/20   Page 4 of 48

4.      DFA objects to Plaintiffs' definition of "Asset Sale" on the basis that it seeks to incorporate information or broaden the definition of the Asset Sale beyond reference to the transaction that occurred between Dean and DFA consummated on May 1, 2020.  DFA objects to the definition of "Asset Sale" to the extent that it is used to seek information and documents outside the Relevant Geographic Region, the relevant time period, claims and defenses in the litigation, and/or beyond the scope of discovery under the Federal Rules of Procedure.  DFA's use of the term "Asset Sale" does not concede that all information related to the Asset Sale is relevant to the litigation (*e.g.*, assets outside of the Relevant Area).

5.      DFA objects to the Plaintiffs' definition of the term "bid" on the basis that Plaintiffs' definition is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome.  DFA further objects to the definition to the "bid" as it is substantially broader than the term "bid" as used in the ordinary course and purports to require DFA to prepare information not kept in the ordinary course of business.  DFA shall respond using the term "bid" as it is defined in the ordinary course of business.

6.      DFA objects to the Plaintiffs' definition of "processed fluid milk" as vague, ambiguous, and subject to multiple interpretations.  Plaintiffs' definition refers to Paragraphs 10 and 17 of their May 19, 2020 Complaint.  However, Paragraph 10 refers to the "processed milk market" and does not define "processed fluid milk."  Further, Paragraph 17 consists of assertions about the elasticity of the fluid milk market and "cultural and taste" preferences, but does not define what fluid milk is.  DFA shall understand and use the term "processed fluid milk" to mean fluid milk from cows processed for human consumption as liquid milk, excluding, for example, aseptic and ESL milk, cream, yogurt, sour cream, cheese, butter, and other milk-derived food products.

7.     DFA objects to the Plaintiffs' definition of "raw milk" as vague, ambiguous, and subject to multiple interpretations.  Plaintiffs' definition refers to Paragraphs 9 and 12-13 of the Complaint, filed May 19, 2020, and includes information outside the definition of raw milk.  DFA shall use and understand the term "raw milk" to mean the Grade A milk of cows before pasteurization or other processing.

8.     DFA objects to Plaintiffs' definition of "Side Note" on the basis that it is vague, ambiguous, subject to multiple interpretations, or mischaracterizes a valid promissory note between DFA and Dean.  DFA further objects to Plaintiffs' definition to the extent it includes "all related addendums, amendments, supplements, or extensions" on the basis that requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome.  For purposes of its responses, DFA shall understand and use "Side Note" to refer to the promissory note entered between Dean Foods Company and DFA in 2001 with an original principal amount of $40 million.  DFA's use of the term shall not be considered agreement or concession to Plaintiffs' mischaracterizations of the agreement.

9.     DFA objects to Plaintiffs' definition of "Carolinas plants" on the basis that such a definition would require DFA to search for and produce documents not in its possession, custody, or control.  DFA construes this definition to mean those assets of Dean which it has acquired.

10.     DFA objects to Plaintiffs' definition of "communication" and "communicated" on the basis that such definition is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses to such requests would be unduly burdensome.  DFA further objects to the definition of "communication" and "communicated" to the extent such definition seeks to impose burdens on DFA to create documents or other discoverable information not created in the ordinary course of business.  DFA

- 5 -

further objects to Plaintiffs' definition to the extent such definition seeks information outside the bounds of the Federal Rules of Civil Procedure.

11.     DFA objects to Plaintiffs definition of "Document(s)" on the basis that such definition incorporates "communications," as defined by Plaintiffs.  DFA incorporates its objections to Plaintiffs' definition of "communications" herewith.

12.     DFA objects to Plaintiffs' definitions of "including" to the extent such definition is to mean "including, but not limited to" or "including without limitation" as these phrases render Plaintiffs' Requests using the defined term vague, ambiguous, and subject to multiple interpretations.  DFA further objects to Plaintiffs' definition on the basis that requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome.  DFA further objects to Plaintiffs' definition to the extent such definition seeks information outside DFA's possession, custody, or control.  DFA shall construe the term within the ordinary understanding of the word.

13.     DFA objects to Plaintiffs' definition of "concerning," "relating to," "referring to," "regarding," or "with respect to" to the extent such definition is to mean "including without limitation" as this phrase renders Requests using the defined term vague, ambiguous, and subject to multiple interpretations.  DFA further objects to Plaintiffs' definition on the basis that requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome.  DFA further objects to Plaintiffs' definition to the extent such definition seeks information outside DFA's possession, custody, care or control.  DFA shall construe the term within the ordinary understanding of the phrases.

# INSTRUCTIONS

1.      DFA objects to Instruction No. 2 regarding the relevant time period.  The parties have previously negotiated a relevant time period of January 1, 2017 to July 31, 2020.  However, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish, in many cases seeking documents as far back as 2013.  The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets.  Further, Plaintiffs' request that documents be produced "to the present," which presents logistical and other burdens that are far outweighed by any benefit that Plaintiffs might contend they derive from such an instruction.  DFA objects to any relevant time period that purports to include documents prior to January 1, 2017, or after July 31, 2020, as requests for documents made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome.  As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020.

2.      DFA objects to Instruction No. 3 on the basis that it purports to require DFA to "organize[] and label[]" its responses to "correspond to the associated Request" as such a requirement would impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 34(b) also permits for the production of documents "as they are kept in the usual course of business," which DFA shall do.

3.      DFA objects to Instruction No. 4 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure.

4.      DFA objects to Instruction No. 5 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and improperly limits DFA's

choices as provided by the Rules. DFA will not produce all documents in native format, but will produce documents in a reasonably useable form, as agreed to by the parties in the ESI Protocol. DFA is available to discuss specific files and formats that it will produce in native format.

5.     DFA objects to Instruction No. 6 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and seeks to include interrogatories by way of instruction by purporting to require DFA to provide information about the sources of documents not in its possession, custody, or control.

6.     DFA objects to Instruction No. 8 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure.

7.     DFA objects to Instruction No. 9 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and/or any ESI agreement entered into by the parties.

8.     DFA objects to Instruction No. 10 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and/or any ESI agreement entered into by the parties.

