# EXHIBIT C

**Letter from C. Simpson to B. Powell
Re: Plaintiffs' Second Set of Requests for Production
September 10, 2020**



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

CARTER C. SIMPSON
DIRECT DIAL: 202 • 955 • 1850
EMAIL: csimpson@HuntonAK.com

September 10, 2020

**Via E-mail to brent.powell@wbd-us.com**

Brent F. Powell
Womble Bond Dickinson
One West Fourth Street
Winston-Salem, NC 27101
*Counsel for Dairy Farmers of America, Inc.*

Re:   *Food Lion, LLC, et al. v. Dairy Farmers of America, Inc.*, No. 1:20-cv-442 (M.D.N.C.), Plaintiffs' Second Set of Requests for Production

Dear Brent:

I write to follow up on our phone conversation of September 4, 2020, in which we discussed DFA's objections and responses to Plaintiffs' Second Set of Requests for Production. My letter of September 9 addressed those Requests that are the subject of DFA's pending motion for a protective order. During our September 4 conversation, we discussed several of the remaining Requests, DFA's objections, and Plaintiffs' responses to those objections. You asked that we provide a specific written proposal as to any of the Requests that Plaintiffs are willing to narrow in response to DFA's objections. Below are our positions.

    I.    <u>**Requests Plaintiffs are willing to narrow or clarify**</u>

**Request 9** (Board documents). This Request is by definition not burdensome because it calls for a discrete and narrow set of documents that are traditionally maintained in an easily retrievable storage location. Nevertheless, to address your concern that responsive documents may be irrelevant to the case because they concern to day-to-day business dealings with Dean, or that have nothing to do with the Relevant Area, we will clarify that we only want documents concerning DFA's actual or contemplated (1) supply agreements that include the Relevant Area, or (2) joint ventures, financial ventures, mergers, or acquisitions with Dean, in the years and months leading up to the Asset Sale; as well as (3) strategic discussions concerning the Dean assets in the wake of the Asset Sale. This should include assessments of Dean's assets, financial viability, and market power or shares; strategic discussions concerning DFA's approach to the Dean bankruptcy; and the impact of any of the above

ATLANTA  AUSTIN  BANGKOK  BEIJING  BOSTON  BRUSSELS  CHARLOTTE  DALLAS  DUBAI  HOUSTON  LONDON
LOS ANGELES  MIAMI  NEW YORK  NORFOLK  RICHMOND  SAN FRANCISCO  THE WOODLANDS  TYSONS  WASHINGTON, DC
www.HuntonAK.com

actual or contemplated transactions on DFA or raw or fluid milk markets that include the Relevant Area. A modified Request is set forth below.

- **Modified Request 9**: "All documents presented to or prepared by the DFA Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to any actual or potential business venture or non-ordinary-course transaction with Dean, the Side Note, or DFA's plans, analyses, or strategies concerning the sale or purchase of raw or fluid milk in the Relevant Area."

**Requests 10 and 11** (Board summaries and communications). On our call you stated that Requests 9 and 10 did not call for a search of custodians. For clarity, on Request No. 9-10, our position is that DFA should search the files where documents "presented to or prepared by" the DFA Board and relevant committees, or where their meeting minutes and other documents, are stored and produce responsive documents. In addition, because one of your custodians is a Board Member, we would expect his (or any other agreed-upon custodians') responsive documents to be produced to extent they hit on any other agreed search terms. For Request No. 11, we believe a targeted search and extraction of Board member communications is required.

We agree to narrow Request Nos. 10-11 in a similar manner that we did Request No. 9:

- **Modified Request 10**: "All documents, calendar entries, minutes, and notes from meetings of the DFA Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to any actual or potential business venture or non-ordinary-course transaction with Dean, the Side Note, or DFA's plans, analyses, or strategies concerning the sale or purchase of raw or fluid milk in the Relevant Area."

