# EXHIBIT G

**Defendant Dairy Farmers of America, Inc.'s Responses and
Objections to Plaintiffs' Combined Third Set of Requests for Production**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Food Lion, LLC, and Maryland and Virginia Milk Producers Cooperative Association, Inc., <br><br> *Plaintiffs*, <br><br> v. <br><br> Dairy Farmers of America, Inc., <br><br> *Defendant*. | Case No. 1:20-cv-00442 |

### DEFENDANT DAIRY FARMERS OF AMERICA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' COMBINED THIRD SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Dairy Farmers of America, Inc. ("DFA"), through its counsel, hereby objects and responds to Plaintiffs' Combined Third Set of Requests for Production. The following Responses and Objections are made expressly without in any way waiving or intending to waive, but, to the contrary, preserving and intending to preserve: (a) All questions as to the competence, relevance, materiality, privilege, admissibility as evidence, or use for any purpose of the requested information, in any aspect of this or any other action; (b) The right to object on any ground to the use of any such information, in any aspect of this or any other action; (c) The right to object, at any time, to a demand for any further response to this or any other Request; and (d) The right at any time to revise, supplement, correct, amend, or clarify these Objections and Responses and in particular to do so if DFA's understanding of those legacy Dean documents and data acquired in the Asset Sale changes or Plaintiffs have clarified any ambiguous terms or Requests.

# DEFINITIONS

1. DFA objects to Plaintiffs' definition of "Dairy Farmers of America, Inc.," "DFA," "Defendant," "You," and "Your" on the grounds that it is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the needs of the litigation, and responses to such requests would be unduly burdensome. DFA further objects to Plaintiffs' definition on the basis that such a definition would require DFA to search for and produce documents not in its possession, custody, or control. DFA construes this definition to mean DFA's corporate headquarters in Kansas City, KS, and its regional office in Knoxville, TN.

2. DFA objects to Plaintiffs' definition of "Dean" on the grounds that it is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the needs of the litigation, and responses to such requests would be unduly burdensome. DFA further objects to Plaintiffs' definition on the basis that such a definition would require DFA to search for and produce documents not in its possession, custody, or control. Where appropriate, DFA construes this definition to mean those assets of Dean which it has acquired.

3. DFA objects to Plaintiffs' definition of "Communication" and "Communicated" on the basis that such definition is overbroad, requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the needs of the litigation, and responses to such requests would be unduly burdensome. DFA further objects to the definition of "Communication" and "Communicated" to the extent such definition seeks to impose burdens on DFA to create documents or other discoverable information not created in the ordinary course of business. DFA further objects to Plaintiffs' definition to the extent such definition seeks information outside the bounds of the Federal Rules of Civil Procedure.

4. DFA objects to Plaintiffs' definitions of "including" to the extent such definition is to mean "including, but not limited to" or "including without limitation" as these phrases render Plaintiffs' Requests using the defined term vague, ambiguous, and subject to multiple interpretations. DFA further objects to Plaintiffs' definition on the basis that Requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the needs of the litigation, and responses thereto would be unduly burdensome. DFA further objects to Plaintiffs' definition to the extent such definition seeks information outside DFA's possession, custody, or control. DFA shall construe the term within the ordinary understanding of the word.

5. DFA objects to Plaintiffs' definition of "concerning," "relating to," "referring to," "regarding," or "with respect to" to the extent such definition is to mean "including without limitation" as this phrase renders Requests using the defined term vague, ambiguous, and subject to multiple interpretations. DFA further objects to Plaintiffs' definition on the basis that requests made pursuant to such a definition would seek information that is neither relevant nor proportional to the needs of the litigation, and responses thereto would be unduly burdensome. DFA further objects to Plaintiffs' definition to the extent such definition seeks information outside DFA's possession, custody, care or control. DFA shall construe the terms within the ordinary understanding of the phrases.

## INSTRUCTIONS

1. DFA objects to Instruction No. 1 on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA was not a party to any discussions between Plaintiffs and counsel for Dean Foods and thus cannot speak to any representations by Dean's counsel; however, the asset purchase agreement entered into by DFA and Dean governs the acquisition of documents. DFA did not acquire all of Dean's documents

- 3 -

Case 1:20-cv-00442-CCE-JLW   Document 86-7   Filed 11/05/20   Page 4 of 19

and, more specifically, did not acquire all the Dean documents requested by Plaintiffs. DFA objects to producing documents it does not own.