## REQUESTS FOR PRODUCTION

**Request No. 9: All documents presented to or prepared by the DFA Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 9 on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control.  DFA's Board of Directors are not DFA employees and they maintain their own files, including, in many instances, their own e-mail addresses.  DFA further objects to Request No. 9 as overbroad and not

- 8 -

proportional to the needs of the case on the basis that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome. Request No. 9 seeks every document presented to or prepared by the DFA Board, or any committee thereof, "concerning or relating to Dean" without limitation by subject matter or Relevant Area. Prior to DFA's acquisition of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, documents concerning Dean are voluminous. Further, the Request seeks every document presented to or prepared by the DFA Board, or any committee thereof, "concerning or relating to…the Dean-DFA Supply Agreement(s)." However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing documents regarding these agreements is disproportionate to the needs of the case. In addition, the Request seeks every document presented to or prepared by the DFA Board, or any committee thereof, "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area." DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk. As such, every document presented to or prepared by its Board of Directors is "concerning or relating to…the sale or purchase of raw or fluid milk," in some manner. This Request would potentially require DFA to produce every Board-related document from a near-five state area for a period of more than three years. DFA also objects to Request No. 9 as irrelevant on the basis that the Request seeks every document presented to or prepared by the DFA Board, or any committee thereof, "concerning or relating to" the so-called "Side Note," which does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas. Subject to and without waiving these objections, DFA will produce relevant, non-privileged, non-duplicative Board minutes and Board books from the relevant time period, if any, that are related to the Asset Sale.

Case 1:20-cv-00442-CCE-JLW   Document 86-2   Filed 11/05/20   Page 10 of 48

**Request No. 10:** All documents, calendar entries, minutes and notes from meetings of the DFA Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area.

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 10 on the basis that it is duplicative of Request No. 9. DFA further objects to Request No. 10 on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA's Board of Directors are not DFA employees and they maintain their own files, including, in many instances, their own e-mail addresses. DFA further objects to Request No. 10 on the basis that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome. The Request seeks all documents, calendar entries, minutes and notes from meetings of the DFA Board, or any committee thereof, "concerning or relating to Dean" without limitation by subject matter or Relevant Area. Prior to DFA's acquisition of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, documents concerning Dean are voluminous. Further, the Request seeks every document presented to or prepared by the DFA Board, or any committee thereof, "concerning or relating to…the Dean-DFA Supply Agreement(s)." DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing every Board-related document regarding the agreements is disproportionate to the needs of the case. In addition, the Request seeks all documents, calendar entries, minutes and notes from meetings of the DFA Board, or any committee thereof, "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area." DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk. As such, every document presented to or prepared by its Board of Directors is "concerning or relating to…the

- 10 -

sale or purchase of raw or fluid milk," in some manner. This Request would require DFA to produce every Board-related document from a near-five state area for a period of more than three years. DFA also objects to Request No. 10 as irrelevant on the basis that the Request seeks all documents, calendar entries, minutes and notes from meetings of the DFA Board, or any committee thereof, "concerning or relating to" the so-called "Side Note," which does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas. DFA further objects to this Request to the extent it seeks irrelevant information that is not proportional to the litigation. "Calendar entries" are not substantive documents relating to any issue in this case. Subject to and without waiving these objections, DFA will produce documents as outlined in its response to Request No. 9.

**Request No. 11: All communications between or amongst members of the DFA Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 11 on the basis that it is duplicative of Request Nos. 9 and 10. DFA further objects to Request No. 11 on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA's Board of Directors are not DFA employees and they maintain their own files, including, in many instances, their own e-mail addresses. DFA further objects to Request No. 11 on the basis that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome. The Request seeks all communications, between or amongst members of the DFA Board, or any committee thereof, "concerning or relating to Dean" without limitation by subject matter. Prior to DFA's acquisition

- 11 -

of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, communications concerning Dean are voluminous. In addition, the Request seeks all communications, between or amongst members of the DFA Board, or any committee thereof, "concerning or relating to…the Dean-DFA Supply Agreement(s)." However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing every Board communication regarding the agreements is disproportionate to the needs of the case. In addition, DFA objects to Request No. 10 on the basis that the Request seeks all communications, between or amongst members of the DFA Board, or any committee thereof, "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area." DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk. As such, every communication by its Board of Directors is "concerning or relating to…the sale or purchase of raw or fluid milk," in some manner. This Request would require DFA to produce every Board-related communication relating to a near-five state area for a period of more than three years. DFA further objects to Request No. 10 as irrelevant on the basis that the Request seeks all communications, between or amongst members of the DFA Board, or any committee thereof, "concerning or relating to" the so-called "Side Note," which does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas. Subject to and without waiving these objections, DFA will search the files of DFA custodians who are reasonably likely to have non-duplicative documents responsive to this Request and produce relevant, non-privileged, nonduplicative documents relating to the Asset Sale.

**Request No. 12: To the extent not produced in response to Plaintiffs' First Request No. 3, all communications between or amongst DFA and its financial advisors (*e.g.* Houlihan Lokey), lenders (*e.g.* Wells Fargo), rating agencies (*e.g.* S&P), shareholders, investors, partners, suppliers, customers, and unions concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk**

- 12 -

**processing plants outside of the Relevant Area.**

      **RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 12 on the basis that it is duplicative of Request No. 3.   DFA further objects to Request No. 12 on the basis that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome.  This Request seeks communications between DFA and an untold number of individuals or organizations who may fall within the broad, undefined categories of a "shareholder" (which DFA does not have), "investors," "partners," "suppliers," and "customers."  The Request seeks all communications, between or amongst the above-listed persons "concerning or relating to Dean" without limitation by subject matter.  Prior to DFA's acquisition of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier.  As such, documents concerning Dean are voluminous.  The Request also seeks all communications, between or amongst the above-listed persons "concerning or relating to…the Dean-DFA Supply Agreement(s)."  However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing every communication with the above-listed persons relating to those agreemetns is disproportionate to the needs of the case.  In addition, the Request seeks all communications, between or amongst the above-listed persons "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area."  DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk.  As such, every communication is "concerning or relating to…the sale or purchase of raw or fluid milk," in some manner.  Producing every communication between or amongst the above-listed persons from a near-five state area for a period of more than three years is not proportional to the needs of the case.  As one example, DFA is uncertain of the relevance to this litigation of a communication between it and, for example, a union representative regarding employment terms.

DFA further objects to Request No. 12 as irrelevant on the basis that the Request seeks all communications, between or amongst the above-listed persons "concerning or relating to" the so-called "Side Note," which does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas. Further, the Request seeks irrelevant information related to DFA's union discussions, which documents would pertain to employment issues unrelated to this dispute. Subject to and without waiving these objections, DFA will produce documents as outlined in its response to Request No. 3.