- **Modified Request 11**: "All communications between or amongst members of the DFA Board of Directors or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to any actual or potential business venture or non-ordinary-course transaction with Dean, the Side Note, or DFA's plans, analyses, or strategies concerning the sale or purchase of raw or fluid milk in the Relevant Area"

**Requests 12 and 13** (communications with financial advisers and related documents). You asked for clarity as to what aspect of these Request is different than what is sought in Request No. 3. We clarified that Request No. 3 is aimed only at third-party communications concerning antitrust and competition issues, whereas Request Nos. 12-13 seek third-party communications concerning other aspects of the DFA-Dean relationship and/or actual or potential DFA ventures with Dean. We provided a non-exclusive list of examples, such as

Brent F. Powell
September 10, 2020
Page 3

DFA's financial assessments of the Dean assets and DFA's statements as to its business plans or forecasts if it acquired the Dean assets. In response to your concern as to how to "cap" the list of third parties, we agreed to the approach of crafting search terms regarding the narrow list of financial advisors, lenders, and rating agencies with whom DFA communicated leading up to and during the Asset Sale. We hope to collaborate with you on that list in connection with our search term negotiations. Of course, if communications with the other enumerated third parties (members, suppliers, customers, investors, etc.) emerge as responsive to other agreed search terms, we would expect them to be produced as responsive to this Request.

We agree to narrow Request Nos. 12-13 in a similar manner that we did Request No. 9-11:

- **Modified Request 12**: "To the extent not produced in response to Plaintiffs' First Request No. 3, all communications between or amongst DFA and its financial advisers (e.g., Houlihan Lokey), lenders (e.g., Wells Fargo), rating agencies (e.g., S&P), investors, partners, suppliers, customers, or members, concerning or relating to any actual or potential business venture or non-ordinary-course transaction with Dean, the Side Note, or DFA's plans, analyses, or strategies concerning the sale or purchase of raw or fluid milk in the Relevant Area, excluding communications that relate exclusively to raw or fluid milk supply outside the Relevant Area."

- **Modified Request 13**: "All documents, calendar entries, minutes, and notes from meetings between DFA and its financial advisers (e.g., Houlihan Lokey), lenders (e.g., Wells Fargo), rating agencies (e.g., S&P), investors, partners, suppliers, customers, or members, concerning or relating to any actual or potential business venture or non-ordinary-course transaction with Dean, the Side Note, or DFA's plans, analyses, or strategies concerning the sale or purchase of raw or fluid milk in the Relevant Area, excluding documents that relate exclusively to raw or fluid milk supply outside the Relevant Area."

**Requests 14 and 15** (DFA/Dean internal and cross-communications and documents from DFA/Dean meetings). We agree to narrow these Requests by limiting the clauses you say are overbroad – referring to "any proposed transaction involving Dean" and the "sale or purchase of raw or fluid milk in the relevant area" – to the same extent we did in Request Nos. 9-13.

- **Modified Request 14**: "To the extent not produced in response to Plaintiffs' First Request No. 3, all communications between or amongst DFA and Dean concerning or relating to any actual or potential business venture or non-ordinary-course transaction involving Dean, the Side Note, or DFA's or Dean's plans, analyses, or strategies concerning the sale or purchase of raw or fluid milk in the Relevant Area, excluding communications that relate exclusively to raw or fluid milk supply outside the Relevant Area."

- **Modified Request 15**: "All documents, calendar entries, minutes, and notes from meetings between or amongst DFA and Dean concerning or relating to any actual or potential business venture or non-ordinary-course transaction involving Dean, the Side Note, or DFA's or Dean's plans, analyses, or strategies concerning the sale or purchase of raw or fluid milk in the Relevant Area, excluding documents that relate exclusively to raw or fluid milk supply outside the Relevant Area."