2. DFA objects to Instruction No. 3 to the extent it seeks to expand the relevant period. The parties have previously negotiated a relevant time period of January 1, 2017 to July 31, 2020. However, Plaintiffs have disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish, in many cases seeking documents as far back as 2013. The Plaintiffs' newly revised time period extends years beyond what the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets. Further, Plaintiffs' request that documents be produced "to the present," which presents logistical and other burdens that are far outweighed by any benefit that Plaintiffs might contend they derive from such an instruction. DFA objects to any relevant time period that purports to include documents prior to January 1, 2017, or after July 31, 2020, as requests for documents made outside of this time period would seek information that is neither relevant nor proportional to the needs of the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020.

3. DFA objects to Instruction No. 4 on the basis that it purports to require DFA to "organize[] and label[]" its responses to "correspond to the associated Request" as such a requirement would impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 34(b) also permits for the production of documents "as they are kept in the usual course of business," which DFA shall do.

4. DFA objects to Instruction No. 5 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure.

5. DFA objects to Instruction No. 7 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and seeks to include interrogatories by way of instruction by purporting to require DFA to provide information about the sources of documents not in its possession, custody, or control.

6. DFA objects to Instruction No. 8 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure.

7. DFA objects to Instruction No. 9 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure.

8. DFA objects to Instruction No. 11 on the basis that it seeks to impose obligations on DFA outside the bounds of the Federal Rules of Civil Procedure and/or any ESI agreement entered into by the parties.

## REQUESTS FOR PRODUCTION

**Request No. 55: All documents responsive to specifications 6, 7, 9 (the second specification listed as No 9), 10, 11, 12, 16, 23 (to the extent not already produced in response to request for production 35 to DFA), 24, 25 and 28 of the Dean Subpoena.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA generally objects to Request No. 55 and all related Specifications on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. This Request incorporates Specifications from the Dean Subpoena, which was originally directed to Dean. DFA did not acquire Dean Foods as a corporate entity, but rather acquired the majority of Dean's assets. As such, DFA's response is necessarily limited to those assets of Dean which it acquired. As noted above, DFA reserves the right at any time to revise, supplement, correct, amend, or clarify these Objections and Responses if DFA's understanding of those legacy Dean documents and data acquired in the Asset Sale changes.

**Dean Subpoena, Specification 6**: All documents concerning or relating to Dean's decision to file for bankruptcy, including any internal analyses and documents memorializing any related discussions.

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 6, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA further objects to Request No. 55, Specification 6, on the basis that it seeks "all" documents as such a request is overbroad in that it seeks duplicative documents and documents unrelated to processed fluid milk or raw milk. DFA further objects to Request No. 55, Specification 6, on basis that does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas and is neither relevant nor proportional to the needs of the litigation.

**Dean Subpoena, Specification 7**: All communications between Dean employees or between Dean on the one hand and any third party on the other, including DFA, regarding potential antitrust or competition issues associated with DFA's purchase of Dean assets, excluding any documents that relate exclusively to milk processing plants outside of the Relevant Area.

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 7, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA further objects to Request No. 55, Specification 7, on the basis that it is duplicative of Request No. 3. DFA objects to Specification 7 on the basis that it seeks "all" communications as such a request is overbroad in that it seeks duplicative communications and communications unrelated to processed fluid milk or raw milk. Further, DFA objects to this Specification on the basis that it seeks compromise offers and settlement discussions protected by Federal Rule of Evidence 408. DFA interprets this Specification to exclude such materials. DFA further objects to this Specification as the phrase "competition issues" is ambiguous and subject to multiple

interpretations. DFA construes the Specification to seek documents relating to "antitrust and competition law issues." DFA further objects to Specification 3 to the extent it seeks information that is protected by attorney-client privilege, work product doctrine, the joint defense privilege, or any other applicable protection.