**Request No. 13: All documents, calendar entries, minutes and notes from meetings between DFA and its financial advisors, lenders, rating agencies, shareholders, investors, partners, suppliers, customers, and unions concerning or relating to Dean, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 13 on the basis that it is duplicative of Request Nos. 3 and 12. DFA further objects to Request No. 13 on the basis that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome. The Request seeks all documents, calendar entries, minutes, and notes from meetings between DFA and any of the above-listed persons "concerning or relating to Dean," without limitation by subject matter. This Request seeks communications between DFA and an untold number of individuals or organizations who may fall within the broad, undefined categories of a "shareholder" (which DFA does not have), "investors," "partners," "suppliers," and "customers." Prior to DFA's acquisition of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, documents concerning Dean are voluminous. The Request also seeks all documents, calendar entries, minutes, and notes from meetings of between DFA and any of the above-listed

- 14 -

persons "concerning or relating to…the Dean-DFA Supply Agreement(s)."  However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing all documents regarding the agreements is disproportionate to the needs of the case.  Further, the Request seeks all documents, calendar entries, minutes and notes from meetings with the above-listed persons "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area."  DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk.  As such, documents, calendar entries, minutes and notes from meetings with the above-listed persons are all "concerning or relating to…the sale or purchase of raw or fluid milk" in some manner.  This Request would require DFA to produce every document from meetings with the above-listed persons from a near-five state area for a period of more than three years.  As in Request 12, the potential relevance of a document or calendar appointment between DFA and an employee union representative is null.  DFA further objects to Request No. 13 as seeking irrelevant information on the basis that the Request seeks all documents, calendar entries, minutes and notes from meetings of the above-listed persons "concerning or relating to" the so-called "Side Note," which does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas.  DFA further objects to this Request as irrelevant to the extent it seeks "calendar entries" which are not substantive documents relating to any issue in this case.  Subject to and without waiving these objections, DFA will produce documents as outlined in its response to Request No. 3.

**Request No. 14: To the extent not produced in response to Plaintiffs' First Request No. 3, all communications between or amongst DFA and Dean concerning or relating to the Asset Sale, any proposed transaction involving Dean, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.**

- 15 -

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 14 on the basis that it is duplicative of Request Nos. 3, 12, and 13.   DFA further objects to Request No. 14 on the basis that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome.  The Request seeks all communications between or amongst DFA and Dean "concerning or relating to Dean" without limitation by subject matter.  Communications with Dean will necessarily concern Dean.  This Request would require DFA to produce every communication with Dean from across a near five-state area for a period of more than three years.  The Request seeks all communications between or amongst DFA and Dean "concerning or relating to…the Dean-DFA Supply Agreement(s)."  However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing all communications regarding these agreements is disproportionate to the needs of the case.  In addition, the Request seeks all communications between or amongst DFA and Dean "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area."  DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk.  As such, every communication is "concerning or relating to…the sale or purchase of raw or fluid milk," in some manner.  Again, this Request would require DFA to produce every communication with Dean from across a near five-state area for a period of more than three years.  DFA further objects to Request No. 14 as irrelevant on the basis that the Request seeks all communications between or amongst DFA and Dean "concerning or relating to" the so-called "Side Note," which does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas.  Subject to and without waiving these objections, DFA will produce documents as outlined in its response to Request No. 3.

- 16 -

**Request No. 15**: All documents, calendar entries, minutes, and notes from meetings between or amongst DFA and Dean concerning or relating to the Asset Sale, any proposed transaction involving Dean, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

    **RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 15 on the basis that it is duplicative of Request Nos. 3 and 14.   DFA further objects to Request No. 15 on the basis that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome.  The Request seeks all documents, calendar entries, minutes and notes from meetings of between DFA and Dean "concerning or relating to Dean" without limitation by subject matter.  All DFA meetings with Dean, and their related documents, necessarily concern Dean.  As such, this Request would have DFA produce all documents, calendar entries, minutes and notes from meetings between DFA and Dean for a period of more than three years, with only a geographic limitation to the extent the document deals "exclusively" with plants outside the Relevant Area.  The Request also seeks all documents, calendar entries, minutes and notes from meetings of between DFA and Dean "concerning or relating to…the Dean-DFA Supply Agreement(s)."  However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing all documents regarding these agreements is disproportionate to the needs of the case.  In addition, the Request seeks all documents, calendar entries, minutes and notes from meetings with the above-listed persons "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area."  DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk.  As such, documents, calendar entries, minutes and notes from meetings with the above-listed persons are "concerning or relating to…the sale or purchase of raw or fluid milk" in some manner.  Again, this Request would have DFA produce all documents, calendar entries, minutes and notes from

- 17 -

meetings between DFA and Dean related to a near-five state area for a period of more than three years. DFA further objects to Request No. 15 as irrelevant on the basis that the Request seeks all documents, calendar entries, minutes and notes from meetings with Dean "concerning or relating to" the so-called "Side Note," which does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas. DFA further objects to this Request to the extent it seeks "calendar entries" which are not substantive documents relating to any issue in this case. Subject to and without waiving these objections, DFA will produce documents as outlined in its response to Request No. 3.

 **Request No. 16: All expense reports, travel reports and itineraries concerning or relating to meetings between DFA and Dean regarding the Asset Sale or any actual or proposed transaction involving Dean.**

 **RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 16 on the basis that it is duplicative of Requests Nos. 3, 14, and 15. DFA further objects to Request No. 16 on the basis that is seeks irrelevant "calendar entries," which are not substantive documents relating to any issue in this case. DFA further objects to Request No. 16 because its use of the undefined phrase "travel reports" renders the Request confusing, vague, and open to multiple interpretations. DFA interprets this phrase to mean ticketing information, the production of which DFA objects to as tickets are irrelevant, non-substantive documents relating to any issue in this case. DFA further objects to Request No. 16 on the basis that it seeks "itineraries concerning or relating to meetings…any actual or proposed transaction involving Dean," without limitation by Relevant Area or subject matter. Prior to DFA's acquisition of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, transactions – which would include transactions for the sale of raw milk – between DFA and Dean are voluminous. This Request would require DFA to produce every itinerary from every meeting

- 18 -

regarding any proposed or actual transaction with Dean for a period of more than three years and such request is not proportional to the needs of the case. By email dated August 26, 2020 (the deadline for DFA's Responses and Objections), Plaintiffs indicated that they would reconsider this Request to seek "[d]ocuments sufficient to show all meetings between DFA and Dean regarding the Asset Sale or any actual or proposed sale of assets or supply transaction between DFA and Dean." This "modification," which seeks documents sufficient to show all meetings regarding, *inter alia*, every proposed or actual transaction between DFA and Dean does little to anything to alleviate the burden, given that transactions between DFA and Dean are voluminous. The Request would still require DFA to produce every itinerary from every meeting regarding any proposed or actual transaction with Dean for a period of more than three years and such request is not proportional to the needs of the case. Subject to and without waiving these objections, DFA will produce documents as outlined in its response to Request No. 3.