**Request 16** (expense/travel reports and itineraries). We explained that this Request goes to the timing of the Dean/DFA negotiations over the past few years, particularly as they relate to Dean's bankruptcy filing and sale of assets. We can agree to modify the Request as follows:

- **Modified Request 16**: "Documents sufficient to show all meetings between DFA and Dean regarding the Asset Sale or any actual or proposed business venture or non-ordinary-course transaction involving Dean."

**Request 32** (distribution routes). We agree to limit this Request as follows:

- **Modified Request 32**: "Documents sufficient to show DFA's and Dean's distribution routes of raw or fluid milk in, into, or from the Relevant Area."

**Request 54** (documents concerning farmer-member costs). Because DFA has agreed to produce its farmer payroll data, we agree to limit this Request as follows:

- **Modified Request 54**: "To the extent not produced in response to Plaintiffs' First Request Nos. 6 or 8, documents concerning costs paid by DFA farmer members for transportation, marketing, and other services provided by DFA relating to the sale of raw milk in, into, or from the Relevant Area."

II. **Requests Plaintiffs are not willing to narrow at this time**

**Request 17** (DOJ/state AG communications). After a lengthy list of objections, you state that you will produce documents as outlined in your response to Request One. This Request is broader than Request One to the extent you have deemed "communications" with DOJ by DFA or on DFA's behalf not to be documents "produced" to DOJ. This Request is appropriate and we stand by it as written.

We also confirmed that this Request is intended to encompass presentations provided to DOJ or state AGs, and asked specifically that you search for a Bates White presentation given to DOJ on or about March 3, 2020. Upon review of Dean's recent production, we see that the Bates White presentation was a "presentation that DFA provided to the DOJ on March 3, 2020 for a list of Class I fluid milk plants in the areas that have been identified as being of

interest to the DOJ." *See* DEAN0000151. We also ask for confirmation that you have produced all documents and communications responding to any DOJ inquiries of DFA relating to the Carolinas plants or milk sold in, into, or from the Relevant Area, including those reflected in DEAN0000081, DEAN0000083, and DEAN0000543.

**Request 24** (financial statements). We have agreed to limit the request as stated in our August 26 e-mail and we see no basis to further limit it only to annual statements. "Regularly prepared" financial statements are easy to find and relevant and should be produced.

**Request 35** (DFA quality and services). The only specific issue identified in your objections is that the request as drafted "would necessarily involve topics as wide-ranging as worker sanitation requirements, refrigeration, and machinery sanitation." We agree that documents solely related to these topics need not be produced. We do not offer any further narrowing of the request at this time and believe that proper selection of custodians and search terms can address any remaining concerns.

**Request 37** (*Southeastern Milk* documents). You have made clear that you will not produce these documents and the parties are at impasse on this issue.

**Request 38** (side note, DFA's enforcement thereof). You object as to the time period, and the parties are at impasse on that issue. You also claim that the Side Note is "irrelevant." To the extent that is a basis for your refusal to produce responsive documents, subject as always to negotiation over custodians and search terms, the parties are likewise at impasse. We understand that you will be producing responsive documents dated from January 1, 2017 to July 31, 2020, but please clarify your position as to the Side Note.

**Request 39** (documents concerning or relating to supply agreements). Your objections purport to limit what you will produce to "supply agreements" themselves. This is not acceptable as the request specifically calls for documents "concerning or relating to" those supply agreements. We are not willing to narrow this request.

### III. Requests where the parties agree to table any potential dispute pending discussion of custodians and search terms

In response to the following requests, you indicated your agreement with our view that the burden of responding to them may be alleviated by our custodian negotiations and selection of relevant search terms: 18, 19, 20, 21, 22, 23, 28, 30, 33, 34, 36, 51, 52, and 53. Accordingly, we are not proposing at this time to narrow those requests.

Please let us know if you are prepared to engage in search term discussions regarding these Requests.

Brent F. Powell
September 10, 2020
Page 6

Sincerely,

*/s/ Carter C. Simpson*

Carter C. Simpson

cc: Counsel of record for the parties