**Dean Subpoena, Specification 9-2:** **All documents presented to or prepared by the Dean Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to DFA, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 9-2, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA further objects to Request No. 55, Specification 9-2, on the basis that it is duplicative of Request No. 9. DFA objects to Specification 9-2 on the basis that it seeks "all" documents as such a request is overbroad in that it seeks duplicative documents and documents unrelated to processed fluid milk or raw milk. DFA further objects to Specification No. 9-2 as overbroad and not proportional to the needs of the case on the basis that the Specification is overbroad, seeks information that is neither relevant nor proportional to the needs of the litigation, and a response to this Specification would be unduly burdensome. Specification 9-2 seeks every document presented to or prepared by the Dean Board, or any committee thereof, "concerning or relating to DFA" without limitation by subject matter or Relevant Area. Prior to DFA's acquisition of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, documents concerning DFA are voluminous. Further, the Specification 9-2 seeks every document presented to or prepared by the Dean Board, or any committee thereof, "concerning or relating to…the Dean-DFA Supply Agreement(s)." However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and

producing documents regarding these agreements is disproportionate to the needs of the case. In addition, the Specification 9-2 seeks every document presented to or prepared by the Dean Board, or any committee thereof, "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area." Prior to its acquisition, Dean was a business engaged in buying raw milk and selling fluid milk. As such, every document presented to or prepared by its Board of Directors is "concerning or relating to…the sale or purchase of raw or fluid milk," in some manner. This Specification would potentially require Dean/DFA to produce every Board-related document concerning a near-five state area for a period of more than three years.

**Dean Subpoena, Specification 10:** **All documents, calendar entries, minutes and notes from meetings of the Dean Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to DFA, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 10, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA further objects to Request No. 55, Specification 10, on the basis that it is duplicative of Request Nos. 9 and 10. DFA objects to Specification 10 on the basis that it seeks "all" documents as such a request is overbroad in that it seeks duplicative documents and documents unrelated to processed fluid milk or raw milk. DFA further objects to Specification 10 on the basis that the Specification is overbroad, seeks information that is neither relevant nor proportional to the needs of the litigation and a response to this Specification would be unduly burdensome. The Specification seeks all documents, calendar entries, minutes and notes from meetings of the Dean Board, or any committee thereof, "concerning or relating to DFA" without limitation by subject matter or Relevant Area. Prior to DFA's acquisition of certain Dean assets,

Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, documents concerning DFA are voluminous. Further, the Specification seeks every document presented to or prepared by the Dean Board, or any committee thereof, "concerning or relating to…the Dean-DFA Supply Agreement(s)." DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing every Board-related document regarding the agreements is disproportionate to the needs of the case. In addition, the Specification seeks all documents, calendar entries, minutes and notes from meetings of the Dean Board, or any committee thereof, "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area." Prior to its acquisition, Dean was a business engaged in buying raw milk and selling fluid milk. As such, every document presented to or prepared by its Board of Directors is "concerning or relating to…the sale or purchase of raw or fluid milk," in some manner. This Specification would require Dean/DFA to produce every Board-related document from a near-five state area for a period of more than three years. DFA also objects to Specification 10 as irrelevant on the basis that the Specification seeks all documents, calendar entries, minutes and notes from meetings of the Dean Board, or any committee thereof, "concerning or relating to" the so-called "Side Note." DFA further objects to this Specification to the extent it seeks irrelevant information that is not proportional to the needs of the litigation. "Calendar entries" are not substantive documents relating to any issue in this case.

**Dean Subpoena, Specification 11.** All communications between or amongst members of the Dean Board of Directors, or any committee thereof, including the Executive, Finance and Budget Committees, concerning or relating to DFA, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 11, on the basis

- 9 -

that it purports to require DFA to search for and produce documents not in its possession, custody, or control.  DFA further objects to Request No. 55, Specification 11, on the basis that it is duplicative of Request Nos. 9, 10, and 11.  DFA objects to Specification 11 on the basis that it seeks "all" communications as such a request is overbroad in that it seeks duplicative communications and communications unrelated to processed fluid milk or raw milk.  DFA further objects to Specification 11 on the basis that the Specification is overbroad, seeks information that is neither relevant nor proportional to the needs of the litigation, and a response to this Specification would be unduly burdensome. The Specification seeks all communications, between or amongst members of the Dean Board, or any committee thereof, "concerning or relating to DFA" without limitation by subject matter. Prior to DFA's acquisition of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, communications concerning DFA are voluminous. In addition, the Specification seeks all communications, between or amongst members of the Dean Board, or any committee thereof, "concerning or relating to…the Dean-DFA Supply Agreement(s)."  However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing every Board communication regarding the agreements is disproportionate to the needs of the case.  In addition, DFA objects to Specification 11 on the basis that the Specification seeks all communications, between or amongst members of the Dean Board, or any committee thereof, "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area."  Prior to its acquisition, Dean was a company engaged in buying raw milk and selling fluid milk. As such, every communication by its Board of Directors is "concerning or relating to…the sale or purchase of raw or fluid milk," in some manner. This Specification would require DFA to produce every Board-related communication relating to a near-five state area for a period of more than three years.