**Request No. 17: In addition to the documents produced in response to Plaintiffs' First Request No. 1, all communications between DFA or its counsel with the U.S. Department of Justice or state Attorneys General regarding the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 17 on the basis that it is duplicative of Request No. 1. DFA further objects to Request No. 17 on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA further objects to Request No. 17 on the basis that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome. The Request seeks every communication "between DFA…with the U.S. Department of Justice or state Attorneys General" regarding "the Dean-DFA Supply

- 19 -

Agreement(s)." However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and communications regarding these agreements is disproportionate to the needs of the case. The Request also seeks all communications "between DFA...with the U.S. Department of Justice or state Attorneys General" regarding "the sale or purchase of raw or fluid milk in the Relevant Area." DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk. As such, every communication relates to "the sale or purchase of raw or fluid milk," in some manner. This Request would require DFA to produce every communication with the U.S. Department of Justice or state Attorneys General covering a near-five state area for a period of more than three years. DFA further objects to Request No. 17 on the basis that the Request seeks all communications "between DFA...with the U.S. Department of Justice or state Attorneys General" regarding the so-called "Side Note," which is irrelevant as it does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas. As discussed during the August 20, 2020 meet-and-confer, this Request is covered by DFA's production of documents in response to RFP No. 1 and the parties' subsequent discussions around that response. Accordingly, subject to and without waiving these objections, DFA will produce documents as outlined in its Response to Request No. 1.

**Request No. 18**: **All documents concerning or relating to DFA's decision to make a single bid for all of the Dean plants subject to the Asset Sale instead of bidding separately for all or some portion of the plants, including the Carolinas plants.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA further objects to Request No. 18 to the extent that it is duplicative of Request No. 2. DFA further objects to Request No. 18 on the basis that the Request is irrelevant. DFA's decision to make a single bid for all of the Dean plants does not concern Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk. During the parties' August 20, 2020 meet-and-

- 20 -

confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all responses – pending those negotiations.

**Request No. 19**: **All documents concerning or relating to DFA's valuation of the Carolinas plants alone and in any combination in connection with the Asset Sale. If there are any Carolinas plants for which no such analyses exist, please include all documents related to any requests for such a valuation and the decision to forgo such a valuation.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA further objects to Request No. 19 to the extent that it is duplicative of Request No. 2. DFA further objects to Request No. 19 as seeking documents that are irrelevant. DFA's decision to make a single bid for all of the Dean plants does not concern Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all responses – pending those negotiations.

**Request No. 20**: **All documents concerning or relating to Dean's ability to restructure or reorganize its assets rather than sell its assets under Chapter 11 of the bankruptcy laws.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA further objects to Request No. 20 to the extent that it is duplicative of Request No. 2. DFA objects to this request to the extent it seeks information not in DFA's care, custody, and control. DFA further objects to this request to the extent it seeks information that is available publicly or equally to available to Plaintiffs. DFA further objects to Request No.

20 on the basis that it seeks documents that are irrelevant. Dean's ability to restructure or

reorganize its assets rather than sell its assets under Chapter 11 of the bankruptcy laws does not

concern Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing

plants or that Food Lion will have to pay more for fluid milk. During the parties' August 20, 2020

meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate

custodians and search terms could address DFA's concerns with this request. Accordingly, DFA

explicitly reserves the right to modify its response to this Request – as it does all responses –

pending those negotiations.

**Request No. 21: To the extent not produced in response to Plaintiffs' First Request No. 3, all documents concerning or relating to Dean's discussions with, consideration of, solicitation of bids or offers from, or receipt of bids or offers from, potential acquirers of any of the Dean assets that ultimately were sold in connection with the bankruptcy proceedings in *In re Southern Foods Groups, LLC, et al.*, No. 19-36313 (Bankr. S.D. Tex.).**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which

DFA incorporates herein, DFA further objects to Request No. 21 to the extent that it is duplicative

of Request Nos. 2 and 3. DFA further objects to this request to the extent it seeks information that

is available publicly or equally to available to Plaintiffs. DFA further objects to Request No. 21

on the basis that the Request is overbroad, seeks information that is neither relevant nor

proportional to the litigation, and a response to this Request would be unduly burdensome.

Documents concerning or relating to Dean's discussions with, consideration of, solicitation of bids

or offers from, or receipt of bids or offers from, potential acquirers of any of the Dean assets that

ultimately were sold in connection with the bankruptcy proceedings do not concern Plaintiffs'

claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion

will have to pay more for fluid milk. During the parties' August 20, 2020 meet-and-confer,

Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and

search terms could address DFA's concerns with this request. Accordingly, DFA explicitly

- 22 -

reserves the right to modify its response to this Request – as it does all responses – pending those negotiations.

**Request No. 22**: **To the extent not produced in response to Plaintiffs' First Request No. 4, all documents concerning or relating to DFA's integration of and future plans for the Carolinas plants.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA further objects to Request No. 22 to the extent that it is duplicative of Request No. 4.  DFA further objects to Request No. 22 to the extent that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome.  Documents concerning or relating to DFA's integration of the legacy Dean plants do not concern Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Subject to those negotiations, and further subject to and without waiving these objections, DFA will search the files of persons reasonably likely to have non-duplicative documents responsive to this Request and produce relevant, non-privileged, non-duplicative documents, if any, relating to DFA's future plans for the Carolinas plants.

**Request No. 23**: **To the extent not produced in response to Plaintiffs' First Request No. 4, all documents concerning or relating to the benefits, costs, risks, and potential efficiencies associated with the Asset Sale as related to the Carolinas plants and the sale or purchase of raw and processed milk, including all documents concerning DFA's ability or inability to achieve each benefit, cost saving, economy, or other efficiency without the Asset Sale.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 23 to the extent that it is duplicative of Request No. 4.  DFA further objects to Request No. 23 to the extent that it seeks "all documents

- 23 -

concerning or relating to the benefits, costs, risks, and potential efficiencies associated with…the sale or purchase of raw and processed milk."  Even with a geographic limitation, which is notably absent from this Request, such a Request is grossly overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome.  DFA is a cooperative engaged in buying and selling raw milk and selling fluid milk.  As such, this Request would purport to require the production of every document in DFA's possession relating to benefits, costs, risks, and efficiencies of the Asset Sale.  Read together, Requests Nos. 18-23, seek each and every internal document, related to DFA's internal thought-processes, deliberations, analyses, and considerations related to its decision to made a bid in the Asset Sale.  Moreover, documents relating to the benefits, costs, risks, and potential efficiencies associated with the Asset Sale do not concern Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request.  Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all Responses – pending those negotiations.