**Dean Subpoena, Specification 12.** All communications between or amongst Dean and its financial advisors (e.g. Alvarez & Marsal), investment bankers (e.g. Evercore), rating agencies, shareholders, investors, partners, suppliers, customers, and unions concerning or relating to DFA, the Asset Sale, the Side Note, the DFA-Dean Supply Agreement(s), or the sale or purchase of raw or fluid milk in the Relevant Area, excluding any communications that relate exclusively to milk processing plants outside of the Relevant Area.

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 12, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA objects to Specification 12 on the basis that it seeks "all" communications as such a request is overbroad in that it seeks duplicative communications and communications unrelated to processed fluid milk or raw milk. DFA further objects to Specification 12 on the basis that the Specification is overbroad, seeks information that is neither relevant nor proportional to the needs of the litigation, and a response to this Specification would be unduly burdensome. This Specification seeks communications between Dean and an untold number of individuals or organizations who may fall within the broad, undefined categories of a "shareholders," "investors," "partners," "suppliers," and "customers." The Specification also seeks all communications, between or amongst the above-listed persons "concerning or relating to DFA" without limitation by subject matter. Prior to DFA's acquisition of certain Dean assets, Dean had traditionally been DFA's largest customer, and DFA had been Dean's largest supplier. As such, documents concerning DFA are voluminous. The Specification also seeks all communications, between or amongst the above-listed persons "concerning or relating to…the Dean-DFA Supply Agreement(s)." However, DFA has already produced its supply agreements with Dean that concern the Relevant Area, and producing every communication with the above-listed persons relating to those agreements is disproportionate to the needs of the case. In addition, the Specification seeks all communications, between or amongst the above-listed

- 11 -

persons "concerning or relating to… the sale or purchase of raw or fluid milk in the Relevant Area." Prior to its acquisition, Dean was a business engaged in buying raw milk and selling fluid milk. As such, every communication is "concerning or relating to…the sale or purchase of raw or fluid milk," in some manner. Producing every communication between or amongst the above-listed persons from a near-five state area for a period of more than three years is not proportional to the needs of the case. As one example, DFA is uncertain of the relevance to this litigation of a communication between it and, for example, a union representative regarding employment terms.

**Dean Subpoena, Specification 16. All documents concerning or relating to Dean's valuation of the Carolinas plants alone and in any combination in connection with the Asset Sale. If there are any Carolinas plants for which no such analyses exist, please include all documents related to any requests for such a valuation and the decision to forgo such a valuation.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 16, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA objects to Specification 16 on the basis that it seeks "all" documents as such a request is overbroad in that it seeks duplicative documents and documents unrelated to processed fluid milk or raw milk. DFA further objects to Specification 16 on basis that does not concern Plaintiffs' foreclosure claim relating to DFA's acquisition of Dean assets in the Carolinas and is neither relevant nor proportional to the needs of the litigation.

**Dean Subpoena, Specification 23. All documents concerning (a) the quality of DFA's raw milk or DFA's or Dean's processed milk in the Relevant Area, (b) the quality of any of DFA's competitors' raw milk in the Relevant Area, and (c) the services provided by DFA or Dean in connection therewith.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 23, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody,

or control. DFA further objects to Request No. 55, Specification 23, on the basis that it is duplicative of Request No. 35. DFA objects to Specification 23 on the basis that it seeks "all" documents as such a request is overbroad in that it seeks duplicative documents and documents unrelated to processed fluid milk or raw milk. DFA objects to Specification 23 on the basis that the phrase "the services provided by DFA or Dean in connection therewith" is vague and ambiguous. DFA interprets this portion of the Specification to be seeking anything that DFA or Dean does to ensure that it is delivering high-quality raw or processed milk. Such documentation would necessarily involve topics as wide-ranging as worker sanitation requirements, refrigeration, and machinery sanitization, all of which are clearly beyond the relevant issues in this litigation. As the subject of this Specification is entirely unrelated to Plaintiffs' claims that MDVA will be foreclosed from selling raw milk to processing plants or that Food Lion will have to pay more for fluid milk, DFA objects to Specification 23 on the basis that the Specification is overbroad, seeks irrelevant documents, creates a burden in replying, and is not proportional to the needs of the case.