**Request No. 24:  All financial statements, budgets, profit and loss statements, profitability reports, and other financial reports regularly prepared by or for DFA or Dean during the Relevant Time Period concerning or relating to the production, processing, or sale of raw or processed milk in, into, or from the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA further objects to Request No. 24 to the extent that the Request is overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome.  DFA further objects to Request No. 24 to the extent that the information is public.  By email dated August 26, 2020 (the deadline for DFA's

- 24 -

Responses and Objections), Plaintiffs indicated that they would reconsider this Request to seek "[f]inancial reports and statements, budgets, profit and loss statements, and profitability reports regularly prepared by or for DFA or Dean concerning the production, processing, or sale of raw or processed milk in, into, or from the Relevant Area." This "modification" does little more than remove the word "all" and, as such, a response to this Request would still be unduly burdensome. Subject to and without waiving these objections, DFA will produce its annual financial statements. DFA will also produce annual financial statements for legacy Dean, to the extent they were among the acquired assets and are not already public.

**Request No. 25: All documents created since January 1, 2014, concerning or relating to any analyses, studies, strategies, plans, assessments, or reports relating to the supply, sale, or purchase of raw or processed milk in, into, or from the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 25 to the extent that it purports to broaden the parties' agreed-upon date range. Through this Request, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish. The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to any production of documents for any time prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020. DFA further objects to Request No. 25 on the basis that the Request is grossly overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case. The Request seeks "all documents…relating to the supply, sale, or purchase of raw or processed

- 25 -

milk in, into, or from the Relevant Area." DFA is a cooperative engaged in buying and selling

raw milk and selling fluid milk. As such, this Request would purport to require the production of

every document in DFA's possession relating to the Relevant Area.

**Request No. 26**: **All documents created since January 1, 2014, concerning or relating to any analyses, studies, strategies, plans, assessments, or reports concerning market conditions, market participants, market shares, or competitors in the production, processing, or sale of raw milk or processed milk in, into, or from the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA

incorporates herein, DFA objects to Request No. 26 to the extent that it purports to broaden the

parties' agreed-upon date range. Through this Request, Plaintiffs have utterly disregarded those

negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on

this issue and, instead, applied whatever time period they wish. The Plaintiffs' newly revised time

period extends years beyond what even the U.S. Department of Justice sought in relation to its

investigation of DFA's acquisition of certain Dean assets. DFA objects to providing any

documents prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time

period seek information that is neither relevant nor proportional to the litigation, and responses

thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-

upon time period of January 1, 2017 to July 31, 2020. DFA further objects to this Request on the

basis that it seeks all document relating to "any analyses, studies, strategies, plans, assessments, or

reports concerning market conditions, market participants, market shares, or competitors in the

production, processing, or sale of raw milk or processed milk." As DFA is a cooperative engaged

in buying and selling raw milk and selling fluid milk, this Request would require DFA to produce

almost every analysis, study, strategy, plan, assessment, or report, or document concerning any of

the foregoing in DFA's possession. As such, this Request is overbroad, creates a burden in

replying, and is not proportional to the needs of the case.

- 26 -

**Request No. 27**: All documents created since January 1, 2014, concerning or relating to MDVA, its farmer members, or any other non-DFA producer of raw milk in the Relevant Area.

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 27 to the extent that it purports to broaden the parties' agreed-upon date range. Through this Request, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish. The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to producing documents from prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020. DFA further objects to this Request on the basis that it is overbroad, seeks "[a]ll documents" for a six-plus-year period "concerning or relating to any…non-DFA producer of raw milk in the Relevant Area." This Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case.

**Request No. 28**: All documents concerning or relating to (1) the MilkCo processing facility in Asheville, North Carolina; (2) the Borden processing facility in North Charleston, South Carolina; (3) the Kroger milk processing facilities in the Relevant Area; and (4) any other milk processing facility in the Relevant Area, including any studies, business plans, planning documents, analysis, reports, strategies, pro formas, and modeling concerning or relating to such processing facilities.

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 28 to the extent that it purports to broaden the parties' agreed-upon date range. Through this Request, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on

- 27 -

this issue and, instead, applied whatever time period they wish. The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to producing any documents from the period prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020. DFA further objects to Request 28 on the basis that it seeks "[a[ll documents concerning or relating to…any…milk processing facility in the Relevant Area." Any raw milk sales-related document that DFA has for the Relevant Area would concern a processing facility in the Relevant Area. Thus, this request is seeking all DFA documents regarding the Relevant Area. Such a request is grossly overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case. Further, DFA has provided sales-related data—which is necessarily sales *to* these plants, (as well as supply agreements to those plants), and documents concerning that data is unnecessarily duplicative. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all Responses – pending those negotiations.

**Request No. 29**: To the extent not produced in response to Plaintiffs' First Requests, all documents concerning or relating to the supply of processed milk in, into, or from the Relevant Area by DFA, Dean, or a competitor, to Food Lion and other customers in connection with the purchase of raw or processed milk.

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 29 to the extent that the Request is confusing, vague, and subject to multiple interpretations. DFA interprets this Request to seek

- 28 -

documents concerning or relating to the supply of processed milk in, into, or from the Relevant Area by DFA, Dean, or a competitor, to Food Lion and other customers. As understood, this Request would seek every legacy Dean document related to the Relevant Area. Such a request is grossly overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome. By email dated August 26, 2020 (the deadline for DFA's Responses and Objections), Plaintiffs indicated that they would reconsider this Request to seek, "[t]o the extent not produced in response to Plaintiffs' First Requests, documents concerning or relating to the supply of processed milk in, into, or from the Relevant Area by DFA, Dean, or a competitor, to Food Lion or other major customers in the Relevant Area." Again, this "modification" does little more than remove the word "all" and, as such, a response to this Request remains grossly overbroad, seeks information that is neither relevant nor proportional to the litigation, and a response to this Request would be unduly burdensome.

**Request No. 30**: **All documents concerning or relating to monthly, quarterly, and/or annual forecasted orders in 2020, 2021, or 2022 by Your customers of raw or processed milk in the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 30 on the basis that it seeks "all documents concerning or relating to" the operative topic. This Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case. Subject to and without waiving its objections, DFA will produce relevant, non-privileged, non-duplicative regularly produced sales forecasts, if any, related to DFA's customers of raw or processed milk in the Relevant Area. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all Responses – pending those negotiations.

- 29 -

**Request No. 31**: All documents concerning or relating to DFA's, Dean's, or any other company's transaction prices, price lists, pricing plans, price announcements, pricing policies, pricing forecasts, pricing strategies, pricing analyses, pricing decisions, or any other incentives offered in connection to raw or processed milk sales in, into, or from the Relevant Area.