**Dean Subpoena, Specification 24. All documents created since January 1, 2013, concerning or relating to actions and/or decisions by processing facilities owned by or affiliated with Dean to purchase or to reduce purchases of raw milk from MDVA, including any communications between Dean and MDVA.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 24, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA further objects to Request No. 55, Specification 24, on the basis that it seeks "all" documents as such a request is overbroad in that it seeks duplicative documents and documents unrelated to processed fluid milk or raw milk, without limitation by geographic area. DFA limits its response to the Carolinas plants. DFA further objects to Specification 24 to the extent that it purports to broaden the parties' agreed-upon date range. Through this Specification, Plaintiffs have disregarded those negotiations, as well as the time, effort, and money spent in

- 13 -

coming to an amiable conclusion on this issue and, instead, applied whatever time period they wish. The Plaintiffs' newly revised time period extends years beyond what the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets. DFA objects to the production of documents from any time period prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period seek information that is neither relevant nor proportional to the needs of the litigation, and responses thereto would be unduly burdensome. As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020. Subject to and without waiving its objections, DFA will search the files of DFA (formerly Dean) custodians who are reasonably likely to have non-duplicative documents responsive to this Specification and produce relevant, non-privileged, nonduplicative documents relating to actions and/or decisions by DFA-owned, legacy Dean Carolinas processing facilities to purchase or to reduce purchases of raw milk from MDVA.

**Dean Subpoena, Specification 25.** **All documents created since January 1, 2013, concerning or relating to raw milk pricing, quality, cost, and other comparisons between DFA and any of DFA's raw milk production competitors in the Relevant Area, including any documents concerning or relating to actions and/or decisions by processing facilities owned by or affiliated with Dean to choose one raw milk supplier over another.**

**RESPONSE**: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 25, on the basis that it purports to require DFA to search for and produce documents not in its possession, custody, or control. DFA further objects to Request No. 55, Specification 25, on the basis that it seeks "all" documents as such a request is overbroad in that it seeks duplicative documents and documents unrelated to processed fluid milk or raw milk. DFA further objects to Specification 25 to the extent that it purports to broaden the parties' agreed-upon date range. Through this Specification, Plaintiffs have disregarded those negotiations, as well as the time, effort, and money spent in coming to an amiable conclusion on this issue and, instead, applied whatever time

period they wish.  The Plaintiffs' newly revised time period extends years beyond what the U.S. Department of Justice sought in relation to its investigation of DFA's acquisition of certain Dean assets.  DFA objects to the production of documents from any time period prior to January 1, 2017, or after July 31, 2020, and requests made outside of this time period seek information that is neither relevant nor proportional to the needs of the litigation, and responses thereto would be unduly burdensome.  As such, DFA limits its responses to the parties' agreed-upon time period of January 1, 2017 to July 31, 2020.  DFA further objects to Specification 25 on the basis that comparisons between DFA and "any" of DFA's raw milk production competitors in the Relevant Area are neither relevant nor proportional to the needs of the litigation.  DFA will limit its response to comparisons between DFA and MDVA.  Subject to and without waiving its objections, DFA will search the files of DFA (formerly Dean) custodians who are reasonably likely to have non-duplicative documents containing and produce relevant, non-privileged, nonduplicative documents comparing the raw milk of DFA and MDVA in the Relevant Area.

**Dean Subpoena, Specification 28.  Data or documents sufficient to show hauling, shipping, and other transportation costs of raw or processed milk in, into, or from the Relevant Area, as well as all documents concerning or related to such transportation of raw or processed milk, associated costs, and the effects of transportation costs on raw or processed milk costs, pricing, or competition.**

**RESPONSE:** In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 55, Specification 28 on the basis that it is duplicative of Request Nos. 8 and 53.  DFA has already produced data as outlined in response to Request No. 8.  As such, documents concerning the data is not proportional to the needs of the litigation.