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 31 on the basis that it seeks "all documents concerning or relating to" the operative topic.  This Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case, particularly in light of the fact that DFA has produced raw milk and fluid milk sales data.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they would reconsider this Request.  Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all Responses – pending any modifications to the Request.

**Request No. 32**: All documents concerning or relating to DFA and Dean's distribution routes of raw or processed milk in, into, or from the Relevant Area.

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 32 in the basis that it seeks "all documents concerning or relating to" the operative topic.  This Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case, particularly in light of the fact that DFA has produced hauling data.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request.  Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all Responses – pending those negotiations.

**Request No. 33**: All documents concerning or relating to the effects on costs, pricing, or competition associated with the geographic distance between a raw milk producer and

**milk processor or a milk processor and customer.**

      **RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 33 on the basis that it seeks "all documents concerning or relating to" the operative topic. This Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case, particularly in light of the fact that DFA has produced hauling data. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA reserves the right to modify its response to this Request – as it does all Requests – pending those negotiations.

      **Request No. 34: All documents concerning or relating to the processing capacities and percentage utilization of raw milk processing capacities of any or all milk processing plants in the Relevant Area.**

      **RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 34 on the basis that it seeks "all documents concerning or relating to" the subject of the Request. As such, this Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case. Subject to and without waiving its objections, DFA will produce relevant, non-privileged, non-duplicative documents, if any, sufficient to show processing and utilization capabilities for milk processing plants in the Relevant Area. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA reserves the right to modify its response to this Request – as it does all Requests – pending those negotiations.

      **Request No. 35: All documents concerning (a) the quality of DFA's raw milk or DFA's or Dean's processed milk in the Relevant Area and (b) the services provided by DFA**

- 31 -

**or Dean in connection therewith.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 35 on the basis that the phrase "the services provided by DFA or Dean in connection therewith" is vague and ambiguous.  DFA interprets this portion of the request to be seeking anything that DFA or Dean does to ensure that it is delivering high-quality raw or processed milk.  Such documentation would necessarily involve topics as wide-ranging as worker sanitation requirements, refrigeration, and machinery sanitization, all which are clearly beyond the relevant issues in this litigation.  As the subject of this Request is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk, DFA objects to Request No. 35 on the basis that the Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request.  Accordingly, DFA reserves the right to modify its response to this Request – as it does all Requests – pending those negotiations.

**Request No. 36: All documents concerning or relating to barriers, requirements, or costs for entry into the production or sale of raw or processed milk.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 36 on the basis that this information is publicly available and/or equally available to Plaintiffs.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA

reserves the right to modify its response to this Request – as it does all Requests – pending those

negotiations.

**Request No. 37**: To extent not produced in response to Plaintiffs' First Request No. 1, all documents produced, filed, or exchanged by DFA or any other party in *In re Southeastern Milk Antitrust Litigation*, No. 2:08-md-01000 (E.D. Tenn.), including but not limited to unredacted court filings, deposition transcripts and exhibits, and proposed trial exhibits.

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which

DFA incorporates herein, DFA objects to Request No. 37 on the basis that this Request is

duplicative of Request No. 1.  DFA further objects to this Request on the basis that the Request is

overbroad, seeks information that is neither relevant nor proportional to the litigation, and a

response to this Request would be unduly burdensome.  Through this Request, Plaintiffs seek

information concerning a case that was initiated nearly 13 years ago.  Given that this case

involved more than 2,000 docket entries and more than 150 deposition transcripts, plus exhibits, it

is unreasonable and disproportionate to the litigation to ask DFA to review its records and

determine if it still has each and every unredacted court filing, all deposition transcripts and

exhibits, and proposed trial exhibits.  Further, as much as Plaintiffs may wish to relitigate

Southeastern Milk Antitrust Litigation, that case is not this case.  Such materials are irrelevant.

**Request No. 38**: In addition to the specific documents sought in Plaintiffs' First Request No. 5, all documents concerning or relating to the DFA-Dean Supply Agreement(s) and the Side Note, including all documents from 2015 to the present relating to or discussing DFA's actual or contemplated enforcement of or exercise of rights thereunder, Dean's analysis of its rights and obligations thereunder, including its right to most favored pricing, and Dean's responses to any actual or contemplated enforcement thereof by DFA.

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which

DFA incorporates herein, DFA objects to Request No. 38 on the basis that it is duplicative of

Request No. 5.  DFA further objects to Request No. 38 to the extent that it purports to broaden the

parties' agreed-upon date range.  Through this Request, Plaintiffs have utterly disregarded those

- 33 -

negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish. The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to the production of documents from any time period prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020. DFA further objects to Request No. 38 on the basis that it seeks irrelevant information regarding the so-called "Side Note," which does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA reserves the right to modify its response to this Request – as it does all Requests – pending those negotiations.

**Request No. 39: In addition to the contractual agreements sought in Plaintiffs' First Request No. 6, all documents concerning or relating to any supply agreement for the sale of processed milk by the Carolinas plants, including all attachments, exhibits, supplements, modifications, related agreements, or addendums thereto, and including documents relating to the negotiation, execution, performance, or enforcement of rights under any such agreement.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 39 on the basis that this Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case as it seeks "all documents concerning or relating to" the subject of the Request. Subject to and without waiving its objections, DFA will produce relevant, non-privileged, non-duplicative supply agreements for the sale of fluid milk by the Carolinas plants. During the

- 34 -

parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA reserves the right to modify its response to this Request – as it does all Requests – pending those negotiations.

**Request No. 40: All documents created since January 1, 2016, concerning or relating to the decisions and/or actions of Cumberland Dairy in New Jersey and/or DFA to reduce or eliminate the volume of raw milk that the Cumberland Dairy processing facility purchased from MDVA.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 40 to the extent that it purports to broaden the parties' agreed-upon date range. Through this Request, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish. The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to the production of documents from prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020. DFA further objects to Request No. 40 to the extent it seeks to expand the parties' agreed-upon Relevant Area. Again, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and elected to seek documents from anywhere in the country they wish. DFA objects to producing any documents from any area outside the Relevant Area, as such a production is neither relevant nor proportional to the litigation, and such a response would be unduly burdensome. DFA further objects to Request No. 40 on the basis that

- 35 -

the subject of this Request is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk.

**Request No. 41:** **All documents created since January 1, 2013, concerning or relating to actions and/or decisions by processing facilities owned by or affiliated with Dean and located in Kentucky or Tennessee to reduce or eliminate the volume of raw milk purchased from MDVA.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 41 to the extent that it purports to broaden the parties' agreed-upon date range.  Through this Request, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish.  The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets.  DFA objects to the production of any documents prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome.  As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020.  DFA further objects to Request No. 41 to the extent it seeks to expand the parties' agreed-upon Relevant Area.  Again, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and elected to seek documents from anywhere in the country they wish.  DFA objects to producing any documents from any area outside the Relevant Area, as such a production is neither relevant nor proportional to the litigation, and such a response would be unduly burdensome.