- 15 -

Case 1:20-cv-00442-CCE-JLW  Document 86-7  Filed 11/05/20  Page 16 of 19

**Request No. 56:** All consulting agreements between DFA and former Dean employees involved in "Project Creamery," including Keith Flanagan and Chris Keyes.

RESPONSE: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 56 on the basis that it seeks irrelevant documents and is not proportional to the needs of the case.

**Request No. 57: The engagement letter for the Mentor Valuations Group.**

RESPONSE: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 57 on the basis that it seeks irrelevant documents and is not proportional to the needs of the case.

**Request No. 58: The Mentor Valuations Group Appraisal Report dated June 25, 2019, and all documents provided by or on behalf of DFA or Dean to the Mentor Valuations Group.**

RESPONSE: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 58 on the basis that it seeks irrelevant documents and is not proportional to the needs of the case.

**Request No. 59: All communications between DFA and/or Dean, or persons acting on DFA's or Dean's behalf, and the Mentor Valuations Group.**

RESPONSE: In addition to DFA's Objections to Definitions and Instructions, which DFA incorporates herein, DFA objects to Request No. 58 on the basis that it seeks irrelevant documents and is not proportional to the needs of the case.

DATED: September 30, 2020                    Respectfully submitted,


                                             */s/ Amber L. McDonald*
                                             Amber L. McDonald

                                             **WOMBLE BOND DICKINSON (US) LLP**
                                             James P. Cooney III
                                             N.C. State Bar No. 12140
                                             Sarah Motley Stone
                                             N.C. State Bar No. 34117
                                             WOMBLE BOND DICKINSON (US) LLP
                                             Charlotte, North Carolina 28202
                                             Phone: 704-331-4900
                                             Fax: 704-331-4955
                                             Jim.Cooney@wbd-us.com
                                             Sarah.Stone@wbd-us.com

                                             Brent F. Powell
                                             N.C. State Bar No. 41938
                                             One West Fourth Street
                                             Winston-Salem, North Carolina 27101
                                             Phone: 336-721-3600
                                             Fax: 336-721-3660
                                             Brent.Powell@wbd-us.com

                                             **BAKER & MILLER PLLC**
                                             W. Todd Miller*
                                             Amber L. McDonald*
                                             2401 Pennsylvania Avenue N.W.
                                             Suite 300
                                             Washington, D.C. 20037
                                             Phone: 202-663-7820
                                             Fax: 202-663-7849
                                             TMiller@bakerandmiller.com
                                             AMcDonald@bakerandmiller.com

                                             **LATHAM & WATKINS LLP**
                                             Michael G. Egge*
                                             555 Eleventh Street, NW
                                             Washington, D.C. 20004-1304
                                             Phone: 202-637-2285
                                             Michael.Egge@lw.com

                                             *Attorneys for Dairy Farmers of America, Inc.*

                                             **By Special Appearance*

- 17 -

Case 1:20-cv-00442-CCE-JLW   Document 86-7   Filed 11/05/20   Page 18 of 19

## CERTIFICATE OF SERVICE

       I hereby certify that on September 30, 2020, I, Amber L. McDonald, have served the foregoing **DEFENDANT DAIRY FARMERS OF AMERICA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' COMBINED THIRD SET OF REQUESTS FOR PRODUCTION** upon the Plaintiffs in this lawsuit by email at the e-mail addresses below:

A. Todd Brown, Sr.
Ryan G. Rich
Hunton Andrews Kurth LLP
101 South Tryon St. Suite 3500
Charlotte, North Carolina 28280
tbrown@huntonak.com
rrich@huntonak.com

Ryan P. Phair
John S. Martin
Kevin Hahm
Carter C. Simpson
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
rphair@huntonak.com
martinj@huntonak.com
khahm@huntonak.com
csimpson@huntonak.com

Jason D. Evans
Troutman Pepper Hamilton Sanders LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
jason.evans@troutman.com

James A. Lamberth
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
james.lamberth@troutman.com

DATED: September 30, 2020             */s/ Amber L. McDonald*