**Request No. 42:** **All documents created since January 1, 2013, concerning or relating to MDVA farmer members located in Tennessee or Kentucky becoming DFA members, including documents relating to DFA's efforts to recruit such farmers, the circumstances**

**that led such farmers to become DFA members, and all communications between DFA and such MDVA farmers that became DFA members.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 42 to the extent that it purports to broaden the parties' agreed-upon date range.  Through this Request, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish.  The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets.  DFA objects to the production of any documents prior to January 1, 2017, or after July 31, 2020, as requests made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome.  As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020.  DFA further objects to Request No. 42 to the extent it seeks to expand the parties' agreed-upon Relevant Area.  Again, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, elected to seek documents from anywhere in the country they wish.  DFA objects to producing any documents from any area outside the Relevant Area, as such a production is neither relevant nor proportional to the litigation, and such a response would be unduly burdensome.  DFA further objects to this Request on the basis that it would require DFA to identify all MDVA members and locate any and all "documents…concerning or relating to, *inter alia*, "documents…concerning or relating to MDVA farmer members located in Tennessee or Kentucky" over a more-than-six-year period, without subject matter limitation.  Further, the subject is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk and is a classic fishing expedition.  As such, the Request is overbroad,

- 37 -

seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case.

**Request No. 43**: All documents created since January 1, 2014, concerning or relating to communications between DFA and any MDVA farmer members.

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 43 to the extent that it purports to broaden the parties' agreed-upon date range.  Through this Request, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish.  The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets.  DFA objects to the production of documents from the time period prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome.  As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020.  DFA further objects to this Request on the basis that it would require DFA to identify all MDVA members (which MDVA purports to be in excess of 1,000 farms) and locate any and all "documents…concerning or relating to communications between DFA" and each such farm over a more-than-six-year period, without subject matter or geographic limitation.  Further, the subject is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk and is a classic fishing expedition.

- 38 -

**Request No. 44**: All documents concerning or relating to the formation of the Appalachian Dairy Farmers Cooperative.

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 44 on the basis that this Request would require DFA to identify all Appalachian members and locate any and all "documents…concerning or relating to the formation of Appalachian Dairy Farmers Cooperative."  Further, the subject of this Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case, as the subject of the Request is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk.  During the parties' August 20, 2020 meet-and-confer, even Plaintiffs were unable to articulate the relevance of this Request to the litigation.

**Request No. 45**: All documents concerning or relating to Appalachian Dairy Farmers Cooperative, its farmer members, and/or farms that ultimately became members of Appalachian Dairy Farmers Cooperative, including any studies, business plans, planning documents, analyses, reports, or strategies.

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 45 on the basis that this Request would require DFA to identify all Appalachian Dairy Farmers Cooperative members and locate any and all "documents…concerning or relating to" the above-listed topics.  Further, the subject of this Request is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk.  As such, the Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case.  During the parties' August 20, 2020 meet-and-confer, even Plaintiffs were unable to articulate the relevance of this Request to the litigation.

**Request No. 46**: All documents created since January 1, 2014, concerning or relating to Piedmont Milk Sales, LLC, including any studies, business plans, planning documents,

**analyses, reports, or strategies.**

      **RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 46 to the extent that it purports to broaden the parties' agreed-upon date range. Through this Request, Plaintiffs have utterly disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish. The Plaintiffs' newly revised time period extends years beyond what even the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to the production of any documents from prior to January 1, 2017, or after July 31, 2020, as requests made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020. DFA further objects to Request No. 46 on the basis that this Request would require DFA to produce any and all "documents…concerning or relating to Piedmont Milk Sales," without limitation by subject matter or Relevant Area. DFA further objects to Request No. 46 on the basis that the subject of this Request is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk. During the parties' August 20, 2020 meet-and-confer, even Plaintiffs were unable to articulate the relevance of this Request to the litigation. As such, the Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case.

      **Request No. 47: All documents created since January 1, 2014, concerning or relating to Cobblestone Milk Cooperative or its farmer members, including any studies, business plans, planning documents, analyses, reports, or strategies.**

      **RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 47 to the extent that it purports to broaden

- 40 -

the parties' agreed-upon date range. Through this Request, Plaintiffs have utterly disregarded

those negotiations, as well as the time, effort, and money spent in coming to an amiable

conclusion on this issue and, instead, applied whatever time period they wish. The Plaintiffs'

newly revised time period extends years beyond what even the U.S. Department of Justice sought

in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to the

production of any documents from the time period prior to January 1, 2017, or after July 31, 2020,

and requests made outside of this time period would seek information that is neither relevant nor

proportional to the litigation, and responses thereto would be unduly burdensome. As such, DFA

limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020.

DFA further objects to Request No. 47 on the basis that the subject of this Request is entirely

unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing

plants or that Food Lion will have to pay more for fluid milk. During the parties' August 20, 2020

meet-and-confer, even Plaintiffs were unable to articulate the relevance of this Request to the

litigation. As such, the Request is overbroad, seeks irrelevant documents, creates a burden in

replying, and is not proportional to the needs of the case.

**Request No. 48: All documents created since January 1, 2014, concerning or relating to communications between DFA or Dean and Cobblestone Milk Cooperative or any of its farmer members.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which

DFA incorporates herein, DFA objects to Request No. 48 to the extent that it purports to broaden

the parties' agreed-upon date range. Through this Request, Plaintiffs have utterly disregarded

those negotiations, as well as the time, effort, and money spent in coming to an amiable

conclusion on this issue and, instead, applied whatever time period they wish. The Plaintiffs'

newly revised time period extends years beyond what even the U.S. Department of Justice sought

in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to the

production of documents from any time period prior to January 1, 2017, or after July 31, 2020, as requests made outside of this time period would seek information that is neither relevant nor proportional to the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020. DFA further objects to Request No. 48 on the basis that this Request would require DFA to identify all Cobblestone Dairy Farmers Cooperative members and locate any and all "documents…concerning or relating to communications between DFA or Dean and Cobblestone Milk Cooperative or any of its farmer members." Further, the subject of this Request is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk. During the parties' August 20, 2020 meet-and-confer, even Plaintiffs were unable to articulate the relevance of this Request to the litigation. As such, the Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case.

**Request No. 49: All documents related to or used in the preparation of any allegation, denial, or affirmative defense raised in Your pleadings in the Pending Action.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 49 to the extent it seeks attorney work product. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they would reconsider this Request. Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all Responses – pending any modifications to the Request. Subject to receiving Plaintiffs' reformulated request, and subject to and without waiving these objections, DFA will produce relevant, non-privileged, documents cited in its pleadings, if any.

**Request No. 50: All documents pertaining to, relied upon, identified, or referred to by You in responding to any Interrogatory propounded by Plaintiffs in the Pending Action.**

- 42 -

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 50 to the extent it seeks attorney work product. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they would reconsider this request. Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all Responses – pending any modifications to the Request. Subject to receiving Plaintiffs' reformulated request, and subject to and without waiving these objections, DFA will produce relevant, non-privileged, documents cited in its interrogatory response, if any.

 

**Request No. 51**: All documents and data that underlie, support, or refute Your factual contentions in Defendant's Motion to Dismiss, ECF No. 31 ("Motion to Dismiss") and Reply in Further Support, ECF No. 43 ("Reply"), including without limitation:

    a.      That "DFA's purchase . . . allows continued access to processing facilities for DFA's farmer members' and other farmers' milk by the continued operation of the plants and the pro-competitive efficiencies that come with vertical integration." Motion to Dismiss, at 15.

    b.      That "Dean made a good faith effort to seek other buyers." *Id.* at 19.

    c.      That "Buyers consider areas outside the Carolinas to be an alternative source for Processed Milk." *Id.* at 22.

    d.      That "[I]t is common for raw and Processed Milk to be moved from Virginia to South Carolina, or from North Carolina or South Carolina to Georgia," *id.* at 21, and "raw milk is commonly shipped from Virginia, Maryland, Pennsylvania, and other states into the Carolinas for processing." *Id.* at 22.

    f.      That "DFA and MDVA are not the only suppliers of raw milk in the Carolinas." Reply at 7, n.3.

    g.      The "no feasible reorganization plan emerged" in bankruptcy. *Id.* at 10.

    h.      That the other bids in the Dean bankruptcy "would not keep Dean largely operational." *Id.*

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 51 on the basis it seeks attorney work product. Subject to and without waiving these objections, DFA will produce relevant, non-privileged, documents cited in its Motion to Dismiss, if any. During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this request. Accordingly, DFA

- 43 -

reserves the right to modify its response to this Request – as it does all Requests – pending those negotiations.

**Request No. 52**: **To the extent not produced in response to Plaintiffs' First Request Nos. 6 or 8, data or documents sufficient to show Your costs for the production, marketing, and other services You provide related to raw milk and for the processing, packaging, and other services You and Dean provide related to processed milk in the Relevant Area.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 52 on the basis that it is duplicative of Request Nos. 6 and 8.  DFA further objects to Request No. 52 on the basis that the subject of this Request is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk.  As such, the Request is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns with this Request.  Accordingly, DFA reserves the right to modify its response to this Request – as it does all Requests – pending those negotiations.

**Request No. 53**: **To the extent not produced in response to Plaintiffs' First Request Nos. 6 or 8, data or documents sufficient to show hauling, shipping, and other transportation costs of raw or processed milk in, into, or from the Relevant Area, as well as all documents concerning or related to such transportation of raw or processed milk, associated costs, and the effects of transportation costs on raw or processed milk costs, pricing, or competition.**

**RESPONSE**:  In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 53 on the basis that it is duplicative of Request Nos. 6 and 8.    DFA has produced data as outlined in response to Request No. 8.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they believed that negotiations regarding appropriate custodians and search terms could address DFA's concerns

- 44 -

with this Request.  Accordingly, DFA reserves the right to modify its response to this Request – as it does all Requests – pending those negotiations.

**Request No. 54: To the extent not produced in response to Plaintiffs' First Request Nos. 6 or 8, data or documents concerning payments made to DFA farmer members concerning the sale of raw milk in, into, or from the Relevant Area, including documents concerning costs paid by DFA farmer members for transportation, marketing, and other services provided by DFA relating to the sale of raw milk.**

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 52 on the basis that it is duplicative of Request Nos. 6 and 8.  DFA has produced data as outlined in response to Request No. 8.  During the parties' August 20, 2020 meet-and-confer, Plaintiffs indicated that they would reconsider this Request.  Accordingly, DFA explicitly reserves the right to modify its response to this Request – as it does all Responses – pending any modifications to the Request.

DATED:  August 26, 2020              Respectfully submitted,

                                      */s/ Amber L. McDonald*
                                      Amber L. McDonald

                                      **WOMBLE BOND DICKINSON (US) LLP**

                                      James P. Cooney III
                                      N.C. State Bar No. 12140
                                      Sarah Motley Stone
                                      N.C. State Bar No. 34117
                                      WOMBLE BOND DICKINSON (US) LLP
                                      Charlotte, North Carolina 28202
                                      Phone: 704-331-4900
                                      Fax: 704-331-4955
                                      Jim.Cooney@wbd-us.com
                                      Sarah.Stone@wbd-us.com

Brent F. Powell
N.C. State Bar No. 41938
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: 336-721-3600
Fax: 336-721-3660
Brent.Powell@wbd-us.com

**BAKER & MILLER PLLC**

W. Todd Miller*
Amber L. McDonald*
2401 Pennsylvania Avenue N.W.
Suite 300
Washington, D.C. 20037
Phone: 202-663-7820
Fax: 202-663-7849
TMiller@bakerandmiller.com
AMcDonald@bakerandmiller.com

**LATHAM & WATKINS LLP**
Michael G. Egge*
555 Eleventh Street, NW
Washington, D.C. 20004-1304
Phone: 202-637-2285
Michael.Egge@lw.com

*Attorneys for Dairy Farmers of America, Inc.*

*By Special Appearance*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2020, I, Amber L. McDonald, have served the foregoing **DEFENDANT DAIRY FARMERS OF AMERICA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' COMBINED SECOND SET OF REQUESTS FOR PRODUCTION** upon the Plaintiffs in this lawsuit by email at the e-mail addresses below:

A. Todd Brown, Sr.
Ryan G. Rich
Hunton Andrews Kurth LLP
101 South Tryon St. Suite 3500
Charlotte, North Carolina 28280
tbrown@huntonak.com
rrich@huntonak.com

Ryan P. Phair
John S. Martin
Kevin Hahm
Carter C. Simpson
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
rphair@huntonak.com
martinj@huntonak.com
khahm@huntonak.com
csimpson@huntonak.com

Jason D. Evans
Troutman Pepper Hamilton Sanders LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
jason.evans@troutman.com

James A. Lamberth
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
james.lamberth@troutman.com

DATED: August 26, 2020               */s/ Amber L. McDonald*_____